D. Maimon Kirschenbaum
JOSEPH KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**KIARA NAZAIRE,**

       **Plaintiff,**

  v.

**JERSEY SHORE NURSING AGENCY INCORPORATED d/b/a JERSEY SHORE STAFFING AGENCY, INC. and ST. BARNABAS HOSPITAL,**

       **Defendants.**
-----------------------------------------------------------x

CASE NO.

**COMPLAINT**

Plaintiff Kiara Nazaire alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff Kiara Nazaire brings this action against Defendants Jersey Shore Nursing Agency Incorporated and St. Barnabas Hospital alleging claims of retaliation and interference in violation of the Family and Medical Leave Act ("FMLA"), 28 U.S.C. §§ 2601, et seq., and discrimination claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and New York Labor Law ("NYLL").

2. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FMLA. This Court has supplemental jurisdiction over the New York state law claims brought under the NYSHRL, NYCHRL, and NYLL, as they are so

related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

4. Defendant Jersey Shore Nursing Agency Incorporated d/b/a Jersey Shore Staffing Agency, Inc. ("JSNA" or the "Agency:") is a New Jersey corporation headquartered in Avon by the Sea, New Jersey. JSNA is a staffing agency that provides nurses and other health professionals to various health care employers. JSNA is an employer under the FMLA, as it employs more than 50 employees within a 75-mile radius from its Avon by the Sea, New Jersey location.

5. Defendant St. Barnabas Hospital (the "Hospital") is a New York non-profit corporation with a place of business at 4422 Third Ave, Bronx, New York. The Hospital is an employer under the FMLA, as it employs more than 50 employees within a 75-mile radius from its Bronx location.

6. The Hospital and JSNA, collectively, referred to herein as "Defendants."

7. Plaintiff Kiara Nazaire ("Plaintiff") resides in Brooklyn, New York and worked for Defendants at the Hospital's Bronx location from May 15, 2023 until her unlawful termination on March 27, 2024.

## FACTS

8. Upon information and belief, the Hospital uses JSNA to identify healthcare employees to staff various positions within the Hospital.

9. Plaintiff was dually employed by the Hospital and JSNA. The Hospital made decisions regarding hiring and firing, Plaintiff's schedule, and Plaintiff's compensation.

10. JSNA managed Plaintiff's timesheets and payroll and issued Plaintiff her paychecks.

11. Plaintiff was initially hired on May 15, 2023 as a "Traveling Surgical Technologist," a type of contract employee who assists surgeons during surgical procedures.

12. Plaintiff's regular schedule included three 12-hour shifts each week.

13. Plaintiff's initial contract was for a three-month period. As a result of Plaintiff's successful performance, Defendants renewed her contract two more times.

14. Defendants renewed Plaintiff's contract most recently on December 17, 2023, and the contract was set to expire on May 4, 2024.

15. In or about February 2024, Plaintiff discovered that she was pregnant. Soon after learning of her pregnancy, Plaintiff informed Assistant Nursing Director Andrea McNaughton that she was pregnant and could not participate in surgeries that required x-rays.

16. Plaintiff planned to take maternity leave on or about September 2024, at which point she would have been eligible for FMLA leave.

17. McNaughton assured Plaintiff that she would not be scheduled for surgeries requiring x-rays.

18. The vast majority of surgeries at the Hospital do not require x-rays during the procedures.

19. Plaintiff also informed the charge nurse, in confidence, that she was pregnant and would not be assisting with surgeries requiring x-rays.

20. Although Plaintiff informed these two supervisors of her pregnancy in confidence, it quickly became clear that they had spread the word among Plaintiff's colleagues.

21. Many of Plaintiff's coworkers began confronting her and inquiring about her pregnancy. Others expressed frustration that she was receiving "special privileges" because of her pregnancy.

22. On one occasion, Plaintiff's direct supervisor, Nurse Director Gennady "Henry" Kuzin, asked Plaintiff if she was on "team blue or team pink," referring to the gender of her unborn child. Plaintiff responded to Kuzin, but was concerned that her confidential information had become public knowledge.

23. On or about March 18, 2024, Plaintiff was covering for another Surgical Technician while he was on his lunch break. Plaintiff prepared an operating room for a patient, but ten minutes before her colleague returned to his shift, Plaintiff was asked to scrub in for the surgery that required an x-ray.

24. Plaintiff quickly asked another colleague to cover for her for the 10 remaining minutes of the cover shift so she would not have to participate in the x-ray. This colleague demanded to know whether or not Plaintiff was pregnant.

25. When Plaintiff refused to disclose her private information and health condition, this colleague refused to help her. Ultimately, the surgical technician originally assigned to the surgery returned from his break and took over.

26. Another colleague named Esther, who was not otherwise involved, reported the incident to Kuzin. Upon information and belief, Esther mischaracterized the incident to Kuzin and suggested that Plaintiff was receiving special privileges.

27. Kuzin did not contact Plaintiff to inquire about what had occurred.

4

28. On March 21, 2024, Plaintiff's blood pressure and heart rate became very high while at work, and after checking her vitals, the Hospital sent Plaintiff home for the day.

29. On March 25, 2024, Plaintiff informed Lorraine Russell, the owner and founder of JSNA, that she was pregnant.

30. In response, Russell asked Plaintiff multiple times if she wanted to terminate her contract with the Hospital.

31. On March 27, 2024, immediately after taking medical leave, Defendants terminated Plaintiff's employment. When Russell informed Plaintiff that she was being terminated, she told Plaintiff vaguely that it was for performance reasons but refused to provide any details. She then encouraged Plaintiff to claim unemployment and assured Plaintiff she would not oppose it.

32. Defendants never criticized Plaintiff's performance prior to her announcing her pregnancy and requiring medical leave.

33. Once Plaintiff announced her pregnancy and took medical leave, Defendants immediately terminated her employment.

34. Since Plaintiff's employment ended, she has not attained new employment, despite her diligent efforts.

35. As a result of her termination, Plaintiff has suffered economic loss and experienced emotional distress.

**FIRST CLAIM FOR RELIEF**
**FMLA Retaliation and Interference**
**with FMLA Leave – 29 U.S.C. § 6501 *et seq*.**

36. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

5

37. Defendants are employers under the FMLA, as they each employed more than 50 employees within a 75-mile radius.

38. Plaintiff was eligible for FMLA leave as she had worked for Defendants more than 1,250 hours in the 12-month period preceding her leave.

39. In violation of the FMLA, Defendants intentionally discriminated/retaliated against Plaintiff because she took FMLA-protected leave.

40. In violation of the FMLA, Defendants interfered with Plaintiff's ability to return to her original position after taking his FMLA protected leave.

41. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including but not limited to loss of income, including past and future salary, and benefits.

42. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, liquidated damages, interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### New York State Human Rights Law ("NYSHRL") – Discrimination

43. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

44. In violation of the NYSHRL, Defendants discriminated against Plaintiff on the basis of her pregnancy by terminating her employment.

45. As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

46. As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation, and anguish.

47. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### New York City Human Rights Law ("NYCHRL")
### N.Y.C. Admin. Code §§ 8-101 *et seq.* – Discrimination

48. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

49. In violation of the NYCHRL, Defendants discriminated against Plaintiff on the basis of her pregnancy by terminating her employment.

50. As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

51. As a direct and proximate consequence of Defendants' discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

52. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**New York Labor Law ("NYLL")**
**NYLL § 215 – Retaliation**

53. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

54. In violation of NYLL, Defendants retaliated against Plaintiff for requesting a legally protected leave of absence.

55. As a direct and proximate consequence of Defendants' retaliation against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

56. As a direct and proximate consequence of Defendants' retaliation against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

57. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(A)   For compensatory, liquidated and punitive damages in an amount to be determined by the trier of fact;

(B)   For reasonable attorneys' fees, interest, and costs of suit;

(C)   For such other and further relief as the Court may deem just and equitable.


Dated: New York, New York
      July 19, 2024

Respectfully submitted,
JOSEPH & KIRSCHENBAUM LLP

By: */s/ D. Maimon Kirschenbaum*
    D. Maimon Kirschenbaum
    Leah Seliger
    32 Broadway, Suite 601
    New York, NY 10004
    Tel: (212) 688-5640
    Fax: (212) 981-9587


## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.