JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

December 15, 2025

**VIA ECF**
Hon. Ann Donnelly
U.S. District Court for the Eastern District of New York

  Re: *Nazaire v. Jersey Shore Nursing Agency, Inc.*, et al., No.: 24-cv-5022

Dear Judge Donnelly,

  We represent Plaintiff Kiara Nazaire in the above-referenced matter. Plaintiff submits this letter pursuant to 4.B. of this Court's Individual Rules to request a pre-motion conference on Plaintiff's anticipated motion for partial summary judgment. Plaintiff seeks summary judgment on two issues: (1) that Defendant SBH is her joint employer under Title VII, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"); and (2) that Defendant JSNA is liable for pregnancy discrimination under Title VII, the NYSHRL, and the NYCHRL. Plaintiff's Local Rule 56.1 Statement is attached hereto as Exhibit 1. The counterstatements of Jersey Shore Nursing Agency, Inc. ("JSNA") and St. Barnabas Hospital ("SBH") are attached as Exhibits 2 (JSNA Counterstatement) and 3 (SBH Counterstatement).

  **I. BACKGROUND**

  Plaintiff brings claims of, *inter alia*, pregnancy discrimination under Title VII, the NYSHRL and the NYCHRL. *See* ECF Dkt No. 27 (Am. Compl.). JSNA is a staffing agency that provides nurses and other healthcare professionals to various hospitals, including SBH. Ex. 1 ¶¶ 1-2, 16. Plaintiff is an operating room technician ("OR Tech") who worked at SBH from May 2023 until her termination in March 2024 pursuant to three contracts she held with JSNA, each of which had an approximate three-month term. *Id.* ¶¶ 24-25, 72. Between May 2023 and the end of December 2023, Plaintiff's contract was renewed twice with the required approval of Henry Kuzin, SBH's director of perioperative services. *Id.* ¶¶ 26, 29. Plaintiff's last contract, which was executed in December 2023, was set to expire in May 2024. *See* Buzzard Decl., Ex. 10.

  In late February 2024, the owner of JSNA, Lorraine Russell, gave Plaintiff a performance evaluation which stated that Plaintiff met standards in all respects, including attendance and punctuality. *Id.* ¶ 54. On February 29, 2024, Russell sent Plaintiff an email in which she stated that she had discussed Plaintiff's performance with her supervisors at SBH and had been told that Plaintiff's time at SBH had "been without issue" and there was "no negative feedback, only positive." *Id.* ¶ 56.

  In February 2024, Plaintiff learned she was pregnant. SMF ¶ 57. Shortly thereafter, Plaintiff informed SBH's assistant director of perioperative services about the pregnancy and asked that she not be stationed in operating rooms with x-rays. *Id.* ¶ 58. In late March 2024, Plaintiff had to call out of work and/or leave work early on several occasions due to pregnancy-related illness. *Id.* ¶ 59. On March 21, 2024, Kuzin from SBH called Russell at JSNA and told Russell that Plaintiff was pregnant. *See* Ex. 2 (JSNA Counterstatement) ¶ 60. The following day, Russell emailed her attorney (the "March 22 Email") indicating that Kuzin had informed her of Plaintiff's pregnancy and that although SBH was "willing to send [Plaintiff] home and make sure she is safe they also

can not support her employment if she is not able to perform 100%." SMF ¶ 63. Russell followed up on this email on March 25 (the "March 25 Email"), writing to her attorney that she would like to have a conversation about Plaintiff who "is now pregnant – leaving calling out – leaving early – the client does not think they can work effectively until May when her contract is up . . . they are eager to see what can be done." SMF ¶ 66. On March 27, Kuzin wrote to Russell that "[a]s per our conversation on March 21," he was "confirming termination of Ms. Nazaire due to her inability to fulfill her hours obligation to SBH." *Id.* ¶ 68. Russell forwarded this email to her attorney, who wrote in response (the "March 27 Email") that Russell should "terminate the employee because the contract with her has been terminated by the hospital." *Id.* ¶¶ 70-71. Russell terminated Plaintiff later that day, writing in her termination email that she "need[ed] to terminate [Plaintiff] because [Plaintiff's] contract has been terminated by St. Barnabas Hospital." *Id.* ¶ 73.

**II.     ARGUMENT**
      a. <u>Defendant SBH is Plaintiff's Joint Employer</u>

The undisputed facts demonstrate that SBH is Plaintiff's joint employer. Under Title VII, a joint employer relationship exists "when two or more entities, according to common law principles, share significant control of the same employee." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022). This determination is to be made by consideration of a number of non-exclusive factors, including, *inter alia*, the "right to control the manner and means by which the product is accomplished; the skill required; the source of the instrumentalities and tools; the location of the work; [and] the duration of the relationship . . . ." *Id*. (quotation marks omitted). "[T]he crux of these factors is the element of control," *id.* (quotation marks omitted), and "any relevant factor may be considered so long as it is drawn from the common law of agency," *id.* at 844 (cleaned up). Joint employer status under the NSHRL and NYCHRL is similarly governed by the common law of agency. *See Griffen v. Sirva, Inc.*, 29 N.Y.3d 174, 186 (N.Y. 2017) ("common law principles . . . determine who may be held liable under [the NYSHRL], with greatest emphasis placed on the alleged employer's power to order and control the employee in his or her performance of work" (quotation marks omitted); *Brankov v. Hazzard*, 142 A.D.3d 445, 446 (1st Dep't 2016) (under "immediate control" test, joint employer status exists under the NYSHRL and NYCHRL "where there is sufficient evidence that the defendant had immediate control over the other company's employees, and particularly the defendant's control over the employee in setting the terms and conditions of the employee's work").

Here, SBH does not dispute the following facts, all of which clearly demonstrate its complete control over Plaintiff in the performance of her work: (1) SBH approved Plaintiff's hiring and had to approve every extension of her contract, Ex. 3 ¶¶ 19, 26; (2) SBH determined Plaintiff's work schedule, maintained her time records, and had to approve any request for time off or to work overtime, *id.* ¶¶ 30-32, 36-40; (3) SBH required Plaintiff to follow its policies and procedures, assigned her duties and work locations, and supervised the day-to-day performance of her work, *id.* ¶¶ 33, 41, 44; and (4) SBH evaluated Plaintiff's performance, *id.* ¶ 52. In addition, the contract between JSNA and SBH empowers SBH to "terminate . . . any Temporary staff providing services" under that agreement "in SBH's sole discretion for any reason whatsoever." *Id.* ¶ 15. Finally, SBH does not dispute that its director, Kuzin, confirmed Plaintiff's termination, *id.* ¶ 68-69, or that JSNA informed Plaintiff that she had to be terminated "because [her] contract has been terminated by [SBH]," *id.* at 73. SBH is Plaintiff's joint employer under all three statutes.

      b.  <u>Defendant JSNA is Liable for Pregnancy Discrimination</u>

Under Title VII, an employment practice is unlawful "when pregnancy is a motivating factor." *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 126 (E.D.N.Y. 2011). The same standard applies to Plaintiff's NYSHRL and NYSHRL claims. Where a plaintiff offers direct evidence of discrimination, then a "mixed motive" analysis, rather than the familiar *McDonnell Douglas* analysis, is appropriate. *See Ames v. Cartier, Inc.*, 193 F. Supp. 2d 762, 767 (S.D.N.Y. 2002). In a mixed-motive case, the plaintiff must "demonstrate that a prohibited discriminatory factor played a motivating part in the challenged employment decision." *Id.* at 768 (quotation omitted). In such analysis, the evidence adduced must be "directly tied to the forbidden animus, for example . . . statements of a person involved in the decisionmaking process that reflect a discriminatory . . . animus." *Id.* (quotation marks omitted). If the plaintiff presents such direct evidence, the employer must then "prove by a preponderance of the evidence that it would have made the decision anyway." *Id.* (quotation marks omitted).

Here, Russell's testimony about her March 21 conversation with Kuzin and her emails sent on March 22 and March 25 – the relevant text of which are set forth in Plaintiff's 56.1 statement, *see* SMF ¶¶ 61, 63, 66 – are direct evidence that Plaintiff's pregnancy was a motivating factor in JSNA's decision to terminate her employment on March 27. This evidence demonstrates that after Kuzin informed Russell of Plaintiff's pregnancy on March 21 and how "distraught" he was at her calling out, Russell repeatedly informed her attorney in emails specifically referencing Plaintiff's pregnancy, that SBH could "not support her employment if she is not able to perform at 100%" and did "not think [Plaintiff] could work effectively until May when her contract is up." *Id.* At SBH's demand, JSNA then terminated Plaintiff. SMF ¶¶ 68-73. This evidence directly reflects the discriminatory attitude that Plaintiff could not continue working effectively because of her pregnancy and therefore must be terminated.

JSNA does not dispute any of the above. Instead, it "renews" its purported objections to the emails on attorney-client privilege grounds. *See* Ex. 2 ¶¶ 61, 63, 66, 68-73. This is nonsense. JSNA itself produced all the cited emails, did not mark them confidential or privileged, and has never objected to the March 22 and March 25 emails before now.[1] As such, it has waived any attorney-client privilege with respect to these documents. *See, e.g.*, *Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 163-166 (E.D.N.Y. 2005).

JSNA cannot prove that it would have terminated Plaintiff anyway. Its likely explanation is that Plaintiff's not meeting her contractual hours would have resulted in her termination on its own. But the evidence shows that Russell knew and understood that Plaintiff's absences in March were tied to her pregnancy. *See* Ex. 2 ¶¶ 61, 63, 66. Moreover, the undisputed evidence demonstrates that: (1) Plaintiff did not meet her contractual hours during the first six months of her employment and no action was taken (in fact her contract was extended twice and she was given a stellar performance review), *id.* ¶¶ 48-49, 54-56; and (2) another non-pregnant OR Tech failed to meet her contractual hours more times than Plaintiff in 2024 and was not terminated, *see id.* ¶¶ 74-78. This evidence clearly demonstrates it was Plaintiff's pregnancy, not her hours, that resulted in her termination.

---

[1] As noted in Plaintiff's Rule 56.1 statement, while JSNA objected on attorney-client privilege grounds during Russell's deposition to a *March 27* email, that objection was overruled by the magistrate judge and questioning continued on that email. *See* Ex. 1 ¶ 70 n.3.

Accordingly, partial summary judgment should be granted to Plaintiff on the above two issues. We thank the Court for its time and attention to this matter.

Respectfully submitted,

/s/Lucas C. Buzzard
Lucas C. Buzzard
