UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
KIARA NAZAIRE,

                   Plaintiff,

     v.

JERSEY SHORE NURSING AGENCY
INCORPORATED d/b/a JERSEY SHORE
STAFFING AGENCY, INC., and ST.
BARNABAS HOSPITAL,

                   Defendants.
--------------------------------------------------------------x

Case No. 1:24-CV-05022-AMD-PK

**DEFENDANT JSNY'S RESPONSE TO CODEDENDANT ST. BARNABAS HOSPITAL'S**

# RESPONSE TO PLAINTIFF'S LOCAL CIVIL RULE 56.1 STATEMENT

Pursuant to Local Civil Rule 56.1 and Rule 4 B(i) of the Individual Rules of Judge Ann Donelly, Defendant Jersey Shore Nursing Agency Incorporated d/b/a Jersey Shore Staffing Agency, Inc., submits this response to the Codefendant St Barnabas' statement of undisputed material facts in support of its motion for partial summary judgment.

**The Hospital's Staffing Agreement**
**With Jersey Shore Staffing Agency, Inc.**

    1.     The Hospital entered into a staffing agreement (the "Agreement") with Jersey Shore Staffing Agency ("JSSA") on March 30, 2023. *See* Declaration of Nicholas M. Summo, dated November 11, 2025 (hereinafter "Summo Decl."), Exhibit J.

        **Undisputed.**

    2.     Under the Agreement, JSSA agreed to "recruit, provide, and schedule" temporary staff to provide various services at the Hospital on an "as needed basis." *See* Summo Decl., Ex. J, p. 1.

**Undisputed**

3. As part of the Agreement, the Hospital agreed to pay JSSA for the services of the temporary staff JSSA placed at the Hospital on a temporary basis. *See* Summo Decl., Ex. J,§ 2.

4. JSSA would directly pay the temporary staff it placed at the Hospital. *See* Summo Decl., Ex. E (hereinafter "Russell Dep.") at 165:4-12.

**Undisputed.**

5. Understandably, under the Agreement JSSA – and not the Hospital – was required to withhold sums for income tax, unemployment insurance, social security, or any other benefits. *See* Summo Decl., Ex. J, § 8(i).

**Undisputed, with clarification. Sums withheld are pursuant to state and federal laws.**

6. As such, the Agreement specifically states that all benefits owed to the temporary staff workers were the "exclusive responsibility of the Agency." *See* Summo Decl., Ex. J, § 8(i).

**Undisputed with clarification. . Reference is to non-worksite benefits, not to worksite "benefits" such as a safe and sterile work environment and PPE.**

7. Accordingly, the Hospital did not provide any sort of employment benefits to JSSA's temporary staff. Russell Dep. at 166:3-9; Plaintiff Dep at. 42:14-7; 42:18-2 – 43:2.

**Undisputed with clarification. Reference is to non-worksite benefits, not to worksite "benefits" such as a safe and sterile work environment and PPE.**

8. Under the Agreement, JSSA was required to maintain a "profile" of each temporary staff worker placed at the Hospital. *See* Summo Decl., Ex. J, § 5(a).

**Undisputed.**

9. Documents to be kept in the temporary staff workers' profile included:

  a) a current resume;

  b) a copy of the temporary staff worker's current license, registration, and/or certification(s) for the relevant position;

  c) documentation evidencing the temporary staff worker's current annual physical examination, which shall include proof that the temporary staff worker us free from health impairments which pose a potential risk to patients/personnel;

  d) current JCAHO mandatory in-service annual requirements;

  e) a current competency skills check list, including age specific competencies;

  f) evidence of eligibility to work in the United States; certificate of insurance policy in the amounts required in the Agreement;

  g) current BCLS or ACLS card; and

  h) two professional

references. *See* Summo Decl., Ex. J, § 5(b).

  **Undisputed.**

  10. Under the Agreement, the Hospital reserved the right to refuse the participation of any temporary staff worker providing services pursuant to the Agreement. *See* Summo Decl., Ex. J, § 5(d).

  **Disputed. Subject to legal employment-related limitations  See JSNY Exhibit**

  11. JSSA was also required to maintain, on its own behalf, as well as each temporary staff worker, professional liability insurance in the amount of $1,000,000 per occurrence and $3,000,000 per occurrence in the aggregate, general liability insurance and workers' compensation insurance. *See* Summo Decl., Ex. J, § 5(e).

  **Undisputed.**

12. Additionally, JSSA was required to ensure that all of its temporary staff placed at the Hospital to maintain professional liability insurance in the amount of $1,000,000 per occurrence and $3,000,000 in the aggregate. *See* Summo Decl., Ex. J, § 5(f).

**Undisputed.**

13. The Agreement also prohibits JSSA and all temporary staff workers from holding themselves out as employees of the Hospital. *See* Summo Decl., Ex. J, § 8(i).

**Disputed. The definition of "Employee" varies by relevant statutes and there are specific New York statutes that address this type of employment relationship between SBH and JSNA.**

14. The Agreement also states that:

> Nothing in this [A]greement is intended, nor shall be construed, to create an employer/employee relationship between [the Hospital] and [JSSA] or between [the Hospital] and the [t]emporary [s]taff m or a joint venure relationship ....

*See* Summo Decl., Ex. J, § 8(ii).

**Disputed As the definition of "Employee" vary by relevant statutes. See #13**

15. On or about February 22, 2024, JSSA assigned its rights and obligations as set forth under the Agreement to defendant Jersey Shore Nursing Agency, Inc. ("<u>JSNA</u>," and collectively with JSSA, the "<u>Agency</u>"). *See* Summo Decl., Ex. L.

**Undisputed.**

**<u>Plaintiff Kiara Nazaire</u>**

16. Plaintiff Kiara Nazaire ("Plaintiff") trained to be surgical technologist at the Swedish Institute of College of Health Sciences between 2016 and 2017. *See* Summo Decl., Ex., D (hereinafter "Plaintiff Dep.") at 20:23-25 – 21:2-8.

**Undisputed.**

17. Plaintiff began working as a traveling surgical technologist in 2018. Plaintiff Dep. at 24:17-24.

**Undisputed.**

18. Plaintiff joined the Agency in May 2023. Plaintiff Dep. at 24:25 – 25:2-3.

**Undisputed.**

**The Agency Places Plaintiff At the Hospital In May 2023**

19. On or about May 10, 2023, the Agency arranged a short-term, thirteen (13) week placement for Plaintiff at the Hospital. *See* Summo Aff., Ex. M.

**Undisputed.**

20. Plaintiff's temporary placement at the Hospital was memorialized in a short-term contract between her and the Agency (the "First Short-Term Contract"). *See* Summo Aff., Ex. M.

**Undisputed.**

21. The First Short-Term Contract was signed by Plaintiff and Lorraine Russell, the principal of the Agency. *See* Summo Aff., Ex. M, pp.3-5; Plaintiff Dep. at 30:5-24 Russell Dep. at 169:13-19.

**Undisputed.**

22. No one from the Hospital signed the First Short-Term Contract. *See generally* Summo Aff., Ex. M; Plaintiff Dep. at 37:6-8; Russell Dep. at 169:23-25.

**Undisputed.**

23. Plaintiff's first placement at the Hospital under the First Short-Term Contract began on May 16, 2024 and ended on August 12, 2023. *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:25.

**Undisputed.**

24. Plaintiff was not guaranteed placement at the Hospital past August 12, 2023. *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:6-9.

**Undisputed.**

25. Plaintiff was temporarily assigned to the Hospital as a certified surgical technician during this period. *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:11-14.

**Undisputed, with clarification. Plaintiff was assigned to the Hospital pursuant to the terms of Plaintiff's contract with Hospital .**

26. Plaintiff was required to work three twelve (12) hour shifts per week. *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:15-18.

**Undisputed.**

27. Plaintiff's hours were 7:00 AM to 7:00 PM. *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:19-22.

**Undisputed.**

28. Plaintiff's particular workdays varied each week, and she could be scheduled to work any day Sunday through Monday. *See* Summo Aff., Ex. M; Plaintiff Dep. at 33:5-9.

**Undisputed.**

29. The First Short-Term Contract contained language that the Hospital could request that the

Agency find a different temporary staff worker as a replacement for her. *See* Summo Aff., Ex. M, p.2; *see also* Plaintiff Dep. at 36:22-25 – 37:2.

**Undisputed.**

**The Agency Provides Plaintiff With A Second**
**Short-Term Contract For Temporary Placement At The Hospital**

30. The Agency arranged a second, temporary placement at the Hospital for Plaintiff on July 19, 2023. *See* Summo Aff., Ex. N; Plaintiff Dep. at 38:3-6.

**Undisputed.**

31. This placement, which was scheduled to run from August 13, 2023 to December 16, 2023, was memorialized in a second short-term contract between Plaintiff and the Agency (the "Second Short-Term Contract"). *See* Summo Aff., Ex. N.

**Undisputed.**

32. Plaintiff signed the Second Short-Term Contract. *See* Summo Aff., Ex. N, pp. 3-5; Plaintiff Dep. at 38:20-23.

**Undisputed.**

33. While Ms. Russell did not sign the Second Short-Term Contract on behalf of the Agency, she testified that she agreed to the terms therein. Russell Dep. at 172:9-11.

**Undisputed.**

34. Plaintiff was once again placed at the Hospital to perform services as a certified surgical technologist. Plaintiff Dep. at 39:21-25 – 40:3.

**Undisputed.**

35. The Hospital did not pay Plaintiff based on the work she performed under the Second

4928-5839-2189, v. 1

Short-Term Contract. Plaintiff Dep. at 41:11-15.

**Undisputed.**

36. The language and temporary work arrangements set forth in the Second Short-Term Contract were largely identical to the First Short-Term Contract. Plaintiff Dep at. 41:16-25 – 42:28.

**Undisputed.**

**The Agency Provides Plaintiff With A
Third Short-Term Contract For Placement At The Hospital**

37. The Agency arranged a third short-term placement for Plaintiff at the Hospital on or about December 12, 2023.

**Undisputed.**

38. This temporary placement was memorialized in an agreement between Plaintiff and the Agency (the "Third Short-Term Contract"). *See* Summo Decl., Ex. O.

**Undisputed.**

39. Plaintiff received this document from the Agency. Plaintiff Dep. at 47:3-6.

**Undisputed.**

40. This temporary short-term placement began on December 17, 2023 and was expected to end on May 4, 2024, for a period of sixteen (16) weeks. *See* Summo Decl., Ex. O.

**Undisputed.**

41. The Third Short-Term Contract required Plaintiff to work three (3) 12-hour shifts per week, from 7:00 AM to 7:00 PM, which included an hour of unpaid lunch. *See* Summo Decl., Ex. O, p. 1.

**Undisputed.**

42. Plaintiff could have been scheduled to work at the Hospital any day during the week, Sunday through Monday. *See* Summo Decl., Ex. O, p. 1.

**Undisputed.**

43. Plaintiff was not guaranteed placement at the Hospital after May 4, 2024. Plaintiff Dep. at 48:13-16; Russell Dep. at 174:22-24.

**Undisputed.**

44. Both Plaintiff and Ms. Russell signed the Third Short-Term Contract. *See* Summo Decl., Ex 0, pp. 3-5; Plaintiff Dep. at 47:10-18; Russell Dep. at 175:16-17.

**Undisputed.**

45. The Hospital did not sign, review, or approve the language in the Third Short-Term Contract. *See* Summo Decl., Ex. O; Russel Dep at 175:21-25 – 176:2-3.

**Undisputed.**

46. Like the first two contracts between Plaintiff and the Agency, the Third Short-Term Contract contained language that the contract may be terminated by the Agency in the event the Hospital requested a different staff placement to fill Plaintiff's position. *See* Summo Decl., Ex. O.

**Undisputed.**

**Plaintiff Learns She is Pregnant; Requests and Receives From The**
**<u>Hospital An Accommodation To Avoid Working In Surgical Suites With X-rays</u>**

47. Plaintiff learned she was pregnant in February 2024. Plaintiff Dep. at 55:7-10.

**Undisputed.**

48. The Agency offered Plaintiff FMLA leave. Plaintiff Dep. at 59:15-21.

**Undisputed with clarification. The Agency did not offer Plaintiff FMLA leave until after Plaintiff informed Lorraine Russell of her pregnancy, which was after the hospital had been informed by the plaintiff. Russell Deposition.**

49. Plaintiff, however, did not apply for FMLA leave, or even inform the Agency of her intention to take such leave. Russell Dep. at 189:5-11.

**Undisputed.**

50. Plaintiff also did not apply for FMLA leave through the Hospital, nor did she inform Hospital staff that she was planning to take such leave. Plaintiff Dep at 61:12-19.

**Undisputed.**

51. After she learned that she was pregnant, Plaintiff asked not to participate in surgeries that required x-rays. Plaintiff Dep. at 63:19-25 – 64:2-4.

**Undisputed.**

52. The Hospital honored Plaintiff's request, and she was not required to assist with a surgery that required x-rays. Plaintiff Dep. at 63:19-25.

**Undisputed.**

**Plaintiff Fails To Work Her Required Hours; As A Result,**
**The Hospital Requests A Replacement Surgical Technologist**

53. Beginning in early February 2024, Plaintiff began leaving work early or calling out of her assigned shifts all together. *See* Declaration of Gennady Kuzin, dated October 28, 2025 (hereinafter "Kuzin Decl."), ¶ 50; Plaintiff Dep. at 64:5-13.

**Undisputed.**

54. Plaintiff's attendance issues caused logistical difficulties for the Hospital, as it had to find other staff to cover her shifts on short notice so as to ensure that each surgery that was scheduled was adequately staffed. Kuzin Decl., ¶ 50.

**Undisputed.**

55. As confirmed by Plaintiff during her deposition, between early February 2024 and March 27, 2024, she failed to work her required three-day work week (a minimum of 33 hours per week) five times. *See* Kuzin Decl., ¶ 51 & Ex. A; Plaintiff Dep. at 64:5-9; 72:8-15; Russell Dep. at 180:23-25 – 181:4-8.

**Undisputed.**

56. Specifically, Plaintiff failed to work a full day on:

a) February 9, 2024 (left work approximately five hours early);

b) February 15, 2024 (did not work at all);

c) February 27, 2024 (left work approximately 10.5 hours early);

d) March 14, 2024 (did not work at all);

e) March 15, 2024 (did not work at all); and

f) March 21, 2024 (clocked in a half an hour late and then left work approximately 6.5 hours early).

Kuzin Decl., ¶ 52 & Ex. A.

**Undisputed.**

57. Henry Kuzin, the Director of Perioperative Services at the Hospital, was never informed about the reasons why Plaintiff was not showing up for her scheduled shifts, or why she left early. Kuzin Decl., ¶ 53.

**Undisputed.**

58. On March 21, 2024, Mr. Kuzin had a discussion with Ms. Russell regarding a potential replacement surgical technologist to provide services at the Hospital from 7:00 AM to 7:00 PM. Kuzin Decl., ¶ 54.

    **Undisputed.**

59. Plaintiff subsequently failed to work her scheduled shift on March 26, 2024. Kuzin Decl., ¶ 54 & Ex. A; Plaintiff Dep. at 71:22-25 – 72:2-4.

    **Undisputed.**

60. The next day, Mr. Kuzin emailed Ms. Russell to formally request a replacement surgical technologist from the Agency due to Plaintiff's failure to fulfil her hours' obligation. Kuzin Decl., ¶ 55 & Ex. B; Russell Dep. at 182:11-14.

    **Undisputed.**

**The Agency Terminates Plaintiff's Employment Following**
**The Hospital's Request For A Replacement Surgical Technologist**

61. The Agency terminated the Third Short Term Contract with Plaintiff on March 27, 2024. Russell Dep. at 144:3-7.

    **Undisputed with clarification.  The Agency terminated the contract with Plaintiff because he failed to meet the conditions of the contract. Russell Deposition.**

62. No one at the Hospital told Ms. Russell not to find Plaintiff a subsequent placement at another facility. Russell Dep. at 185:16-19.

    **Undisputed.**

63. As confirmed by Ms. Russell, the Hospital did not have the authority to hire or fire the Agency's employees or make any decisions with respect to how the Agency operates. Russell Dep. at 184:22-25 – 185:2-8.

4928-5839-2189, v. 1

**Undisputed with clarification. The Hospital had a contractual requirement that permitted it to demand that an employee of JSNA placed at the Hospital be terminated.**

64. As such, the Hospital did not have the power to dictate what the Agency did with Plaintiff once her placement with the Hospital ended. Russell Dep. at 185:16-19.

**Undisputed with clarification. The hospital had the power to require that any placement at the Hospital be removed and terminated.**

65. Thus, any decisions that the Agency made with respect to Plaintiff once her placement with the Hospital ended were reached solely by Ms. Russell. Russell Dep. at 187:2225-188:2.

**Disputed. The Agency made decisions concerning the plaintiff based upon information conveyed and shared by the Hospital. Russell Deposition.**

Dated: December 3, 2025

            **MARKS, O'NEILL, O'BRIEN, DOHERTY, & KELLY, PC**

By: _____
    Belinda R. Boone (BB4163)
    *Attorneys for Defendant*
    **JERSEY SHORE NURSING AGENCY INCORPORATED d/b/a JERSEY SHORE STAFFING AGENCY, INC.**
    580 White Plains Road, Suite 620
    Tarrytown, New York 10591
    914-345-3701
    File No. 2047.114842
    bboone@moodklaw.com

TO:

    Lucas Buzzard, Esq.
Leah Seliger, Esq.
**JOSEPH & KIRSCHENBAUM LLP**
*Attorneys for Plaintiff*
**KIARA NAZAIRE**
32 Broadway, Suite 601
New York, New York 10004
(212) 981-9587
**EMAIL: leah@jk-llp.com**
Lucas@jk-llp.com


Garfunkel Wild, PC
**NICHOLAS SUMMO, ESQ.**
*Attorneys for Defendant*
**ST. BARNABAS HOSPITAL**
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200
E-Mail: azwerling@garfunkelwild.com
        **nsummo@garfunkelwild.com**

Case 1:24-cv-05022-AMD-PK    Document 41-3    Filed 12/15/25    Page 14 of 14 PageID #: 277