# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
KIARA NAZAIRE, :
:
:
Plaintiff, :
:
v. :
:
JERSEY SHORE NURSING AGENCY :
INCORPORATED d/b/a JERSEY SHORE :
STAFFING AGENCY, INC., and ST. :
BARNABAS HOSPITAL, :
:
Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT'S LOCAL
RULE 56.1 STATEMENT OF
<u>MATERIAL FACTS NOT IN DISPUTE</u>**

CASE NO. 1:24-CV-05022-AMD-PK

Defendant St. Barnabas Hospital (the "<u>Hospital</u>") states, pursuant to Rule 56 of the Local

Rules of the United States District Courts for the Southern and Eastern Districts of New York, that

the following material facts cannot be disputed:

**The Hospital's Staffing Agreement
<u>With Jersey Shore Staffing Agency, Inc.</u>**

1.    The Hospital entered into a staffing agreement (the "<u>Agreement</u>") with Jersey

Shore Staffing Agency ("<u>JSSA</u>") on March 30, 2023.  *See* Declaration of Nicholas M. Summo,

dated November 11, 2025 (hereinafter "<u>Summo Decl.</u>"), Exhibit J.

2.    Under the Agreement, JSSA agreed to "recruit, provide, and schedule" temporary

staff to provide various services at the Hospital on an "as needed basis."  *See* Summo Decl., Ex. J,

p. 1.

3.    As part of the Agreement, the Hospital agreed to pay JSSA for the services of the

temporary staff JSSA placed at the Hospital on a temporary basis.  *See* Summo Decl., Ex. J,§ 2.

4.    JSSA would directly pay the temporary staff it placed at the Hospital.  *See* Summo

Decl., Ex. E (hereinafter "<u>Russell Dep.</u>") at 165:4-12.

5.      Understandably, under the Agreement JSSA – and not the Hospital – was required to withhold sums for income tax, unemployment insurance, social security, or any other benefits. *See* Summo Decl., Ex. J, § 8(i).

6.      As such, the Agreement specifically states that all benefits owed to the temporary staff workers were the "exclusive responsibility of the Agency."  *See* Summo Decl., Ex. J, § 8(i).

7.      Accordingly, the Hospital did not provide any sort of employment benefits to JSSA's temporary staff.  Russell Dep. at 166:3-9; Plaintiff Dep at. 42:14-7; 42:18-2 – 43:2.

8.      Under the Agreement, JSSA was required to maintain a "profile" of each temporary staff worker placed at the Hospital.  *See* Summo Decl., Ex. J, § 5(a).

9.      Documents to be kept in the temporary staff workers' profile included:

a)  a current resume;

b)  a copy of the temporary staff worker's current license, registration, and/or certification(s) for the relevant position;

c)  documentation evidencing the temporary staff worker's current annual physical examination, which shall include proof that the temporary staff worker us free from health impairments which pose a potential risk to patients/personnel;

d)  current JCAHO mandatory in-service annual requirements;

e)  a current competency skills check list, including age specific competencies;

f)  evidence of eligibility to work in the United States; certificate of insurance policy in the amounts required in the Agreement;

g)  current BCLS or ACLS card; and

h)  two professional references.

*See* Summo Decl., Ex. J, § 5(b).

2

10. Under the Agreement, the Hospital reserved the right to refuse the participation of any temporary staff worker providing services pursuant to the Agreement. *See* Summo Decl., Ex. J, § 5(d).

11. JSSA was also required to maintain, on its own behalf, as well as each temporary staff worker, professional liability insurance in the amount of $1,000,000 per occurrence and $3,000,000 per occurrence in the aggregate, general liability insurance and workers' compensation insurance. *See* Summo Decl., Ex. J, § 5(e).

12. Additionally, JSSA was required to ensure that all of its temporary staff placed at the Hospital to maintain professional liability insurance in the amount of $1,000,000 per occurrence and $3,000,000 in the aggregate. *See* Summo Decl., Ex. J, § 5(f).

13. The Agreement also prohibits JSSA and all temporary staff workers from holding themselves out as employees of the Hospital. *See* Summo Decl., Ex. J, § 8(i).

14. The Agreement also states that:

> Nothing in this [A]greement is intended, nor shall be construed, to create an employer/employee relationship between [the Hospital] and [JSSA] or between [the Hospital] and the [t]emporary [s]taff m or a joint venture relationship…..

*See* Summo Decl., Ex. J, § 8(ii).

15. On or about February 22, 2024, JSSA assigned its rights and obligations as set forth under the Agreement to defendant Jersey Shore Nursing Agency, Inc. ("JSNA," and collectively with JSSA, the "Agency"). *See* Summo Decl., Ex. L.

**Plaintiff Kiara Nazaire**

16. Plaintiff Kiara Nazaire ("Plaintiff") trained to be surgical technologist at the Swedish Institute of College of Health Sciences between 2016 and 2017. *See* Summo Decl., Ex., D (hereinafter "Plaintiff Dep.") at 20:23-25 – 21:2-8.

3

17.      Plaintiff began working as a traveling surgical technologist in 2018.  Plaintiff Dep. at 24:17-24.

18.      Plaintiff joined the Agency in May 2023.  Plaintiff Dep. at 24:25 – 25:2-3.

**The Agency Places Plaintiff At the Hospital In May 2023**

19.      On or about May 10, 2023, the Agency arranged a short-term, thirteen (13) week placement for Plaintiff at the Hospital.  *See* Summo Aff., Ex. M.

20.      Plaintiff's temporary placement at the Hospital was memorialized in a short-term contract between her and the Agency (the "First Short-Term Contract").  *See* Summo Aff., Ex. M.

21.      The First Short-Term Contract was signed by Plaintiff and Lorraine Russell, the principal of the Agency.  *See* Summo Aff., Ex. M, pp.3-5; Plaintiff Dep. at 30:5-24 Russell Dep. at 169:13-19.

22.      No one from the Hospital signed the First Short-Term Contract.  *See generally* Summo Aff., Ex. M; Plaintiff Dep. at 37:6-8; Russell Dep. at 169:23-25.

23.      Plaintiff's first placement at the Hospital under the First Short-Term Contract began on May 16, 2024 and ended on August 12, 2023.  *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:2-5.

24.      Plaintiff was not guaranteed placement at the Hospital past August 12, 2023.  *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:6-9.

25.      Plaintiff was temporarily assigned to the Hospital as a certified surgical technician during this period.  *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:11-14.

26.      Plaintiff was required to work three twelve (12) hour shifts per week.  *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:15-18.

27.     Plaintiff's hours were 7:00 AM to 7:00 PM.  *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:19-22.

28.     Plaintiff's particular workdays varied each week, and she could be scheduled to work any day Sunday through Monday.  *See* Summo Aff., Ex. M; Plaintiff Dep. at 33:5-9.

29.     The First Short-Term Contract contained language that the Hospital could request that the Agency find a different temporary staff worker as a replacement for her.  *See* Summo Aff., Ex. M, p.2; *see also* Plaintiff Dep. at 36:22-25 – 37:2.

**The Agency Provides Plaintiff With A Second**
**Short-Term Contract For Temporary Placement At The Hospital**

30.     The Agency arranged a second, temporary placement at the Hospital for Plaintiff on July 19, 2023.  *See* Summo Aff., Ex. N; Plaintiff Dep. at 38:3-6.

31.     This placement, which was scheduled to run from August 13, 2023 to December 16, 2023, was memorialized in a second short-term contract between Plaintiff and the Agency (the "Second Short-Term Contract").  *See* Summo Aff., Ex. N.

32.     Plaintiff signed the Second Short-Term Contract.  *See* Summo Aff., Ex. N, pp. 3-5; Plaintiff Dep. at 38:20-23.

33.     While Ms. Russell did not sign the Second Short-Term Contract on behalf of the Agency, she testified that she agreed to the terms therein. Russell Dep. at 172:9-11.

34.     Plaintiff was once again placed at the Hospital to perform services as a certified surgical technologist.  Plaintiff Dep. at 39:21-25 – 40:3.

35.     The Hospital did not pay Plaintiff based on the work she performed under the Second Short-Term Contract.  Plaintiff Dep. at 41:11-15.

5

36.     The language and temporary work arrangements set forth in the Second Short-Term Contract were largely identical to the First Short-Term Contract.  Plaintiff Dep at. 41:16-25 – 42:2-8.

**The Agency Provides Plaintiff With A**
**Third Short-Term Contract For Placement At The Hospital**

37.     The Agency arranged a third short-term placement for Plaintiff at the Hospital on or about December 12, 2023.

38.     This temporary placement was memorialized in an agreement between Plaintiff and the Agency (the "Third Short-Term Contract").  *See* Summo Decl., Ex. O.

39.     Plaintiff received this document from the Agency.  Plaintiff Dep. at 47:3-6.

40.     This temporary short-term placement began on December 17, 2023 and was expected to end on May 4, 2024, for a period of sixteen (16) weeks.  *See* Summo Decl., Ex. O.

41.     The Third Short-Term Contract required Plaintiff to work three (3) 12-hour shifts per week, from 7:00 AM to 7:00 PM, which included an hour of unpaid lunch.  *See* Summo Decl., Ex. O, p. 1.

42.     Plaintiff could have been scheduled to work at the Hospital any day during the week, Sunday through Monday.  *See* Summo Decl., Ex. O, p. 1.

43.     Plaintiff was not guaranteed placement at the Hospital after May 4, 2024.  Plaintiff Dep. at 48:13-16; Russell Dep. at 174:22-24.

44.     Both Plaintiff and Ms. Russell signed the Third Short-Term Contract.  *See* Summo Decl., Ex 0, pp. 3-5; Plaintiff Dep. at 47:10-18; Russell Dep. at 175:16-17.

45.     The Hospital did not sign, review, or approve the language in the Third Short-Term Contract.  *See* Summo Decl., Ex. O; Russel Dep at 175:21-25 – 176:2-3.

6

46.     Like the first two contracts between Plaintiff and the Agency, the Third Short-Term Contract contained language that the contract may be terminated by the Agency in the event the Hospital requested a different staff placement to fill Plaintiff's position.  *See* Summo Decl., Ex. O.

**Plaintiff Learns She is Pregnant; Requests and Receives From The
Hospital An Accommodation To Avoid Working In Surgical Suites With X-rays**

47.     Plaintiff learned she was pregnant in February 2024.  Plaintiff Dep. at 55:7-10.

48.     The Agency offered Plaintiff FMLA leave. Plaintiff Dep. at 59:15-21.

49.     Plaintiff, however, did not apply for FMLA leave, or even inform the Agency of her intention to take such leave. Russell Dep. at 189:5-11.

50.     Plaintiff also did not apply for FMLA leave through the Hospital, nor did she inform Hospital staff that she was planning to take such leave.   Plaintiff Dep at 61:12-19.

51.     After she learned that she was pregnant, Plaintiff asked not to participate in surgeries that required x-rays.  Plaintiff Dep. at 63:19-25 – 64:2-4.

52.     The Hospital honored Plaintiff's request and she was not required to assist with a surgery that required x-rays.  Plaintiff Dep. at 63:19-25.

**Plaintiff Fails To Work Her Required Hours; As A Result,
The Hospital Requests A Replacement Surgical Technologist**

53.     Beginning in early February 2024, Plaintiff began leaving work early or calling out of her assigned shifts all together.   *See* Declaration of Gennady Kuzin, dated October 28, 2025 (hereinafter "Kuzin Decl."), ¶ 50; Plaintiff Dep. at 64:5-13.

54.     Plaintiff's attendance issues caused logistical difficulties for the Hospital, as it had to find other staff to cover her shifts on short notice so as to ensure that each surgery that was scheduled was adequately staffed.  Kuzin Decl., ¶ 50.

7

55.     As confirmed by Plaintiff during her deposition, between early February 2024 and March 27, 2024, she failed to work her required three-day work week (a minimum of 33 hours per week) five times.  *See* Kuzin Decl., ¶ 51 & Ex. A; Plaintiff Dep. at 64:5-9; 72:8-15; Russell Dep. at 180:23-25 – 181:4-8.

56.     Specifically, Plaintiff failed to work a full day on:

a)  February 9, 2024 (left work approximately five hours early);

b)  February 15, 2024 (did not work at all);

c)  February 27, 2024 (left work approximately 10.5 hours early);

d)  March 14, 2024 (did not work at all);

e)  March 15, 2024 (did not work at all); and

f)  March 21, 2024 (clocked in a half an hour late and then left work approximately 6.5 hours early).

Kuzin Decl., ¶ 52 & Ex. A.

57.     Henry Kuzin, the Director of Perioperative Services at the Hospital, was never informed about the reasons why Plaintiff was not showing up for her scheduled shifts, or why she left early.  Kuzin Decl., ¶ 53.

58.     On March 21, 2024, Mr. Kuzin had a discussion with Ms. Russell regarding a potential replacement surgical technologist to provide services at the Hospital from 7:00 AM to 7:00 PM.  Kuzin Decl., ¶ 54.

59.     Plaintiff subsequently failed to work her scheduled shift on March 26, 2024.  Kuzin Decl., ¶ 54 & Ex. A; Plaintiff Dep. at 71:22-25 – 72:2-4.

60.     The next day, Mr. Kuzin emailed Ms. Russell to formally request a replacement surgical technologist from the Agency due to Plaintiff's failure to fulfil her hours' obligation. Kuzin Decl., ¶ 55 & Ex. B; Russell Dep. at 182:11-14.

**The Agency Terminates Plaintiff's Employment Following**
**The Hospital's Request For A Replacement Surgical Technologist**

61.     The Agency terminated the Third Short Term Contract with Plaintiff on March 27, 2024.  Russell Dep. at 144:3-7.

62.     No one at the Hospital told Ms. Russell not to find Plaintiff a subsequent placement at another facility. Russell Dep. at 185:16-19.

63.     As confirmed by Ms. Russell, the Hospital did not have the authority to hire or fire the Agency's employees, or make any decisions with respect to how the Agency operates.  Russell Dep. at 184:22-25 – 185:2-8.

64.     As such, the Hospital did not have the power to dictate what the Agency did with Plaintiff once her placement with the Hospital ended.  Russell Dep. at 185:16-19.

65.     Thus, any decisions that the Agency made with respect to Plaintiff once her placement with the Hospital ended were reached solely by Ms. Russell.  Russell Dep. at 187:22-25-188:2.

Dated: Garden City, New York
       November 14, 2025

                                  **GARFUNKEL WILD, P.C.**
                                  *Attorneys for Defendant St. Barnabas Hospital*


                                  By:  _/s/ Nicholas M. Summo_
                                          Andrew L. Zwerling
                                          Nicholas M. Summo
                                  111 Great Neck Road
                                  Great Neck, New York 11021
                                  (516) 393-2200

TO:  Lucas Buzzard, Esq.
Leah Seliger, Esq.
Joseph & Kirschenbaum LLP
*Attorneys for Plaintiff Kiara Nazaire*
32 Broadway, Suite 601
New York, New York 10004
(212) 981-9587

cc:  Belinda R. Boone, Esq.
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
*Attorneys for Jersey Shore Nursing Agency, Inc.*
600 Third Avenue, Suite 1501
New York, New York 10016
(212) 967-0080

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

KIARA NAZAIRE,

        Plaintiff,

   v.

                                    CASE NO.: 1:24-CV-05022

JERSEY SHORE NURSING AGENCY
INCORPORATED d/b/a JERSEY SHORE
STAFFING AGENCY, INC. and ST. BARNABAS
HOSPITAL,

               Defendants.

-----------------------------------------------------------x

**PLAINTIFF'S COUNTERSTATEMENT OF FACTS IN RESPONSE TO DEFENDANT ST. BARNABAS HOSPITAL'S RULE 56.1 STATEMENT**

Pursuant to Local Civil Rule 56.1, Plaintiff Kiara Nazaire, by and through her attorneys Joseph & Kirschenbaum LLP, submits this Counterstatement of facts in response to Defendant St. Barnabas Hospital's Rule 56.1 Statement.[1]

1.     The Hospital entered into a staffing agreement (the "Agreement") with Jersey Shore Staffing Agency ("JSSA") on March 30, 2023.  *See* Declaration of Nicholas M. Summo, dated November 11, 2025 (hereinafter "Summo Decl."), Exhibit J.

     1.    **Admit.**

2.     Under the Agreement, JSSA agreed to "recruit, provide, and schedule" temporary staff to provide various services at the Hospital on an "as needed basis."  *See* Summo Decl., Ex. J, p. 1.

     2.    **Admit.**

---

[1] In support of this statement, Plaintiff cites to the November 14, 2025 Declaration of Lucas C. Buzzard ("Buzzard Decl.") and exhibits attached thereto ("Buzzard Decl., Ex. [INSERT]") and the December 1, 2025 Declaration of Kiara Nazaire. Transcripts of depositions taken in connection with this case are identified by the deponent's last name (e.g., "Kuzin Dep.").

3.      As part of the Agreement, the Hospital agreed to pay JSSA for the services of the temporary staff JSSA placed at the Hospital on a temporary basis.  *See* Summo Decl., Ex. J,§ 2.

    3.      **Admit.**

4.      JSSA would directly pay the temporary staff it placed at the Hospital.  *See* Summo Decl., Ex. E (hereinafter "Russell Dep.") at 165:4-12.

    4.      **Admit.**

5.      Understandably, under the Agreement JSSA – and not the Hospital – was required to withhold sums for income tax, unemployment insurance, social security, or any other benefits. *See* Summo Decl., Ex. J, § 8(i).

    5.      **Admit.**

6.      As such, the Agreement specifically states that all benefits owed to the temporary staff workers were the "exclusive responsibility of the Agency."  *See* Summo Decl., Ex. J, § 8(i).

    6.      **Admit.**

7.      Accordingly, the Hospital did not provide any sort of employment benefits to JSSA's temporary staff.  Russell Dep. at 166:3-9; Plaintiff Dep. at 42:14-7; 42:18-2 – 43:2.

    7.      **Admit.**

8.      Under the Agreement, JSSA was required to maintain a "profile" of each temporary staff worker placed at the Hospital.  *See* Summo Decl., Ex. J, § 5(a).

    8.      **Admit.**

9.      Documents to be kept in the temporary staff workers' profile included:

    a.   a current resume;

    b.  a copy of the temporary staff worker's current license, registration, and/or certification(s) for the relevant position;

    c.  documentation evidencing the temporary staff worker's current annual physical

examination, which shall include proof that the temporary staff worker us free from

health impairments which pose a potential risk to patients/personnel;

   d.   current JCAHO mandatory in-service annual requirements;

   e.   a current competency skills check list, including age specific competencies;

  f.   evidence of eligibility to work in the United States; certificate of insurance policy

in the amounts required in the Agreement;

   g.   current BCLS or ACLS card; and

   h.   two professional references.

*See* Summo Decl., Ex. J, § 5(b).

      9.     **Admit.** *See also* Summo Decl., Ex. J ¶ 5(b) (further indicating that the Hospital was to be "provide[d]" with a copy off the Temporary Staff worker's profile).

   10.    Under the Agreement, the Hospital reserved the right to refuse the participation of any temporary staff worker providing services pursuant to the Agreement.  *See* Summo Decl., Ex. J, § 5(d).

      10.    **Deny to the extent Paragraph 10 suggests that the Hospital *only* reserved "the right to refuse the participation of any temporary staff worker."** *See* Summo Decl., Ex. J § 5(d) ("SBH may *terminate or* refuse the participation of any Temporary Staff worker providing services pursuant to this Agreement, effective immediately, in SBH's sole discretion for any reason whatsoever." (emphasis added)).

   11.    JSSA was also required to maintain, on its own behalf, as well as each temporary staff worker, professional liability insurance in the amount of $1,000,000 per occurrence and $3,000,000 per occurrence in the aggregate, general liability insurance and workers' compensation insurance. *See* Summo Decl., Ex. J, § 5(e).

      11.    **Admit.**

   12.    Additionally, JSSA was required to ensure that all of its temporary staff placed at

the Hospital to maintain professional liability insurance in the amount of $1,000,000 per occurrence and $3,000,000 in the aggregate. *See* Summo Decl., Ex. J, § 5(f).

13.     The Agreement also prohibits JSSA and all temporary staff workers from holding themselves out as employees of the Hospital. *See* Summo Decl., Ex. J, § 8(i).

   13.     **Admit.**

14.     The Agreement also states that:

   Nothing in this [A]greement is intended, nor shall be construed, to create an employer/employee relationship between [the Hospital] and [JSSA] or between [the Hospital] and the [t]emporary [s]taff m or a joint venure relationship…..

*See* Summo Decl., Ex. J, § 8(ii).

   14.     **Admit.** *But see* Summo Decl., Ex. J ¶ 8(ii) (requiring that the services provided by temporary staff "shall be rendered and performed in a competent, efficient and satisfactory manner and in accordance with the standards required by SBH [and] its rules and regulations . . ..").

15.     On or about February 22, 2024, JSSA assigned its rights and obligations as set forth under the Agreement to defendant Jersey Shore Nursing Agency, Inc. ("JSNA," and collectively with JSSA, the "Agency"). *See* Summo Decl., Ex. L.

   15.     **Admit.**

16.     Plaintiff Kiara Nazaire ("Plaintiff") trained to be surgical technologist at the Swedish Institute of College of Health Sciences between 2016 and 2017. *See* Summo Decl., Ex., D (hereinafter "Plaintiff Dep.") at 20:23-25 – 21:2-8.

   16.     **Admit.**

17.     Plaintiff began working as a traveling surgical technologist in 2018. Plaintiff Dep. at 24:17-24.

   17.     **Admit.**

18.     Plaintiff joined the Agency in May 2023.  Plaintiff Dep. at 24:25 – 25:2-3.

      18.     **Admit.**

19.     On or about May 10, 2023, the Agency arranged a short-term, thirteen (13) week placement for Plaintiff at the Hospital.  *See* Summo Aff., Ex. M.

      19.     **Admit.**

20.     Plaintiff's temporary placement at the Hospital was memorialized in a short-term contract between her and the Agency (the "First Short-Term Contract").  *See* Summo Aff., Ex. M.

      20.     **Admit.**

21.     The First Short-Term Contract was signed by Plaintiff and Lorraine Russell, the principal of the Agency.  *See* Summo Aff., Ex. M, pp.3-5; Plaintiff Dep. at 30:5-24 Russell Dep. at 169:13-19.

      21.     **Admit.**

22.     No one from the Hospital signed the First Short-Term Contract.  *See generally* Summo Aff., Ex. M; Plaintiff Dep. at 37:6-8; Russell Dep. at 169:23-25.

      22.     **Admit.** *But see* Russell Dep. at 20:6-14; 22:6-14 (testifying that Henry Kuzin, the Hospital's Director of Perioperative Services, gave approval to hire Plaintiff).

23.     Plaintiff's first placement at the Hospital under the First Short-Term Contract began on May 16, 2024 and ended on August 12, 2023.  *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:2-5.

      23.     **Admit.**

24.     Plaintiff was not guaranteed placement at the Hospital past August 12, 2023.  *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:6-9.

24.    **Admit.** *But see* Buzzard Decl. Exs. 9, 10 (Additional contracts for Plaintiff to work at the Hospital); Kuzin 6.17.25 Dep. at 51:8 (testifying that he had to approve extensions of Plaintiff's time working at the Hospital).

25.    Plaintiff was temporarily assigned to the Hospital as a certified surgical technician during this period. *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:11-14.

25.    **Admit.**

26.    Plaintiff was required to work three twelve (12) hour shifts per week. *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:15-18.

26.    **Admit.** *See* Summo Aff., Ex. M at P0002 (stating that Plaintiff's schedule would be determined directly between the Hospital's Unit Director and Plaintiff and that "[a]ny changes to contracted hours will be approved by OR Unit Director").

27.    Plaintiff's hours were 7:00 AM to 7:00 PM. *See* Summo Aff., Ex. M; Plaintiff Dep. at 32:19-22.

27.    **Admit.** *See* Summo Aff., Ex. M at P0002 (stating that Plaintiff's schedule would be determined directly between the Hospital's Unit Director and Plaintiff and that "[a]ny changes to contracted hours will be approved by OR Unit Director").

28.    Plaintiff's particular workdays varied each week, and she could be scheduled to work any day Sunday through Monday. *See* Summo Aff., Ex. M; Plaintiff Dep. at 33:5-9.

28.    **Admit** that the Hospital determined Plaintiff's schedule. *See* Kuzin 6.17.25 Dep. at 44:5-9.

29.    The First Short-Term Contract contained language that the Hospital could request that the Agency find a different temporary staff worker as a replacement for her. *See* Summo Aff., Ex. M, p.2; *see also* Plaintiff Dep. at 36:22-25 – 37:2.

29.    **Admit** that the agreement provides that the Short-Term Contract was "derived" from JSNA's agreement with the Hospital and that the Short-Term Contract "may be terminated by [JSNA] at any time in the event that its client (the medical facility) requests a different staff placement to fill

this position." Summo Aff., Ex. M at P0002.

30.     The Agency arranged a second, temporary placement at the Hospital for Plaintiff on July 19, 2023.  *See* Summo Aff., Ex. N; Plaintiff Dep. at 38:3-6.

30.     **Deny.** All extensions were approved by Kuzin at the Hospital. *See* Kuzin 6.17.25 Dep. at 51:8 (testifying that he had to approve extensions of Plaintiff's time working at the Hospital).

31.     This placement, which was scheduled to run from August 13, 2023 to December 16, 2023, was memorialized in a second short-term contract between Plaintiff and the Agency (the "Second Short-Term Contract").  *See* Summo Aff., Ex. N.

31.     **Admit.**

32.     Plaintiff signed the Second Short-Term Contract.  *See* Summo Aff., Ex. N, pp. 3-5; Plaintiff Dep. at 38:20-23.

32.     **Admit.**

33.     While Ms. Russell did not sign the Second Short-Term Contract on behalf of the Agency, she testified that she agreed to the terms therein. Russell Dep. at 172:9-11.

33.     **Admit.** *See also* Kuzin 6.17.25 Dep. at 51:8 (testifying that he had to approve extensions of Plaintiff's time working at the Hospital).

34.     Plaintiff was once again placed at the Hospital to perform services as a certified surgical technologist.  Plaintiff Dep. at 39:21-25 – 40:3.

34.     **Admit.** *See also* Kuzin 6.17.25 Dep. at 51:8 (testifying that he had to approve extensions of Plaintiff's time working at the Hospital).

35.     The Hospital did not pay Plaintiff based on the work she performed under the Second Short-Term Contract.  Plaintiff Dep. at 41:11-15.

35.     **Admit.**

36.     The language and temporary work arrangements set forth in the Second Short-Term Contract were largely identical to the First Short-Term Contract.  Plaintiff Dep at. 41:16-25 – 42:2-

7

8.

    36.    **Admit** that the two contracts were "largely," but not completely, identical**.** *Compare* Summo Aff., Ex. N at JSNA000197 (stating that "Kiara is requesting off from August 25, 2023 to September 4, 2023, this has been discussed and Approved by OR Director. Kiara also wishes to request another week off during this contract. These dates are to be discussed and approved by OR Director at a later date.") *with* Summo Aff., Ex. at P0002 (containing no such language).

37.    The Agency arranged a third short-term placement for Plaintiff at the Hospital on or about December 12, 2023.

    38.    **Deny.** All extensions were approved by Kuzin at the Hospital. *See* Kuzin 6.17.25 Dep. at 51:8 (testifying that he had to approve extensions of Plaintiff's time working at the Hospital).

37.    This temporary placement was memorialized in an agreement between Plaintiff and the Agency (the "Third Short-Term Contract"). *See* Summo Decl., Ex. O.

    38.    **Admit.**

39.    Plaintiff received this document from the Agency.  Plaintiff Dep. at 47:3-6.

    39.    **Admit**.

40.    This temporary short-term placement began on December 17, 2023 and was expected to end on May 4, 2024, for a period of sixteen (16) weeks.  *See* Summo Decl., Ex. O.

    40.    **Admit**. *But see* Summo Decl., Ex. O at P0012 (stating that "Kiara is requesting off from January 5, 2024 to February 5, 202[4], this has been discussed and Approved by OR Director"); Kuzin 6.17.25 Dep. at 60:20-61:19; Russell Dep. at 131:23-132:2.

41.    The Third Short-Term Contract required Plaintiff to work three (3) 12-hour shifts per week, from 7:00 AM to 7:00 PM, which included an hour of unpaid lunch.  *See* Summo Decl., Ex. O, p. 1.

    41.    **Admit**. *But see* Summo Decl., Ex. O at P0012 (stating that "Kiara is requesting off from January 5, 2024 to February 5, 202[4], this has been discussed and Approved by OR Director"); Kuzin 6.17.25 Dep. at 60:20-61:19; Russell Dep. at 131:23-132:2.

42.     Plaintiff could have been scheduled to work at the Hospital any day during the week, Sunday through Monday.  *See* Summo Decl., Ex. O, p. 1.

> 42.     **Admit** that the Hospital determined Plaintiff's schedule. *See* Kuzin 6.17.25 Dep. at 44:5-9.

43.     Plaintiff was not guaranteed placement at the Hospital after May 4, 2024.  Plaintiff Dep. at 48:13-16; Russell Dep. at 174:22-24.

> 43.     **Admit** that the Third Short-Term Contract ran until May 4, 2024. *See* Summo Decl., Ex. O.

44.     Both Plaintiff and Ms. Russell signed the Third Short-Term Contract.  *See* Summo Decl., Ex 0, pp. 3-5; Plaintiff Dep. at 47:10-18; Russell Dep. at 175:16-17.

> 44.     **Admit.**

45.     The Hospital did not sign, review, or approve the language in the Third Short-Term Contract.  *See* Summo Decl., Ex. O; Russel Dep at 175:21-25 – 176:2-3.

> 45.     **Deny.** *See* Summo Decl., Ex. O at P0012 (stating that "Kiara is requesting off from January 5, 2024 to February 5, 202[4], this has been discussed and Approved by OR Director").

46.     Like the first two contracts between Plaintiff and the Agency, the Third Short-Term Contract contained language that the contract may be terminated by the Agency in the event the Hospital requested a different staff placement to fill Plaintiff's position.  *See* Summo Decl., Ex. O.

> 46.     **Admit** that the Third Short-Term Contract was "derived" from JSNA's agreement with the Hospital and that the Short-Term Contract "may be terminated by [JSNA] at any time in the event that its client (the medical facility) requests a different staff placement to fill this position." *See* Summo Decl., Ex. O.

47.     Plaintiff learned she was pregnant in February 2024.  Plaintiff Dep. at 55:7-10.

> 47.     **Admit.**

48.     The Agency offered Plaintiff FMLA leave. Plaintiff Dep. at 59:15-21.

48. **Deny.** The cited evidence does not support the proposition that the Agency "offered" Plaintiff FMLA leave, only that Defendant Russell "mentioned . . . applying for that." Plaintiff Dep. at 59:15-21.

49. Plaintiff, however, did not apply for FMLA leave, or even inform the Agency of her intention to take such leave. Russell Dep. at 189:5-11.

49. **Deny.** *See* Plaintiff's Dep. at 59:15-21 (testifying that in a conversation between Plaintiff and Russell, "applying for" FMLA leave was "mentioned").

50. Plaintiff also did not apply for FMLA leave through the Hospital, nor did she inform Hospital staff that she was planning to take such leave. Plaintiff Dep at 61:12-19.

50. **Admit.**

51. After she learned that she was pregnant, Plaintiff asked not to participate in surgeries that required x-rays. Plaintiff Dep. at 63:19-25 – 64:2-4.

51. **Admit.**

52. The Hospital honored Plaintiff's request and she was not required to assist with a surgery that required x-rays. Plaintiff Dep. at 63:19-25.

52. **Admit.**

53. Beginning in early February 2024, Plaintiff began leaving work early or calling out of her assigned shifts all together. *See* Declaration of Gennady Kuzin, dated October 28, 2025 (hereinafter "Kuzin Decl."), ¶ 50; Plaintiff Dep. at 64:5-13.

53. **Admit** that, due to sickness associated with her pregnancy, Plaintiff was required to call out from work or got sent home early and that, on each such occasion, she followed the Hospital's attendance protocols. Nazaire Dep. at 122:20-123:2; Nazaire Decl. ¶¶ 5-10; Buzzard Decl. Ex. 19.

54. Plaintiff's attendance issues caused logistical difficulties for the Hospital, as it had to find other staff to cover her shifts on short notice so as to ensure that each surgery that was scheduled was adequately staffed. Kuzin Decl., ¶ 50.

54. Plaintiff is not in possession of evidence to admit or deny this paragraph. *But see* Nazaire Decl. ¶¶ 5-10 (testifying that she never took an unapproved absence from SBH).

55. As confirmed by Plaintiff during her deposition, between early February 2024 and March 27, 2024, she failed to work her required three-day work week (a minimum of 33 hours per week) five times. *See* Kuzin Decl., ¶ 51 & Ex. A; Plaintiff Dep. at 64:5-9; 72:8-15; Russell Dep. at 180:23-25 – 181:4-8.

55. **Deny** that Plaintiff "fail[ed] to work." *See* Nazaire Decl. ¶¶ 5-10 (testifying that she never took an absence or left work early without first following SBH procedures and gaining approval).

56. Specifically, Plaintiff failed to work a full day on:

   a. February 9, 2024 (left work approximately five hours early);

   b. February 15, 2024 (did not work at all);

   c. February 27, 2024 (left work approximately 10.5 hours early);

   d. March 14, 2024 (did not work at all);

   e. March 15, 2024 (did not work at all); and

   f. March 21, 2024 (clocked in a half an hour late and then left work approximately 6.5 hours early).

Kuzin Decl., ¶ 52 & Ex. A.

56. **Deny** that Plaintiff "fail[ed] to work." *See* Nazaire Decl. ¶¶ 5-10 (testifying that she never took an absence or left work early without first following SBH procedures and gaining approval).

57. Henry Kuzin, the Director of Perioperative Services at the Hospital, was never informed about the reasons why Plaintiff was not showing up for her scheduled shifts, or why she left early. Kuzin Decl., ¶ 53.

57. **Deny.** *See* Buzzard Decl., Ex. 19 (March 22, 2024 Email); Buzzard Decl., Ex. 20 (March 25, 2024 Email); Russell Dep. at 84:16-19, 84:23-85:10,

87:4-6, 99:17-19, 101:12-14; *see also* Nazaire Decl. ¶¶ 16-23.

58.    On March 21, 2024, Mr. Kuzin had a discussion with Ms. Russell regarding a potential replacement surgical technologist to provide services at the Hospital from 7:00 AM to 7:00 PM.  Kuzin Decl., ¶ 54.

> 58.    **Admit.** *See* Russell Dep. at 84:16-19, 84:23-85:10 (testifying that Kuzin informed Russell that Plaintiff was pregnant during this discussion on March 21, 2024).

59.    Plaintiff subsequently failed to work her scheduled shift on March 26, 2024.  Kuzin Decl., ¶ 54 & Ex. A; Plaintiff Dep. at 71:22-25 – 72:2-4.

> 59.    **Deny.** *See* Plaintiff Dep. at 71:22-72:4 (denying that she "failed to show up to work" and testifying that she "called out that day"); *see also* Nazaire Decl. ¶¶ 5-10.

60.    The next day, Mr. Kuzin emailed Ms. Russell to formally request a replacement surgical technologist from the Agency due to Plaintiff's failure to fulfil her hours' obligation.  Kuzin Decl., ¶ 55 & Ex. B; Russell Dep. at 182:11-14.

> 60.    **Deny.** Kuzin did not "request a replacement." His email reads: "As per our conversation on Thursday March 21, I am confirming the termination of Ms. Nazaire due to her inability to fulfill her hours obligation to SBH." Kuzin Decl. Ex. B.

**The Agency Terminates Plaintiff's Employment Following**
**The Hospital's Request For A Replacement Surgical Technologist**

61.    The Agency terminated the Third Short Term Contract with Plaintiff on March 27, 2024.  Russell Dep. at 144:3-7.

> 61.    **Admit in part; deny in part. Admit** the Agency terminated the Third Short-Term Contract on March 27, 2024. **Deny** to the extent Paragraph 61 suggests that the Hospital did not also terminate the Third Short Term Contract. *See* Buzzard Decl., Ex. 6 (SBH-JSNA Agreement) ¶ 5(d) (stating that "SBH may terminate . . . any Temporary Staff worker providing services pursuant to this Agreement, effective immediately, in SBH's sole discretion for any reason whatsoever); Buzzard Decl., Ex. 10 (Nazaire Third Contract) at JSNA000202 (stating that the provisions of the SBH-JSNA agreement "shall apply to this Agreement"); Buzzard Decl., Ex. 21 (March

12

27, 2024 Email) (email from Kuzin stating that he was "confirming the termination of Ms. Nazaire"); Buzzard Decl., Ex. 22, at JSNA 00016 (email to Russell stating that she should "terminate the employee because the contract with her has been terminated by the hospital").

62.     No one at the Hospital told Ms. Russell not to find Plaintiff a subsequent placement at another facility. Russell Dep. at 185:16-19.

> 62.    **Admit.**

63.     As confirmed by Ms. Russell, the Hospital did not have the authority to hire or fire the Agency's employees, or make any decisions with respect to how the Agency operates.  Russell Dep. at 184:22-25 – 185:2-8.

> 63.    **Deny.** *See* Buzzard Decl., Ex. 6 (SBH-JSNA Agreement) ¶ 5(d) (stating that "SBH may terminate . . . any Temporary Staff worker providing services pursuant to this Agreement, effective immediately, in SBH's sole discretion for any reason whatsoever); Buzzard Decl., Ex. 10 (Nazaire Third Contract) at JSNA000202 (stating that the provisions of the SBH-JSNA agreement "shall apply to this Agreement"); Buzzard Decl., Ex. 21 (March 27, 2024 Email) (email from Kuzin stating that he was "confirming the termination of Ms. Nazaire"); Buzzard Decl., Ex. 22, at JSNA 00016 (email to Russell stating that she should "terminate the employee because the contract with her has been terminated by the hospital").

64.     As such, the Hospital did not have the power to dictate what the Agency did with Plaintiff once her placement with the Hospital ended.  Russell Dep. at 185:16-19.

> 64.    **Deny.** *See* Buzzard Decl., Ex. 6 (SBH-JSNA Agreement) ¶ 5(d) (stating that "SBH may terminate . . . any Temporary Staff worker providing services pursuant to this Agreement, effective immediately, in SBH's sole discretion for any reason whatsoever); Buzzard Decl., Ex. 10 (Nazaire Third Contract) at JSNA000202 (stating that the provisions of the SBH-JSNA agreement "shall apply to this Agreement"); Buzzard Decl., Ex. 21 (March 27, 2024 Email) (email from Kuzin stating that he was "confirming the termination of Ms. Nazaire"); Buzzard Decl., Ex. 22, at JSNA 00016 (email to Russell stating that she should "terminate the employee because the contract with her has been terminated by the hospital").

65.     Thus, any decisions that the Agency made with respect to Plaintiff once her placement with the Hospital ended were reached solely by Ms. Russell.  Russell Dep. at 187:22-

25-188:2.

65.   **Deny.** *See* Buzzard Decl., Ex. 6 (SBH-JSNA Agreement) ¶ 5(d) (stating that "SBH may terminate . . . any Temporary Staff worker providing services pursuant to this Agreement, effective immediately, in SBH's sole discretion for any reason whatsoever); Buzzard Decl., Ex. 10 (Nazaire Third Contract) at JSNA000202 (stating that the provisions of the SBH-JSNA agreement "shall apply to this Agreement"); Buzzard Decl., Ex. 21 (March 27, 2024 Email) (email from Kuzin stating that he was "confirming the termination of Ms. Nazaire"); Buzzard Decl., Ex. 22, at JSNA 00016 (email to Russell stating that she should "terminate the employee because the contract with her has been terminated by the hospital").

Dated: New York, New York
       December 4, 2025

**JOSEPH & KIRSCHENBAUM LLP**

/s/*Lucas C. Buzzard*

Lucas Buzzard, Esq.
Leah Seliger, Esq.
Joseph & Kirschenbaum LLP
32 Broadway, Suite 601
New York, New York 10004
(212) 688-5640

*Attorneys for Plaintiff*

14