**GARFUNKEL WILD, P.C.**
ATTORNEYS AT LAW

900 STEWART AVENUE • GARDEN CITY, NEW YORK 11530
TEL (516) 393-2200 • FAX (516) 466-5964

www.garfunkelwild.com

NICHOLAS M. SUMMO
Senior Attorney
Licensed in NY, NJ, CT
Email: nsummo@garfunkelwild.com
Direct Dial: (516) 393-2594

FILE NO.:   00113.1850

December 24, 2025

**By ECF**

The Honorable Ann Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Nazaire v. JSNA, Inc. et al*
           Docket No. 1:24-CV-5022

Dear Judge Donnelly:

    We are counsel to defendant St. Barnabas Hospital (the "Hospital") in the referenced action. We write in response to the Court's order, dated December 16, 2025, directing the parties to file responses to the pre-motion conference letters filed on December 16, 2025.[1] Specifically, this letter is to respond to Plaintiff's anticipated arguments that the Hospital jointly employed Plaintiff under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

    As a threshold matter, we feel compelled to address several erroneous factual claims made by Plaintiff in her letter.

    First, the Hospital did not "approve" Plaintiff's hiring. Rather, it merely authorized her to be placed at the Hospital on a temporary basis. The indisputable evidence demonstrates that the decision to ultimately *hire* Plaintiff as an employee was made solely by Jersey Shore Nursing Agency, Inc. d/b/a Jersey Shore Staffing Agency, Inc. (the "Agency"). *See* Hospital Rule 56.1 Statement, dated November 14, 2025 ("SBH 56.1 Stmt."), ¶ 18.

    Second, the Hospital did not directly supervise Plaintiff. To the contrary, Ms. Russell testified at her deposition that she was Plaintiff's supervisor. As such, the Hospital did not have the authority to discipline Plaintiff or provide her with performance evaluations. Rather, those two

---

[1] The Hospital's pre-motion letter, dated December 15, 2025, is fully incorporated herein by reference. *See* Dkt. No. 42.

The Honorable Ann Donnelly
December 24, 2025
Page 2

areas were solely within the Agency's control. *See* Declaration of Gennady Kuzin, dated October 28, 2025 ("Kuzin Decl."), ¶ 45. If the Hospital had any kind of issue with Plaintiff, the only recourse it had was to speak directly to Ms. Russell. *Id.*, ¶ 47.

Third, Plaintiff mistakenly claims that SBH's contract with the Agency authorized it to "terminate" JSNA's employees. The Hospital does not dispute that it was empowered to discontinue the placement of temporary staff at its facility, but there is nothing in its agreement with JSNA (nor any other evidence produced in discovery) giving the Hospital the ability to make personnel decisions for JSNA's staff once they were no longer working at the Hospital. *See* SBH 56.1 Stmt., ¶¶ 63-64. This was specifically confirmed by both Ms. Russell and Henry Kuzin during their depositions. Nor is there any proof to refute their testimony. Plaintiff's arguments that the Hospital somehow possessed an outsized ability to dictate Agency operations is without any factual support and should be disregarded by the Court. Indeed, Ms. Russell specifically confirmed that even after Plaintiff's tenure with the Hospital ended, she nevertheless offered Plaintiff placement at another Hospital. SBH 56.1 Stmt., Ex. E, 183:19-24.

Fourth, Mr. Kuzin did not confirm the termination of Plaintiff's employment with JSNA. Rather, Mr. Kuzin merely asked that JSNA discontinue Plaintiff's placement at the Hospital and find a suitable replacement for her shift due to her inability to meet her weekly hours' obligations. *See* SBH 56.1 Stmt., ¶ 60. As Ms. Russell testified, it was she – and not anyone from the Hospital – who made the decision to terminate Plaintiff's employment. *See* SBH 56.1 Stmt., ¶¶ 61-65.

The other facts that Plaintiff points to as dispositive with respect to the Hospital's status as a purported joint employer are unavailing. For example, while the Hospital maintained time records for Plaintiff, the record is clear that she (like all Agency employees placed at the Hospital) was paid directly by the Agency.[2] *See* SBH 56.1 Stmt., ¶ 4. Additionally, the Agency, and not the Hospital, was responsible for the necessary withholding for taxes, unemployment insurance, social security, and other benefits. *Id.*, ¶ 5.

Moreover, while the Hospital certainly set Plaintiff's work schedule and location, we respectfully submit that various factors used to determine joint employer status, *i.e.*, the "commonality of hiring, firing, discipline, pay, insurance, records, and supervision," are simply not present in the instant matter. *Cannizzaro v. City of New York*, 82 Misc. 3d 563, 574 (N.Y. Sup. Ct. 2023). Moreover, as explained in *Conde v. Sisley Cosms. USA, Inc.*, at *3 (S.D.N.Y. May 23, 2012), an entity does not assume joint employer status simply because it subjects an individual to its dress code and/or workplace rules.

Finally, we note that even if the Court were to determine that the Hospital was Plaintiff's joint employer, it nevertheless is entitled to summary judgment with respect to Plaintiff's discrimination claims. To reiterate, a joint employer is not liable for the discriminatory acts of

---

[2] The reason why the Hospital would maintain such records is completely logical. JSNA would bill the Hospital for the services of the temporary staff it places at the Hospital. *See* SBH 56.1 Stmt., ¶ 3. It makes sense from a business perspective that the Hospital would maintain such records to ensure that it was being billed the correct amounts for the services it was receiving.

GARFUNKEL WILD, P.C.

The Honorable Ann Donnelly
December 24, 2025
Page 3

another joint employer merely because it is a joint employer. *Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 388 (S.D.N.Y. 2012).

  As we explained in our pre-motion letter, there is literally no record evidence that the Hospital participated in, requested, or even encouraged the termination of Plaintiff's employment from the Agency. Rather, the Hospital simply asked the Agency to find a new surgical technologist to cover Plaintiff's assigned shift due to her inability to fulfil her weekly hours. SBH 56.1 Stmt, ¶ 58; 60. This was confirmed unequivocally by both Ms. Russell and Mr. Kuzin during their depositions, and there is not a scintilla of evidence in the record to the contrary.

  Moreover, no one from the Hospital told Ms. Russell not to find Plaintiff a subsequent placement at another facility. *Id*., ¶ 62. Since the Hospital did not play a role in the termination of Plaintiff's employment, the Hospital cannot be held liable as a joint employer with respect to Plaintiff's discrimination claim against the Agency.[3]

  We sincerely thank the Court for its time and attention to this matter and look forward to addressing these issues with Your Honor at a pre-motion conference in the New Year.

                Respectfully submitted,

                /s/ *Nicholas M. Summo*

                Nicholas M. Summo

cc: All counsel record (*by PACER*).

---

[3] To reiterate, even if the Court found that the Hospital played a role with respect to the termination of Plaintiff's employment – which we respectfully submit would be erroneous - there is nevertheless ample evidence that would still entitle to the Hospital to summary judgment. That is because the Hospital sought a new surgical technologist *solely* as a result of Plaintiff's inability to fulfil her weekly hours' requirement, an indisputable fact which Plaintiff herself does not dispute. SBH 56.1 Stmt, ¶ 55; 60. As such, this non-discriminatory reason justifies the Hospital's entitlement to summary judgment dismissal of Plaintiff's claims. *Tieu v. New York City Econ. Dev. Corp*., 717 F. Supp. 3d 305, 323 (S.D.N.Y. 2024), *appeal withdrawn*, No. 24-519, 2025 WL 830748 (2d Cir. Feb. 10, 2025); *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir.1984) (an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"). Plaintiff's conclusory contentions to the contrary amount to nothing more than her own subjective beliefs regarding the Hospital's motives.

GARFUNKEL WILD, P.C.

4914-7920-4996v.2