UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KIARA NAZAIRE,

                Plaintiff,

      v.

JERSEY SHORE NURSING AGENCY
INCORPORATED d/b/a JERSEY SHORE
STAFFING AGENCY, INC., and ST.
BARNABAS HOSPITAL,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:24-CV-05022-AMD-PK

Hon. Ann M. Donnelly

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ST. BARNABAS HOSPITAL'S MOTION FOR SUMMARY JUDGMENT**

---

GARFUNKEL WILD, P.C.
*Attorneys for Defendant St. Barnabas Hospital*
900 Stewart Ave., 4th Floor
Garden City, New York 11530
(516) 393-2200

Of Counsel:
Andrew L. Zwerling, Esq.
Nicholas M. Summo, Esq.

4938-2960-1211v.1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

PROCEDURAL BACKGROUND............................................................................................3

STATEMENT OF MATERIAL FACTS ...................................................................................3

ARGUMENT ...........................................................................................................................4

    POINT I
    PLAINTIFF'S DISCRIMINATION CLAIMS FAIL
    AS A MATTER OF LAW BECAUSE SHE CANNOT ESTABLISH
    AN EMPLOYER-EMPLOYEE RELATIONSHIP WITH THE HOSPITAL ...........................4

        A.    The Hospital Was Not Plaintiff's Employer Under Title VII.....................................4

        B.    The Hospital Was Not Plaintiff's Employer Under The NYSHRL Or NYCHRL ......6

        C.    The Hospital Was Not A Joint Employer With JSNA.................................................9

    POINT II

    EVEN ASSUMING THE HOSPITAL WAS A JOINT EMPLOYER, IT CANNOT
    BE HELD LIABLE FOR JSNA'S ALLEGEDLY DISCRIMINATORY CONDUCT............10

        A.    A Joint Employer Is Not Liable For the Discriminatory Acts Of Another................11

        B.    The Undisputed Evidence Establishes That JSNA Alone
            Controlled The Decision Regarding Plaintiff's Continued Employment ..................11

    POINT III

    PLAINTIFF'S FAILURE TO CONSISTENTLY COMPLETE
    HER CONTRACTUALLY REQUIRED WORK HOURS CONSTITUTED A
    LEGITIMATE, NONDISCRIMINATORY BASIS FOR THE HOSPITAL'S ACTIONS......13

        A.    Plaintiff's Repeated Attendance Deficiencies Provided
            A Legitimate, Non-Discriminatory Basis For The Hospital's Actions......................13

        B.    Plaintiff Cannot Establish That Her Termination
            Was Pretext For Discrimination.................................................................................15

          1.    The Chronology of EventsUndermines
               Any Inference of Discriminatory Intent...............................................................15

i

4938-2960-1211v.1

# TABLE OF CONTENTS
## (Continued)

**Page**

2.      The Contemporaneous Record Consistently Identifies
Attendance Deficiencies as the Basis for the Hospital's Actions ..........................16

3.      Plaintiff's Comparator Evidence Does
Not Support an Inference of Discrimination...........................................................17

POINT IV

PLAINTIFF CANNOT RELY ON THE PWFA TO
SUSTAIN A CAUSE OF ACTION FOR DISCRIMINATION ...............................................19

A.      The Hospital Is Not A Covered Entity Under The PWFA ........................................19

B.      Even If The Hospital Were A Covered Entity, Plaintiff's
Reliance On The PWFA As A Basis For A Discrimination Claim Is Misplaced......20

POINT V

PLAINTIFF CANNOT MAINTAIN A CLAIM FOR RETALIATION UNDER
THE NYLL BECAUSE SHE NEVER ENGAGED IN PROTECTED ACTIVITY ...............21

A.      Count VI Is Defectively Plead Because It Does Not Allege Plaintiff
Complained Of, Reported, Or Opposed Conduct Violating The NYLL ...................22

B.      Plaintiff's NYLL Retaliation Claim Independently Fails On The
Merits Because Plaintiff Admits She Never Requested a Leave of Absence............23

C.      Plaintiff Cannot Avoid Summary Judgment By Relying Upon  A New Theory Of
Protected Activity Absent From Her Amended Complaint and Sworn Testimony...24

D.      Plaintiff Cannot Maintain An NYLL Retaliation Claim
Against The Hospital Because She Was Not The Hospital's Employee ...................25

CONCLUSION.............................................................................................................................26

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dollinger v. New York State Ins. Fund*,
No. 314CV00908MADML, 2019 WL 4689267 (N.D.N.Y. Sept. 26, 2019) .........................24

*Eisenberg v. Advance Relocation & Storage, Inc.*,
237 F.3d 111 (2d Cir. 2000)......................................................................................................4, 5

*Felder v. United States Tennis Ass'n*,
27 F.4th 834 (2d Cir. 2022) .....................................................................................................9, 10

*Fried v. LVI Servs., Inc.*,
2011 WL 2119748 (S.D.N.Y. May 23, 2011) .........................................................................11

*Garcia v. Barclays Cap., Inc.*,
281 F. Supp. 3d 365 (S.D.N.Y. 2017)......................................................................................24

*Gonzalez v. Allied Barton Sec. Servs.*,
2010 WL 3766964 (S.D.N.Y. Sept. 7, 2010)...........................................................................9

*Goodman v. Port Auth. of N.Y. & N.J.*,
850 F. Supp. 2d 363 (S.D.N.Y. 2012)................................................................................10, 11

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000)....................................................................................................17, 18

*Greenberg v. Seton Educ. Partners*,
227 N.Y.S.3d 870....................................................................................................................9, 10

*Hanley v. New York City Health & Hosps. Corp.*,
722 F. Supp. 3d 112 (E.D.N.Y. 2024) ...............................................................................4, 6, 8

*Hassanein v. Gino's Italian Rest. on 5th*,
2017 WL 4350515 (E.D.N.Y. Mar. 27, 2017).........................................................................4

*Henny v. New York State*,
842 F. Supp. 2d 530 (S.D.N.Y. 2012)................................................................................13, 14

*Higueros v. New York State Cath. Health Plan, Inc.*,
630 F. Supp. 2d 265 (E.D.N.Y. 2009) .....................................................................................22

*Lation v. Fetner Props., Inc.*,
2017 WL 6550691 (S.D.N.Y. Dec. 22, 2017) .........................................................................9

iii

4938-2960-1211v.1

*Lima v. Adecco*,
   634 F. Supp. 2d 394 (S.D.N.Y. 2009)..................................................................................11

*Mullin v. Rochester Manpower, Inc.*,
   204 F. Supp. 2d 556 (W.D.N.Y. 2002) ..............................................................................23

*Samper v. Univ. of Rochester Strong Mem'l Hosp.*,
   528 N.Y.S.2d 958 (Sup. Ct. 1987).......................................................................................7

*Santana v. Weill Cornell Med. Primary Care*,
   2018 WL 4636988 (S.D.N.Y. Sept. 27, 2018)...................................................................22

*Santos v. Brookdale Hosp. Med. Ctr.*,
   2010 WL 3911396 (N.Y. Sup. Ct. Sept. 17, 2010).........................................................7, 8

*Stolpner v. New York Univ. Lutheran Med. Ctr.*,
   2018 WL 4697279 (E.D.N.Y. Sept. 29, 2018) ............................................................13, 14

*Strauss v. New York State Dep't of Educ.*,
   805 N.Y.S.2d 704 (2005) ...............................................................................................4, 6

*U.S. v. City of New York*,
   359 F.3d 83 (2d Cir. 2004)..............................................................................................4, 5

*What You Should Know About the Pregnant Workers Fairness
   Act*, U.S. E.E.O.C., https://www.eeoc.gov/wysk/what-you-should-know-
   about-pregnant-workers-fairness-act (last visited July 7, 2026)...........................................20

*Williams v. AAA S. New England*,
   2015 WL 864891 (S.D.N.Y. Mar. 2, 2015) .......................................................................22

*Yousef v. Al Jazeera Media Network*,
   2018 WL 6332904 (S.D.N.Y. Oct. 31, 2018) .....................................................................11

**Statutes**

42 U.S.C. § 2000gg..................................................................................................................19

42 U.S.C. § 2000gg-1 ..............................................................................................................20

N.Y. Exec. Law § 292...............................................................................................................6

N.Y. Lab. Law § 215..................................................................................................21, 22, 25

## PRELIMINARY STATEMENT

This action rests on a fundamentally flawed premise: that Plaintiff may hold an entity liable for employment discrimination even though that entity never employed her. The record forecloses Kiara Nazaire's ("Plaintiff") effort to hold St. Barnabas Hospital (the "Hospital") liable under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnant Workers Fairness Act ("PWFA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York Labor Law ("NYLL").  Summary judgment in the Hospital's favor is therefore warranted.

As a threshold matter, Plaintiff cannot establish the existence of an employment relationship with the Hospital. The record establishes that Plaintiff was employed by Jersey Shore Nursing Agency Incorporated d/b/a Jersey Shore Staffing Agency, Inc. ("JSNA"), not the Hospital. The Agency Agreement between JSNA and the Hospital expressly disclaims any employer-employee relationship between the Hospital and JSNA's personnel. Consistent with that agreement, JSNA alone recruited Plaintiff, contracted with her, verified her credentials and work eligibility, compensated her, maintained her employment records and benefits, and retained exclusive authority over discipline, reassignment, and termination. Indeed, both Plaintiff and JSNA's President, Lorraine Russell, testified that JSNA – not the Hospital – was Plaintiff's employer. Accordingly, Plaintiff cannot satisfy the threshold employment relationship necessary to maintain any of her claims against the Hospital.

Nor can Plaintiff avoid summary judgment by invoking a joint-employer theory. Even assuming the Hospital and JSNA were joint employers, the Hospital neither participated in, directed, encouraged, nor possessed the authority to control JSNA's employment decisions. Rather, the Hospital merely exercised its contractual right under the Agency Agreement to request

1

that Plaintiff be replaced by a different surgical technologist. Those facts are insufficient to impose liability upon the Hospital for JSNA's independent employment decisions.

The Hospital likewise requested Plaintiff's replacement for legitimate, nondiscriminatory reasons unrelated to her gender, pregnancy, or accommodation request. Between February and March 2024, Plaintiff had repeated attendance deficiencies. Only after weeks of these deficiencies did the Hospital exercise its contractual right to request a replacement surgical technologist. Plaintiff cannot establish that those attendance issues were a pretext for unlawful discrimination.

Plaintiff's remaining statutory claims fare no better. Her PWFA claim fails because the Hospital granted the only accommodation Plaintiff requested, and the PWFA does not create a standalone cause of action for pregnancy discrimination divorced from an alleged failure to accommodate. Notwithstanding the absence of the required employment relationship, Plaintiff's NYLL retaliation claim is even more fundamentally flawed. Count VI does not allege that Plaintiff complained of, reported, or otherwise opposed conduct violating the NYLL. Instead, it alleges only that JSNA and the Hospital retaliated against Plaintiff for requesting a leave of absence, even though the Complaint never alleges that Plaintiff made such a request. Nor may Plaintiff avoid summary judgment by advancing a new theory of protected activity after confirming during her deposition that the Complaint accurately reflected all of the allegations she asserted against the Hospital.

In sum, the record presents multiple independent grounds requiring dismissal of every claim asserted against the Hospital. Plaintiff cannot establish that the Hospital employed her, cannot hold the Hospital liable for JSNA's independent employment decisions, cannot demonstrate that the Hospital's legitimate reasons for requesting her replacement were pretextual, and cannot establish viable claims under either the PWFA or the NYLL.  Accordingly, the Hospital

2

4938-2960-1211v.1

respectfully requests that the Court grant its Motion for Summary Judgment and dismiss the Amended Complaint as against the Hospital.

## PROCEDURAL BACKGROUND

Plaintiff initiated this lawsuit in July 2024 (Doc. No. 1), asserting claims of retaliation and interference in violation of the Family and Medical Leave Act ("FMLA"), and claims of discrimination and retaliation under the NYSHRL, the NYCHRL, and the NYLL. Plaintiff subsequently filed her Amended Complaint ("Am. Compl.") in April 2025, asserting six causes of action against the Hospital, including newly added discrimination claims. Doc. No. 27.

Plaintiff voluntarily dismissed her FMLA claims against all defendants in early 2026. Doc. No. 47. Accordingly, five claims remain pending against the Hospital: four discrimination claims under Title VII, the PWFA, the NYSHRL, and the NYCHRL, and one retaliation claim under the NYLL. For the reasons set forth below, the Hospital respectfully submits that it is entitled to summary judgment dismissing those claims as against it.

## STATEMENT OF MATERIAL FACTS

For a full recitation of the facts and circumstances supporting this Motion, the Hospital respectfully refers the Court to its Statement of Material Facts Not in Dispute ("SOMF") submitted pursuant to Local Civil Rule 56.1 and Rule 4(B)(i) of the Court's Individual Practices and Rules. The Hospital also respectfully refers the Court to the Declaration of Gennady Kuzin, dated October 28, 2025 ("Kuzin Decl."), the Supplemental Declaration of Gennady Kuzin, dated July 1, 2026 ("Kuzin Supp. Decl."), and the Declaration of Nicholas M. Summo, dated November 11, 2025 ("Summo Decl."), together with the exhibits annexed thereto.

3

4938-2960-1211v.1

## ARGUMENT

## POINT I

### PLAINTIFF'S DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW BECAUSE SHE CANNOT ESTABLISH AN EMPLOYER-EMPLOYEE RELATIONSHIP WITH THE HOSPITAL

Plaintiff's discrimination claims fail as a threshold matter because she cannot establish the existence of an employer-employee relationship with the Hospital, which is a prerequisite to liability under each of the statutes at issue.

Courts consistently recognize that a plaintiff asserting claims under Title VII, the NYSHRL, and/or the NYCHRL must first demonstrate the existence of an employment relationship with the defendant. *See, e.g., Hanley v. New York City Health & Hosps. Corp.*, 722 F. Supp. 3d 112, 120 (E.D.N.Y. 2024) (establishing the prerequisite under the NYSHRL and the NYCHRL); *see also Strauss v. New York State Dep't of Educ.*, 805 N.Y.S.2d 704, 707 (2005) (same under Title VII).

As set forth below, the undisputed record establishes that the Hospital was neither Plaintiff's employer nor her joint employer. Accordingly, Plaintiff's discrimination claims against the Hospital fail as a matter of law.

### A.    The Hospital Was Not Plaintiff's Employer Under Title VII

In determining whether the required relationship exists to establish Title VII liabililty, courts in this Circuit apply common-law agency principles, placing particular emphasis on the putative employer's control over the manner and means by which the worker performs her duties. *See U.S. v. City of New York*, 359 F.3d 83, 91-92 (2d Cir. 2004); *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113-14 (2d Cir. 2000); *Hassanein v. Gino's Italian Rest. on 5th*, 2017 WL 4350515, at *5-6 (E.D.N.Y. Mar. 27, 2017).

The undisputed record establishes that Plaintiff was employed only by JSNA. Plaintiff applied for a position with JSNA, and after interviewing her, Lorraine Russell, President of JSNA, submitted Plaintiff's candidacy to the Hospital for approval. *See* Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 Stmt.") ¶¶ 17-19. Before Plaintiff could be assigned to the Hospital, Ms. Russell verified Plaintiff's identity and work eligibility, collected the documentation necessary to satisfy the Hospital's credentialing requirements, and ensured that Plaintiff met the qualifications required for placement. *See* Pl. 56.1 Stmt. ¶¶ 20-23. These functions are traditionally associated with the hiring and administration of employees and demonstrate that JSNA – not the Hospital – maintained responsibility for Plaintiff's employment relationship. *See Eisenberg*, 237 F.3d at 114; *City of New York*, 359 F.3d at 91-92.

Furthermore, the May 2023 Supplemental Agreement proves that Plaintiff's presence at the Hospital resulted from JSNA's provision of staffing services to the Hospital, rather than from any direct employment relationship between Plaintiff and the Hospital. *See* Pl. 56.1 Stmt. Ex. 11.

Accordingly, JSNA was responsible for the administrative aspects of Plaintiff's employment. JSNA paid Plaintiff's wages and remained responsible for payroll taxes, unemployment insurance, social security withholdings, and related employment obligations. *See* SOMF ¶¶ 5-6; Kuzin Decl. ¶¶ 13-15, 45-46. Plaintiff did not receive health insurance, long-term disability benefits, life insurance, or similar benefits from the Hospital. *See* Summo Decl. Ex. D (hereinafter "Pl. Dep."), at 42:18-25, 43:19-25, 44:2.

Additionally, the Agency Agreement expressly provides that it is not intended to create an employer-employee relationship between the Hospital and JSNA personnel. *See* Summo Decl. Ex. J, at 5. JSNA's Joint Commission policies likewise identify JSNA as the "administrative employer" of assigned personnel and assign to JSNA responsibility for employee orientation,

5

4938-2960-1211v.1

credential verification, licensure review, education and work-experience verification, and qualification matching. *See* Pl. 56.1 Stmt. Ex. 11, at 3. These documents reflect that JSNA – not the Hospital – was responsible for the administrative aspects found in any employment relationship. *See* SOMF ¶¶ 2, 8-12; Kuzin Decl. ¶¶ 16-22, 45-47.

That the Hospital scheduled Plaintiff's shifts or assigned her to particular operating rooms does not alter this conclusion. The undisputed evidence establishes that JSNA recruited Plaintiff, maintained her personnel records, conducted her background check, verified her qualifications for placement, compensated her for her services, and remained responsible for the core incidents of her employment. *See* SOMF ¶¶ 2, 5-6, 17-25; Kuzin Decl. ¶¶ 20-22, 45-47. Moreover, the Hospital lacked authority to discipline Plaintiff, conduct performance evaluations, determine her compensation, or provide employment benefits. *See* Kuzin Decl. ¶¶ 28-29, 45-47.

In short, the undisputed evidence establishes that Plaintiff was employed by JSNA, not the Hospital. Plaintiff was placed at the Hospital because JSNA recruited, credentialed, contracted with, and assigned her pursuant to the parties' staffing arrangement. Because Plaintiff cannot establish an employment relationship with the Hospital, her Title VII claim fails as a matter of law. *See Strauss*, 805 N.Y.S.2d at 707; *see also Hanley*, 722 F. Supp. 3d at 120.

**B.    The Hospital Was Not Plaintiff's Employer Under The NYSHRL Or NYCHRL**

As with Title VII, the existence of an employer-employee relationship is a prerequisite to liability under both the NYSHRL and the NYCHRL. *Hanley*, 722 F. Supp. 3d at 119. This relationship is required under the NYSHRL regardless of the size of the employer's company, N.Y. EXEC. LAW § 292, and under the NYCHRL for companies with more than four employees. N.Y.C. ADMIN CODE § 8-102.

6

4938-2960-1211v.1

To determine whether a putative employer qualifies as an employer under either statute, courts consider whether the putative employer: (1) had the power of the selection and engagement of the employee; (2) made the payment of salary or wages to the employee; (3) had the power of dismissal over the employee; and (4) had the power to control the employee's conduct, with the fourth factor generally considered the most significant. *Santos v. Brookdale Hosp. Med. Ctr.*, 2010 WL 3911396, at \*3 (N.Y. Sup. Ct. Sept. 17, 2010); *Samper v. Univ. of Rochester Strong Mem'l Hosp.*, 528 N.Y.S.2d 958, 960 (Sup. Ct. 1987).

Application of these factors confirms that the Hospital was not Plaintiff's employer. The Hospital retained the ability to interview prospective temporary staff and determine whether a particular individual was an appropriate fit for placement within its operating rooms. *See* Kuzin Decl. ¶¶ 18-19. However, Plaintiff admitted that she applied for a position directly with JSNA, that Ms. Russell reviewed her resume and interviewed her, and that Ms. Russell thereafter submitted her candidacy to the Hospital for approval. *See* Pl. 56.1 Stmt. ¶¶ 17-19. Plaintiff further admitted that Ms. Russell verified her identity and work eligibility status and gathered the documentation necessary to satisfy the Hospital's credentialing requirements before Plaintiff was assigned to the Hospital. *See id.* ¶¶ 20-23. Thus, while the Hospital exercised approval authority over who could be assigned to its facility, JSNA remained responsible for recruiting, screening, credentialing, and placing temporary personnel. *Id.*

The remaining factors similarly weigh against a finding of an employment relationship. Notably, JSNA was solely responsible for compensating Plaintiff and the other temporary staff it placed at the Hospital. *See* Kuzin Decl. ¶¶ 13-15, 45-46. Plaintiff likewise acknowledged through her employment agreements that JSNA was responsible for paying her wages. *See, e.g.*, Summo Decl. Ex. M, at 5. The Hospital also did not provide Plaintiff with health, disability insurance, or

7

life insurance, or any other employment benefits. *See* Kuzin Decl. ¶ 46; Pl. Dep. 42:18-25, 43:19-25, 44:2.

Similarly, although the Hospital retained the contractual right to request that a temporary worker no longer be assigned to its facility, it lacked authority to terminate that individual's employment with JSNA. *See* Summo Decl. Ex. J, at 3; *see also* Summo Decl. Ex. E (hereinafter "Russell Dep."), at 185:16-19. Rather, authority regarding continued employment, reassignment, or termination of a JSNA employee remained solely with JSNA. *See* Russell Dep. 184:22-25 – 185:2-8, 16-19; Kuzin Decl. ¶¶ 47-48, 58-60. The Hospital could merely request a replacement technologist; it could not terminate someone from JSNA. Russell Dep. 187:22-25 – 188:2.

Finally, although the Hospital necessarily directed Plaintiff's day-to-day activities within the operating room, scheduled her shifts, and assigned her to particular surgical suites (*see* Kuzin Decl. ¶¶ 30-32, 43-45), it lacked authority to discipline Plaintiff, conduct performance evaluations, determine her compensation, or administer employment benefits. *See* Kuzin Decl. ¶¶ 28-29, 45-47. Indeed, Plaintiff's own Rule 56.1 Statement acknowledges that Ms. Russell remained responsible for verifying Plaintiff's qualifications and eligibility for placement, while JSNA's Joint Commission policies identify JSNA as the "administrative employer" of assigned personnel. *See* Pl. 56.1 Stmt. ¶ 23 & Ex. 11, at 3. Accordingly, the Hospital did not control the essential terms and conditions of Plaintiff's employment.

Because the Hospital did not compensate Plaintiff, lacked authority to terminate her employment, and did not control the essential terms and conditions of her employment, it cannot be deemed Plaintiff's employer under either the NYSHRL or the NYCHRL. Plaintiff's claims under those statutes therefore fail as a matter of law. *See Hanley*, 722 F. Supp. 3d at 119-20; *Santos*, 2010 WL 3911396, at *3.

8

**C.**    **The Hospital Was Not A Joint Employer With JSNA**

Plaintiff likewise cannot avoid summary judgment by invoking the joint-employer doctrine. Although a plaintiff may, in limited circumstances, pursue employment discrimination claims against an entity that is not her direct employer, joint-employer status exists only where two entities share significant control over the employee and the essential terms and conditions of her employment. *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022). In determining whether a joint-employer relationship exists, courts principally examine whether the alleged employer possessed authority to hire, fire, discipline, compensate, supervise, and otherwise control the employee and the employment relationship. *See id.* at 844; *Lation v. Fetner Props., Inc.*, 2017 WL 6550691, at *3 n.3 (S.D.N.Y. Dec. 22, 2017) (considering authority over hiring, firing, discipline, payroll, benefits, and supervision in defining "employer" under Title VII); *Greenberg v. Seton Educ. Partners*, 227 N.Y.S.3d 870, 875-76 (applying the same factors under the NYSHRL and NYCHRL).

The Hospital also lacked authority over Plaintiff's continued employment. Although the Agency Agreement permitted the Hospital to request that Plaintiff no longer be assigned to its facility, only JSNA could determine whether Plaintiff would be reassigned, disciplined, or terminated. *See* Summo Decl. Ex. J, at 3; Kuzin Decl. ¶¶ 47-48, 58-60. Indeed, Ms. Russell testified that a temporary worker removed from an assignment at the Hospital remained a JSNA employee and could be reassigned to another client facility. *See* Russell Dep. 144:3-21. Thus, the Hospital could discontinue Plaintiff's assignment, but it could not terminate her employment with JSNA. *See Gonzalez v. Allied Barton Sec. Servs.*, 2010 WL 3766964, at *4 (S.D.N.Y. Sept. 7, 2010) (holding that the ability to request reassignment did not constitute an employer relationship).

4938-2960-1211v.1

Finally, the Hospital's operational oversight of Plaintiff's clinical work does not alter that conclusion. While assigned to the Hospital, Plaintiff necessarily received direction concerning operating room assignments, patient care, and compliance with Hospital policies and procedures. *See* Kuzin Decl. ¶¶ 30-32, 38, 43-45. That oversight, however, related solely to Plaintiff's performance of clinical duties and did not extend to compensation, benefits, discipline, reassignment, or continued employment – all of which remained within JSNA's exclusive control. *See* Kuzin Decl. ¶¶ 28-29, 45-48; Russell Dep. 184:22-25-185:8. Likewise, JSNA remained responsible for employee orientation, credential verification, licensure review, qualification matching, and onboarding. *See* Pl. 56.1 Stmt. ¶ 23 & Ex. 11, at 3.

Accordingly, the record establishes that JSNA controlled every essential aspect of Plaintiff's employment relationship. At most, the Hospital exercised operational oversight over Plaintiff's work while she was assigned to its facility and its contractual right to request a replacement. Those facts are insufficient to establish joint-employer status. *See Felder*, 27 F.4th at 843; *Greenberg*, 227 N.Y.S.3d at 875-76. Plaintiff's Title VII, NYSHRL, and NYCHRL claims therefore fail as a matter of law.

**POINT II**

**EVEN ASSUMING THE HOSPITAL WAS A JOINT EMPLOYER, IT CANNOT BE HELD LIABLE FOR JSNA'S ALLEGEDLY DISCRIMINATORY CONDUCT**

Even assuming that Plaintiff could establish that the Hospital and JSNA were joint employers, Plaintiff's claims against the Hospital nevertheless fail as a matter of law.

Joint-employer status does not automatically render one employer liable for the allegedly discriminatory acts of another. Rather, liability may be imposed only where the alleged joint employer knew of, should have known of, or possessed the ability to remedy the challenged conduct but failed to take corrective measures within its control. *See Goodman v. Port Auth. of*

10

*N.Y. & N.J.*, 850 F. Supp. 2d 363, 386 (S.D.N.Y. 2012); *Lima v. Adecco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009); *Fried v. LVI Servs., Inc.*, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011).

Accordingly, even if the Hospital could be deemed Plaintiff's joint employer, Plaintiff must still establish that the Hospital knew of, should have known of, or possessed the ability to remedy the allegedly discriminatory employment decision at issue. The undisputed evidence establishes that it did not.

### A.   A Joint Employer Is Not Liable For the Discriminatory Acts Of Another

Joint-employer status would not automatically render the Hospital liable for JSNA's allegedly discriminatory conduct. Courts have repeatedly recognized that joint-employer status affects an entity's liability for its own actions but does not automatically impose liability for the actions of another employer. *See Goodman*, 850 F. Supp. 2d at 386; *see also Yousef v. Al Jazeera Media Network*, 2018 WL 6332904, at *2 (S.D.N.Y. Oct. 31, 2018).

Instead, a plaintiff must demonstrate that the alleged joint employer knew or should have known of the challenged conduct and failed to take corrective measures within its control. *See Fried*, 2011 WL 2119748, at *7. Accordingly, even assuming the existence of a joint-employer relationship, Plaintiff cannot prevail unless she demonstrates that the Hospital participated in, encouraged, approved, or possessed the ability to remedy JSNA's alleged discriminatory decision regarding Plaintiff's continued employment.

### B.   The Undisputed Evidence Establishes That JSNA Alone Controlled The Decision Regarding Plaintiff's Continued Employment

The undisputed record contains no evidence that the Hospital requested, directed, encouraged, or otherwise participated in JSNA's decision regarding Plaintiff's continued employment. Rather, the record establishes only that Genady Kuzin, the Hospital's Director of Perioperative Services, exercised the Hospital's contractual right to request that Plaintiff no longer

11

be assigned to the Hospital following her repeated failure to satisfy her scheduling obligations. *See* Kuzin Decl. ¶¶ 54-60; Kuzin Supp. Decl. ¶¶ 12-17; Summo Decl. Ex. F (hereinafter "Kuzin Dep. I"), at 72:2-15.

Consistent with the Agency Agreement, Mr. Kuzin requested only a replacement surgical technologist. He did not request, recommend, or encourage JSNA to terminate Plaintiff's employment or otherwise express any opinion regarding whether Plaintiff should remain employed by JSNA after her assignment at the Hospital ended. *See* Kuzin Supp. Decl. ¶¶ 15-17. Although Mr. Kuzin's March 27, 2024 email states that he was "confirming the termination" of Plaintiff due to her inability to fulfill her hours obligation to the Hospital, he explains that he was referring only to the end of Plaintiff's assignment at the Hospital – not her employment with JSNA. *See* Kuzin Supp. Decl. ¶¶ 16-17; *see also* Kuzin Decl. Ex. B.  That explanation is entirely consistent with both the Agency Agreement – which authorized the Hospital only to discontinue Plaintiff's assignment – and Mr. Kuzin's testimony that he had "nothing to do with how [JSNA] runs their business" and "absolutely no input" regarding JSNA's employment decisions. *See* Summo Decl. Ex. J, at 3; Kuzin Dep. I. 72:2-5.

Nor has Plaintiff identified any evidence creating a genuine dispute of material fact. There is no testimony, document, email, or other evidence that anyone at the Hospital instructed JSNA to terminate Plaintiff's employment, recommended that it do so, or otherwise attempted to influence JSNA's employment decision. To the contrary, Ms. Russell confirmed that JSNA alone decided whether Plaintiff would remain employed, be reassigned, or be terminated following the conclusion of her assignment at the Hospital. *See* Russell Dep. 184:22-25-185:8, 185:16-24, 186:2.

Accordingly, no reasonable jury could conclude that the Hospital participated in, directed, encouraged, or influenced the employment decision about which Plaintiff complains. At most, the

12

Hospital exercised its contractual right to discontinue Plaintiff's temporary assignment and request a replacement surgical technologist. What JSNA chose to do thereafter was its decision alone.

## POINT III

### PLAINTIFF'S FAILURE TO CONSISTENTLY COMPLETE HER CONTRACTUALLY REQUIRED WORK HOURS CONSTITUTED A LEGITIMATE, NONDISCRIMINATORY BASIS FOR THE HOSPITAL'S ACTIONS

Even assuming Plaintiff can establish a prima facie case under Title VII, the PWFA, the NYSHRL, or the NYCHRL – which she cannot – the Hospital has articulated a legitimate, non-discriminatory reason for requesting a replacement surgical technologist: Plaintiff's repeated failure to satisfy the scheduling obligations associated with her temporary staffing assignment. Critically, the record demonstrates that the Hospital accommodated Plaintiff's pregnancy-related request and continued utilizing her services thereafter. Despite that accommodation, Plaintiff remained unable to consistently satisfy the hours commitment associated with her assignment. Only after Plaintiff accumulated weeks of attendance deficiencies did the Hospital request that JSNA provide a replacement surgical technologist. On this record, Plaintiff cannot establish that the Hospital's stated concerns were a pretext for unlawful discrimination.

A. **Plaintiff's Repeated Attendance Deficiencies Provided A Legitimate, Non-Discriminatory Basis For The Hospital's Actions**

It is well established that attendance deficiencies and performance-related concerns constitute legitimate, non-discriminatory reasons for an employment decision. *See Stolpner v. New York Univ. Lutheran Med. Ctr.*, 2018 WL 4697279, at *30 (E.D.N.Y. Sept. 29, 2018); *Henny v. New York State*, 842 F. Supp. 2d 530, 554 (S.D.N.Y. 2012).

Plaintiff's third and final short-term contract required her to work three twelve-hour shifts per week from December 17, 2023 through May 4, 2024. *See* Summo Decl. Ex. O. Beginning in

13

February 2024, however, Plaintiff repeatedly failed to satisfy those obligations. Between February 9, 2024 and March 21, 2024, Plaintiff failed to complete her required schedule on six separate occasions. *See* SOMF ¶ 56; Kuzin Decl. ¶¶ 50-51.

Specifically, Plaintiff failed to satisfy her contractual scheduling obligations on the following occasions:

- February 9, 2024 – Plaintiff left work approximately five hours early. *See* Kuzin Decl. ¶¶ 50-51;

- February 15, 2024 – Plaintiff did not report to work. *See id.*;

- February 27, 2024 – Plaintiff left work approximately ten-and-one-half hours early. *See id.*;

- March 14, 2024 – Plaintiff did not report to work. *See id.*;

- March 15, 2024 – Plaintiff did not report to work. *See id.*; and

- March 21, 2024 – Plaintiff arrived late and left work approximately six-and-one-half hours early. *See id.*

These attendance deficiencies were significant. Kuzin Decl. ¶¶ 36-38, 50. Plaintiff was retained to provide operating room coverage for scheduled surgical procedures. *See* Summo Decl. Exs. M-O. When Plaintiff failed to report for work or left before completing her shift, the Hospital was required to secure replacement coverage on short notice to avoid disruptions to operating room operations and patient care. *See* Kuzin Decl. ¶¶ 36-38; 50. Plaintiff's repeated inability to satisfy her contractual scheduling obligations therefore provided the Hospital with a legitimate, non-discriminatory basis to conclude that she was no longer reliably fulfilling the responsibilities for which she had been retained. *See Henny*, 842 F. Supp. 2d at 554 (holding that plaintiff's tardiness and absences constituted a legitimate, non-discriminatory reason for the challenged employment action); *Stolpner*, 2018 WL 4697279, at *30.

14

Accordingly, the Hospital has satisfied its burden of articulating a legitimate, non-discriminatory reason for requesting that JSNA replace Plaintiff with another surgical technologist.

**B.** **Plaintiff Cannot Establish That Her Termination Was Pretext For Discrimination**

Plaintiff likewise cannot carry her ultimate burden of demonstrating that the Hospital's stated reason for requesting a replacement surgical technologist was a pretext for unlawful discrimination. The record instead demonstrates that the Hospital accommodated Plaintiff's pregnancy-related request, continued utilizing her services thereafter, and sought a replacement only after Plaintiff repeatedly failed to satisfy the hours commitment associated with her temporary staffing assignment. The chronology of events, the contemporaneous documentary record, and the comparator evidence all foreclose any reasonable inference of discriminatory intent.

1. The Chronology of Events Undermines
Any Inference of Discriminatory Intent

Plaintiff disclosed her pregnancy to Andrea McNaugton, the Hospital's Assistant Director of Perioperative Services, in February 2024 and requested that she not be assigned to operating rooms involving x-ray procedures. *See* SOMF, ¶ 51; Summo Decl. Ex. H (hereinafter "McNaugton Dep."), at 16:19-24. In response, Ms. McNaugton immediately accommodated that request by directing the charge nurse not to assign Plaintiff to any rooms requiring x-rays. *See* McNaugton Dep. 16:19-24, 29:12-24, 30:2-4. Plaintiff thereafter continued working at the Hospital. *See id*. at 33:21-25. Significantly, Plaintiff does not allege that the Hospital failed to accommodate her pregnancy-related request, nor has she asserted a failure-to-accommodate claim in this action. *See generally* Am. Compl.

The undisputed evidence instead demonstrates that the Hospital granted the only pregnancy-related accommodation Plaintiff requested.

The Hospital did not request Plaintiff's replacement after learning of her pregnancy.

15

Rather, Mr. Kuzin's concerns arose only <u>after</u> Plaintiff repeatedly failed to satisfy her contractual scheduling obligations. As discussed above, between February 9, 2024 and March 21, 2024, Plaintiff failed to complete her required schedule on six separate occasions by either failing to report to work, arriving late, or leaving work substantially before the end of her shift. *See* SOMF ¶¶ 53-56; Kuzin Decl. ¶¶ 50-51. Significantly, the Hospital did not request a replacement after a single absence, a single late arrival, or any other isolated scheduling issue. Instead, Plaintiff accumulated attendance deficiencies over the course of several weeks and repeatedly failed to satisfy the hours commitment associated with her assignment. *See* SOMF ¶¶ 53-56; Kuzin Decl. ¶¶ 50-51. Only after Plaintiff accumulated weeks of attendance deficiencies, thereby creating operational and scheduling difficulties for the Hospital, did the Hospital request that JSNA provide a replacement surgical technologist. *See* Kuzin Decl. ¶¶ 50, 54-58.

Far from suggesting discriminatory animus, the record reflects that the Hospital learned of Plaintiff's pregnancy, accommodated her request regarding x-ray procedures, continued utilizing her services thereafter, and only later sought a replacement after Plaintiff repeatedly failed to satisfy her hours obligation.

    2.    The Contemporaneous Record Consistently Identifies
                  <u>Attendance Deficiencies as the Basis for the Hospital's Actions</u>

The contemporaneous record is entirely devoid of any indication that Plaintiff's pregnancy played any role in the decision to request a replacement surgical technologist. To the contrary, Mr. Kuzin's March 27, 2024 email requesting Plaintiff's removal referenced only Plaintiff's "inability to fulfill her hours obligation to [the Hospital]." *See* Kuzin Decl. Ex. B. Significantly, the email does not reference Plaintiff's pregnancy or any pregnancy-related issue. *Id.* Indeed, the documentary record is entirely devoid of any reference to Plaintiff's pregnancy being the basis for its decision to request a staffing replacement. Rather, it was Plaintiff's repeated attendance

16

deficiencies and inability to reliably satisfy her scheduling obligations that lead to that decision. *See* Kuzin Decl. ¶¶ 50-58.

The Hospital's request was also entirely consistent with the nature of the parties' staffing arrangement. Plaintiff was not a direct Hospital employee. Rather, she was a temporary surgical technologist supplied by JSNA to provide operating room coverage pursuant to the Agency Agreement. *See* Pl. 56.1 Stmt. ¶¶ 2-4; Summo Decl. Ex. J. When Plaintiff repeatedly failed to satisfy the hours commitment associated with that assignment, the Hospital was not required to continue operating with unreliable coverage or indefinitely absorb the resulting scheduling disruptions. *See* Kuzin Decl. ¶¶ 36-38. Instead, the Agency Agreement expressly contemplated that JSNA would provide qualified personnel to meet the Hospital's staffing needs and authorized the Hospital to request that a temporary worker be replaced when necessary. *See* Summo Decl. Ex. J, at 3. Thus, after weeks of attendance deficiencies and ongoing scheduling disruptions, the Hospital's request for a replacement surgical technologist was entirely consistent with the purpose of the staffing arrangement and the operational needs it was designed to address.

3.  Plaintiff's Comparator Evidence Does
    Not Support an Inference of Discrimination

Plaintiff may attempt to rely upon Baindu Massaquoi as an ostensible comparator and argue that Ms. Massaquoi was treated more favorably despite purportedly similar attendance issues. The record, however, does not support that contention.

First, Plaintiff and Ms. Massaquoi were not similarly situated in all material respects. To be similarly situated, a comparator must be subject to comparable conduct and circumstances. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39-40 (2d Cir. 2000). Between February 9, 2024 and March 21, 2024 (a period of approximately seven weeks) Plaintiff failed to satisfy her contractual scheduling obligations on six separate occasions. *See* SOMF ¶ 56; Kuzin Decl. ¶¶ 50-51. By

17

4938-2960-1211v.1

contrast, Ms. Massaquoi failed to work at least 30 hours on only three occasions over approximately fourteen weeks. *See* Declaration of Lucas Buzzard, dated November 14, 2025, Ex. 14, at JSNA000410. Thus, Plaintiff accumulated twice as many attendance deficiencies in half the amount of time. *See* Kuzin Supp. Decl. ¶ 12. Because the quantity and frequency of their attendance deficiencies differed materially, Plaintiff and Ms. Massaquoi were not similarly situated. *See Graham*, 230 F.3d at 39-40.

Second, even assuming arguendo that Ms. Massaquoi were an appropriate comparator, the undisputed evidence demonstrates that her experience further undermines any inference of pregnancy discrimination. Ms. Russell testified that Ms. Massaquoi was ultimately replaced after repeatedly failing to report for scheduled shifts and being deemed a "no call, no show" on multiple occasions. *See* Russell Dep. 134:14-24. Thus, like Plaintiff, Ms. Massaquoi was ultimately replaced due to ongoing attendance deficiencies. The record therefore demonstrates that attendance-related concerns, rather than pregnancy, drove decisions regarding the continued placement of temporary surgical technologists assigned through JSNA, as would be expected in a staffing arrangement whose purpose was to ensure reliable operating room coverage.

In short, Plaintiff cannot establish that the Hospital's stated reason for requesting her replacement was false, nor can she establish that pregnancy played any role in the Hospital's decision-making process. Because the undisputed evidence demonstrates that the Hospital requested Plaintiff's replacement due to her repeated attendance deficiencies and resulting operational concerns, Plaintiff cannot establish pretext.

Accordingly, Plaintiff's claims under Title VII, the PWFA, the NYSHRL, and the NYCHRL fail as a matter of law.

18

## POINT IV

### PLAINTIFF CANNOT RELY ON THE PWFA TO
### SUSTAIN A CAUSE OF ACTION FOR DISCRIMINATION

Plaintiff's attempt to invoke the PWFA does not salvage her claims against the Hospital. The PWFA provides a narrow statutory framework governing an employer's obligation to provide reasonable accommodations for known limitations related to pregnancy, childbirth, and related medical conditions. It does not create liability against entities that are not covered by the statute or provide a standalone cause of action for pregnancy discrimination unrelated to accommodations. Moreover, even if Plaintiff could overcome these threshold deficiencies, the undisputed evidence establishes that the Hospital granted the accommodation Plaintiff requested and honored that accommodation throughout her placement. Accordingly, Plaintiff cannot maintain a claim against the Hospital under the PWFA.

### A.      The Hospital Is Not A Covered Entity Under The PWFA

As an initial matter, the PWFA does not apply to the Hospital because the Hospital was not Plaintiff's employer. The statue applies only to a "covered entity," which includes, an employer, an employing office, an entity employing a State employee, and federal government employers. 42 U.S.C. § 2000gg. Because the PWFA incorporates Title VII's definition of employer, liability under the statute necessarily depends upon the existence of an employer-employee relationship.

As discussed above, the Hospital was not Plaintiff's employer. Plaintiff was recruited, hired, compensated, and employed by JSNA, which retained authority over the essential terms and conditions of her employment. The Hospital did not have the authority to fire or discipline JSNA employees, and performance evaluations were solely within JSNA's control. *See supra* Parts I-II. Because the Hospital was not Plaintiff's employer, joint or otherwise, it cannot qualify as a covered

19

4938-2960-1211v.1

entity with respect to Plaintiff under the PWFA. For this reason alone, any PWFA claim asserted against the Hospital must be dismissed.

**B.**    **Even If The Hospital Were A Covered Entity, Plaintiff's Reliance On The PWFA As A Basis For A Discrimination Claim Is Misplaced**

Plaintiff's reliance on the PWFA is independently flawed because the statute does not create a general cause of action for pregnancy discrimination. Rather, the PWFA is directed specifically at pregnancy-related accommodations.

The statute prohibits employers from (1) failing to provide reasonable accommodations for known limitations related to pregnancy, childbirth, or related medical conditions; (2) forcing employees to accept unnecessary accommodations or take leave where another reasonable accommodation is available; (3) denying employment opportunities based on accommodation needs; and (4) taking adverse action in terms, conditions, or privileges of employment on account of the employee requesting or using a reasonable accommodation. 42 U.S.C. § 2000gg-1.

Consistent with the statutory text, the EEOC explains that "[t]he PWFA applies only to accommodations. Other laws that the EEOC enforces make it illegal to fire or otherwise discriminate against employees or applicants on the basis of pregnancy, childbirth, or related medical conditions." *What You Should Know About the Pregnant Workers Fairness Act*, U.S. E.E.O.C., https://www.eeoc.gov/wysk/what-you-should-know-about-pregnant-workers-fairness-act (last visited July 7, 2026). Thus, to the extent Plaintiff seeks monetary or non-monetary damages under the PWFA based upon alleged pregnancy discrimination, rather than an alleged failure to accommodate, her reliance on the statute is misplaced. *Id.* And in fact, this is precisely what Plaintiff does. In her third claim for relief in the Amended Complaint, Plaintiff argues that she is entitled to damages on the basis of discrimination under the PWFA because the Hospital "discriminated against [her] on the basis of her pregnancy by terminating her employment." Am.

20

Compl. ¶ 51. This claim is governed by other statutory provisions, not the PWFA.

Moreover, even if Plaintiff had properly asserted a failure-to-accommodate claim under the PWFA, that claim would fail based on Plaintiff's own allegations. Plaintiff admits that Ms. McNaughton "assured Plaintiff that she would not be scheduled for surgeries requiring x-rays." Am. Compl. ¶ 17; *see* McNaughton Dep. 16:3-22. Honoring this request, Plaintiff was not required to assist with any surgery that required x-rays. SOMF ¶¶ 51-52; Pl. Dep. 63:4-8. Plaintiff even acknowledges that if she was ever asked to scrub into a procedure involving x-rays, she was permitted to decline participation and request coverage from another surgical technologist. Am. Compl. ¶ 24-25. Nor was Plaintiff denied any additional accommodations, as she never requested any. Indeed, Plaintiff never sought FMLA leave through the Hospital, nor did she otherwise communicate a need for accommodations beyond those that were already provided. *See* Pl. Dep. 61:13-15; *see also* SOMF ¶ 50.

Accordingly, the undisputed record demonstrates that the Hospital granted the accommodation Plaintiff requested and honored that accommodation throughout her assignment. Because the Hospital provided the requested accommodation, Plaintiff cannot establish a violation of the PWFA.

## POINT V

### PLAINTIFF CANNOT MAINTAIN A CLAIM FOR RETALIATION UNDER THE NYLL BECAUSE SHE NEVER ENGAGED IN PROTECTED ACTIVITY

Count VI fails at every level of analysis. NYLL § 215 protects employees who complain of, report, or otherwise oppose conduct violating the NYLL. Plaintiff alleges no such conduct in the Amended Complaint. Rather, Plaintiff merely alleges that the defendants retaliated against her for requesting a leave of absence. Plaintiff's NYLL claim contains a fatal pleading defect

necessitating dismissal as a matter of law. What is more, Plaintiff herself testified that she did not request a leave of absence from the Hospital, nor did she inform the Hospital that she intended to take a protected leave of absence. *See* Pl. Dep. 61:12-19. Simply put, a purported employer cannot retaliate against an employee for engaging in conduct that the employee admits never occurred. Plaintiff's NYLL retaliation claim therefore fails not only as pleaded, but on the undisputed facts developed during discovery as well.

A.    **Count VI Is Defectively Plead Because It Does Not Allege Plaintiff Complained Of, Reported, Or Opposed Conduct Violating The NYLL**

Pursuant to NYLL § 215, "[n]o employer . . . shall . . . discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter . . . ." N.Y. LAB. LAW § 215. Therefore, to state a retaliation claim under the NYLL, a plaintiff must allege that she complained of, reported, or otherwise opposed an employer's violation of the NYLL and suffered an adverse employment action as a result. *See Higueros v. New York State Cath. Health Plan, Inc.*, 630 F. Supp. 2d 265, 269-70 (E.D.N.Y. 2009); *Williams v. AAA S. New England*, 2015 WL 864891, at *5 (S.D.N.Y. Mar. 2, 2015); *Santana v. Weill Cornell Med. Primary Care*, 2018 WL 4636988, at *4 (S.D.N.Y. Sept. 27, 2018).

The Amended Complaint is devoid of any facts alleging that Plaintiff complained of, reported, or otherwise opposed conduct violating the NYLL. Instead, Plaintiff alleges only that the defendants retaliated against her for requesting a legally protected leave of absence. Am. Compl. ¶ 66. That allegation does not constitute the type of protected activity recognized by NYLL § 215. Section 215 protects employees who complain of, report, or otherwise oppose conduct violating the NYLL – not employees who merely allege that they were retaliated against for requesting a leave of absence. *See* N.Y. LAB. LAW § 215.

22

4938-2960-1211v.1

Furthermore, Plaintiff's claim is defective as plead because the Amended Complaint does not allege that Plaintiff actually requested a leave of absence. Plaintiff merely alleges that she intended to take maternity leave in September 2024. Am. Compl. ¶ 16. An intention to take leave at some point in the future does not constitute a request for a leave of absence. *See Mullin v. Rochester Manpower, Inc.*, 204 F. Supp. 2d 556, 562 (W.D.N.Y. 2002) (holding that merely informing a supervisor of a pregnancy, even with reference to a future due date, falls short of the notice and request required by the FMLA). Thus, Count VI is unsupported by the allegations in the Amended Complaint and must be dismissed as a matter of law.

**B.      Plaintiff's NYLL Retaliation Claim Independently Fails On The Merits Because Plaintiff Admits She Never Requested a Leave of Absence**

Even if the Court were to overlook the pleading deficiencies discussed above, Plaintiff's NYLL retaliation claim independently fails on the merits. The sole protected activity identified in Count VI is Plaintiff's purported request for a legally protected leave of absence. Discovery, however, established that Plaintiff never made such a request.

During her deposition, Plaintiff admitted that she never applied for, requested, or otherwise sought a leave of absence from the Hospital. *See* Pl. Dep. 61:12-15. Nor did Plaintiff testify that she ever informed the Hospital that she intended to take a protected leave of absence. *Id.* at 61:16-19. Those facts are materially different from requesting a legally protected leave of absence. *See Mullin*, 204 F. Supp. 2d at 562.

Plaintiff's testimony is fatal to her retaliation claim because it renders the sole factual predicate underlying Count VI impossible. Simply put, the Hospital could not have retaliated against Plaintiff for making a request that Plaintiff admits she never made. Because the undisputed record establishes that Plaintiff never engaged in the only purported protected activity identified in Count VI, Plaintiff cannot establish an essential element of her NYLL retaliation claim.

23

Accordingly, the Hospital is entitled to judgment as a matter of law on Count VI.

**C.    Plaintiff Cannot Avoid Summary Judgment By Relying Upon A New Theory Of Protected Activity Absent From Her Amended Complaint and Sworn Testimony**

Plaintiff cannot avoid summary judgment by attempting to identify, for the first time, some other purported instance of protected activity not alleged in the Amended Complaint and not identified during her deposition. During her deposition, Plaintiff reviewed the Amended Complaint and confirmed that it accurately reflected the allegations she was asserting against the Hospital. *See* Pl. Dep. 13:10-15. The Amended Complaint, however, contains no allegation that Plaintiff complained of, reported, or otherwise opposed conduct violating the NYLL. Rather, as discussed above, Count VI is premised solely upon Plaintiff's alleged request for a legally protected leave of absence.

Plaintiff should not be permitted to salvage Count VI by advancing a new factual theory of protected activity at summary judgment. Courts in this Circuit have repeatedly refused to credit attempts to create a triable issue through later factual assertions that contradict, materially depart from, or add critical facts omitted from prior sworn testimony. *See Garcia v. Barclays Cap., Inc.*, 281 F. Supp. 3d 365, 381 n.24 (S.D.N.Y. 2017). This principle is particularly applicable where the later theory was absent from the complaint and was never identified during discovery. *Dollinger v. New York State Ins. Fund*, No. 314CV00908MADML, 2019 WL 4689267, at *7 (N.D.N.Y. Sept. 26, 2019).

That is precisely the situation here. If Plaintiff had complained of, reported, or opposed a violation of the NYLL, that fact would have been central to Count VI. Yet Plaintiff's Amended Complaint alleges no such conduct, and Plaintiff confirmed under oath that the Amended Complaint accurately reflected her allegations against the Hospital. *See* Pl. Dep. 13:10-15. Having done so, Plaintiff cannot now create a triable issue of fact by relying upon a new, unpleaded theory

24

of protected activity that is absent from both her Amended Complaint and her sworn testimony.

Accordingly, Plaintiff cannot establish the protected activity necessary to sustain a retaliation claim under NYLL § 215, and Count VI must be dismissed.

**D.      Plaintiff Cannot Maintain An NYLL Retaliation Claim Against The Hospital Because She Was Not The Hospital's Employee**

Even if Plaintiff could establish protected activity – which she cannot – Count VI independently fails because Plaintiff cannot establish that the Hospital was her employer. As discussed extensively in Point I, the undisputed record establishes that JSNA (not the Hospital) recruited Plaintiff, verified her identity and work eligibility, credentialed and onboarded her for placement, compensated her for her services, maintained responsibility for her employment records and benefits, and retained exclusive authority over her continued employment, including discipline, reassignment, and termination. *See supra* Point I; Pl. 56.1 Stmt. ¶¶ 17-23 & Ex. 11, at 3; SOMF ¶¶ 2, 5-12, 17-25; Kuzin Decl. ¶¶ 13-22, 28-29, 45-48, 58-60.

Conversely, the Hospital's authority extended only to determining whether Plaintiff would continue her temporary assignment at the Hospital and, if necessary, requesting that JSNA provide a replacement surgical technologist. *See* Summo Decl., Ex. J, at 3. It did not possess the authority to discipline Plaintiff as an employee or terminate her employment with JSNA. *See id.*; Russell Dep. 184:22-25-185:8, 185:16-19, 187:22-25-188:2. Indeed, Ms. Russell expressly acknowledged that Plaintiff was JSNA's employee and confirmed that the Hospital "did not terminate [Plaintiff] in any way, shape or form" because that authority rested exclusively with JSNA. *See* Russell Dep. 142:7-9, 12:16-21, 185:16-19.

Accordingly, for all of the reasons discussed in Point I, Plaintiff cannot establish the existence of an employer-employee relationship with the Hospital. Count VI therefore fails for this independent reason as well.

25

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Hospital respectfully requests that the Court dismiss the Amended Complaint as against the Hospital in its entirety and with prejudice.


Dated:  Garden City, New York
        July 7, 2026


                             GARFUNKEL WILD, P.C.
                             *Attorneys for Defendant St. Barnabas Hospital*


                             By:  _____*/s/ Nicholas M. Summo*_____
                                        Andrew L. Zwerling
                                        Nicholas M. Summo

                             900 Stewart Ave., 4th Floor
                             Garden City, New York 11530
                             (516) 393-2200

26

4938-2960-1211v.1