UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIARA NAZAIRE,<br><br>Plaintiff,<br><br>v.<br><br>JERSEY SHORE NURSING AGENCY INCORPORATED d/b/a JERSEY SHORE STAFFING AGENCY, INC., and ST. BARNABAS HOSPITAL,<br><br>Defendants. | Case No. 1:24-CV-05022-AMD-PK<br><br>Hon. Ann M. Donnelly |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

GARFUNKEL WILD, P.C.
*Attorneys for Defendant St. Barnabas Hospital*
900 Stewart Avenue, 4th Floor
Garden City, New York 11530
(516) 393-2200

Of Counsel:
Andrew L. Zwerling, Esq.
Nicholas M. Summo, Esq.

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

POINT I
THE UNDISPUTED RECORD ESTABLISHES THAT
THE HOSPITAL WAS NOT PLAINTIFF'S JOINT EMPLOYER ........ 2

A. The Joint-Employer Standard Requires A Holistic Assessment Of Control Over Core Employment Terms ........ 3

B. JSNA Exercised Exclusive And Undisputed Control Over Plaintiff's Hiring, Records, Compensation, Benefits, Discipline, And Discharge ........ 5

1. Hiring and Credentialing ........ 5

2. Handling of Records ........ 6

3. Compensation and Benefits ........ 6

4. Discipline and Discharge ........ 7

C. The Hospital's Day-To-Day Oversight And Alleged Influence In JSNA's Decision To Continue Or Terminate Plaintiff's Employment Does Not Create Joint-Employer Status ........ 9

D. To The Extent Plaintiff's Authorities Rely On The Legally Distinct Loaned-Servant Doctrine, Those Authorities Are Inapplicable ........ 13

POINT II

EVEN IF THE HOSPITAL WERE A JOINT EMPLOYER,
THE UNDISPUTED RECORD INDEPENDENTLY COMPELS JUDGMENT
FOR THE HOSPITAL ON LIABILITY FOR JSNA'S TERMINATION DECISION ........ 15

CONCLUSION ........ 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
611 F. Supp. 344 (S.D.N.Y. 1984) .......... 13, 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).......... 3

*Andrade v. Cultural Care, Inc.*,
706 F. Supp. 3d 348 (E.D.N.Y. 2023) .......... 4

*AT&T v. N.L.R.B.*,
67 F.3d 446 (2d Cir. 1995).......... 4

*Brankov v. Hazzard*,
36 N.Y.S.3d 133 (2016) .......... 4

*Burkett v. Five Below Inc.*,
No. 25-CV-3847 (BMC), 2026 WL 1018602 (E.D.N.Y. Apr. 15, 2026).......... 15, 16

*Conde v. Sisley Cosms. USA, Inc.*,
No. 11 CIV. 4010 RJS, 2012 WL 1883508 (S.D.N.Y. May 23, 2012) .......... 7

*DeWitte v. Lieberman*,
48 F. Supp. 2d 280 (S.D.N.Y. 1999).......... 13, 14

*Eisenberg v. Advance Relocation & Storage, Inc.*,
237 F.3d 111 (2d Cir. 2000).......... 3

*Farzan v. Wells Fargo Bank, N.A.*,
No. 12 CIV. 1217 RJS JLC, 2013 WL 6231615 (S.D.N.Y. Dec. 2, 2013) .......... 8

*Felder v. United States Tennis Ass'n*,
27 F.4th 834 (2d Cir. 2022) .......... 3, 5, 9

*Gilani v. Hewlett-Packard Co.*,
No. 15-CV-5609 (NSR), 2018 WL 4374002 (S.D.N.Y. Sept. 12, 2018) .......... 8

*Goodman v. Port Auth. of New York & New Jersey*,
850 F. Supp. 2d 363 (S.D.N.Y. 2012).......... 15

*Gore v. RB Group, Inc.*,
No. 03-CV-9442 (KMK)(JCF), 2008 WL 857530 (S.D.N.Y. Mar. 31, 2008) .......... 11

*Greenberg v. Seton Educ. Partners*,
227 N.Y.S.3d 870 (N.Y. Sup. Ct. 2025) .......... 4

*Guilbert v. Gardner*,
480 F.3d 140 (2d Cir. 2007) .......... 2

*Hanley v. New York City Health & Hosps. Corp.*,
722 F. Supp. 3d 112 (E.D.N.Y. 2024) .......... 11, 12

*Kudatzky v. Galbreath Co.*,
No. 96 CIV. 2693 (HB), 1997 WL 598586 (S.D.N.Y. Sept. 23, 1997) .......... 15

*Lima v. Adecco*,
634 F. Supp. 2d 394 (S.D.N.Y. 2009) .......... 15

*Liotard v. Fedex Corp.*,
No. 14-CV-2083 (NSR), 2016 WL 1071034 (S.D.N.Y. Mar. 17, 2016) .......... 10

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992) .......... 3

*Nazario v. Promed Pers. Servs. N.Y. Inc.*,
No. 15 Civ. 6989 (LGS), 2017 WL 2664202 (S.D.N.Y. June 19, 2017) .......... 8

*Paley v. Bellum AI, LLC*,
No. 1:25-CV-02783, 2025 WL 3496354 (S.D.N.Y. Dec. 5, 2025) .......... 10

*Pasha v. New York State Department of Health*,
No. 22-CV-3355 (ER), 2024 WL 4240769 (S.D.N.Y. Sept. 19, 2024) .......... 4, 5, 7

*Perkins v. Crothall Healthcare, Inc.*,
51 N.Y.S.3d 118 (2017) .......... 13

*Yacklon v. E. Irondequoit Cent. Sch. Dist.*,
733 F. Supp. 2d 385 (W.D.N.Y. 2010) .......... 11

*Yousef v. Al Jazeera Media Network*,
No. 16-CV-6416 (CM), 2018 WL 6332904 (S.D.N.Y. Oct. 31, 2018) .......... 15

**Statutes**

Fed. R. Civ. P. 56(a) .......... 2

29 C.F.R. § 1604.11(b) .......... 15

NYC ADMIN. CODE § 8-107(13)(b) .......... 16

## PRELIMINARY STATEMENT

Plaintiff asks this Court to decide, as a matter of law that the Hospital[1] was her joint employer. But applying the correct legal standard to the very evidence Plaintiff cites leads to the opposite result. Under Second Circuit precedent, the joint-employer inquiry cannot turn on any single aspect of the relationship between the parties. Rather, the Court must consider the full range of employment incidents – including hiring, discipline, discharge, compensation, and benefits – alongside day-to-day supervision.

The Hospital is not asking the Court to defer this question to trial for lack of a complete record. The parties agree the record is fully developed, which is precisely why the Hospital has separately moved for judgment in its favor on this same issue. The Hospital respectfully submits that the record demonstrates that the Hospital was not Plaintiff's joint employer.

Plaintiff's brief focuses almost exclusively on the aspects of her assignment that touched on day-to-day operations at the Hospital. Left largely unaddressed is the undisputed evidence going to the factors that matter most under governing law – JSNA's unqualified authority over recruiting, credentialing, pay, benefits, discipline, and most importantly, whether Plaintiff's employment continued at all. On that last point, the record is unambiguous. JSNA's founder and president, Lorraine Russell, testified that JSNA alone decided whether Plaintiff would be reassigned or let go. While the Hospital could ask JSNA to pull a temporary worker from their assignment at the Hospital, it had no power to end that worker's employment relationship with JSNA. That undisputed fact alone defeats Plaintiff's motion and supports the finding the Hospital

---

[1] All capitalized terms and citations not otherwise defined herein shall have the meanings ascribed to them in the Hospital's Motion for Summary Judgment. *See* Doc. No. 61.

seeks in its own Motion for Summary Judgment pending before the Court on this identical record: the Hospital was not Plaintiff's joint employer.

And because the record likewise shows, without dispute, that JSNA controlled recruitment, pay, and benefits, and that the Hospital played no role in JSNA's decision to end Plaintiff's employment, judgment should be entered for the Hospital on the joint-employer issue and, separately, on whether the Hospital bears any liability for that termination decision.

Simply put, there is no reason to leave this question for a jury. The Court's briefing schedule already calls for Plaintiff's motion to be decided alongside the Hospital's own Motion seeking dismissal of all claims, based on that same evidentiary record. The Hospital's Motion asks the Court to resolve the joint-employer question, on the identical record, in the Hospital's favor – so there is no basis to treat it as an open question reserved for trial.

For these reasons and as explained more fully below, Plaintiff's Motion for Partial Summary Judgment should be denied, and the Hospital's Motion should be granted, dismissing all claims against it.

## ARGUMENT

## POINT I

## THE UNDISPUTED RECORD ESTABLISHES THAT THE HOSPITAL WAS NOT PLAINTIFF'S JOINT EMPLOYER

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the Court must draw all inferences in favor of the non-moving party, "mere speculation and conjecture is insufficient to preclude the granting of [a summary judgment] motion[,]" *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007), and the non-moving party need only point to "concrete evidence

from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Here, the undisputed record entitles the Hospital – not the Plaintiff – to judgment on the joint-employer issue. That same record independently defeats Plaintiff's Motion on the separate question of the Hospital's liability for JSNA's termination decision.

Both the governing legal standard and the undisputed record require judgment in the Hospital's favor. First, the governing standard confirms that the joint-employer status turns on control over the core terms of employment, not just routine operational oversight. Second, the undisputed facts establish that JSNA alone controlled those core terms, and that the Hospital's day-to-day supervision over Plaintiff while she was at its facility did not give the Hospital control over Plaintiff's employment with JSNA.

### A. The Joint-Employer Standard Requires A Holistic Assessment Of Control Over Core Employment Terms

Under Title VII, the existence of an employment relationship is determined by the common-law agency test, which examines "all of the incidents of the relationship . . . with no one factor being decisive." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 843-44 (2d Cir. 2022) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)). Broadly, the non-exhaustive factors examine "whether the alleged employer paid the employees' salaries, hired and fired them, and had control over their daily employment activities." *Id.* at 843 (citation modified).

While no single factor is dispositive, courts place "great emphasis" on the putative employer's control over the "manner and means" of the worker's employment – with particular attention to whether the entity possessed authority over hiring, firing, discipline, compensation, and the provision of benefits. *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111,

114 (2d Cir. 2000). Under the NYSHRL and NYCHRL, the inquiry similarly focuses on whether the putative employer exercised "immediate control" over the worker. *Greenberg v. Seton Educ. Partners*, 227 N.Y.S.3d 870, 876 (N.Y. Sup. Ct. 2025) (citing *Brankov v. Hazzard*, 36 N.Y.S.3d 133, 134 (2016)).

These authorities share a common rule: control over the core terms of employment establishes an employment relationship, while day-to-day supervision does not. Indeed, courts in this circuit have long held that day-to-day operational supervision – including assigning tasks, tracking hours, and overseeing clinical performance – does not, without more, establish joint-employer status. *See AT&T v. N.L.R.B.*, 67 F.3d 446, 452 (2d Cir. 1995) ("Limited and routine supervision, without an ability to hire, fire, or discipline, cannot justify a finding of joint employer status."); *see also Andrade v. Cultural Care, Inc.*, 706 F. Supp. 3d 348, 361-62 (E.D.N.Y. 2023) (reaffirming *Felder*'s framework and reinforcing the fact that a putative employer's ability to hire, fire, and control putative employees remains the guiding factors in determining whether an employment relationship exists).

Plaintiff's own authority reinforces this distinction. Plaintiff relies on *Pasha v. New York State Department of Health* to argue that the joint-employer doctrine applies in staffing-agency relationships like the one at issue here. But *Pasha* supports the opposite conclusion. In that case, the court held that where an entity lacks the authority to hire or fire a putative employee, it does not exercise the degree of control necessary to qualify as a joint employer. *See Pasha v. New York State Department of Health*, No. 22-CV-3355 (ER), 2024 WL 4240769, at *5 (S.D.N.Y. Sept. 19, 2024). The court further explained that a third party's influence over an employer's personnel decisions – including through performance evaluations or recommendations regarding termination – is insufficient, standing alone, to establish joint-employer status. As demonstrated below, *Pasha*

is fatal to Plaintiff's position. The Hospital held no authority to hire or fire Plaintiff, and its input into JSNA's decisions is precisely the kind of third-party influence *Pasha* held insufficient.

Applying this framework, the undisputed record establishes two independently dispositive points. First, JSNA exercised exclusive control over every core term of Plaintiff's employment. *See infra* Point I.B. Second, the Hospital's operational oversight and limited influence over JSNA's staffing decisions do not create joint-employer status as a matter of law. *See infra* Points I.B-C.

**B. JSNA Exercised Exclusive And Undisputed Control Over Plaintiff's Hiring, Records, Compensation, Benefits, Discipline, And Discharge**

The undisputed record establishes that JSNA – not the Hospital – retained exclusive control over each of the factors the Second Circuit and state courts weigh most heavily in the joint-employer analysis: control over hiring, handling of records, compensation, benefits, discipline, and discharge. *See Felder*, 27 F.4th at 838 (stating that "control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance, and payroll, are relevant to [the joint-employer] inquiry.").

1. Hiring and Credentialing

JSNA alone controlled recruitment and credentialing. *See* Pl. 56.1 Stmt. ¶¶ 17-23 & Ex. 11, at 3; SOMF ¶¶ 2. Genady Kuzin's review of Plaintiff's resume was limited to determining whether Plaintiff satisfied the Hospital's clinical requirements for an operating-room assignment – a function analogous to a client's specification of minimum qualifications, not an exercise of hiring authority. *See* Kuzin Decl. ¶ 16-19. Indeed, Mr. Kuzin testified that he has "nothing to do with how [JSNA] runs their business." Kuzin Dep. I 72:2-5.

The Hospital's onboarding requirements do not alter this conclusion. Although Plaintiff completed a pre-placement physical, drug screening, blood work, and background check before beginning her assignment, those requirements merely reflected Joint Commission standards that JSNA was independently obligated to satisfy. They were not Hospital-specific hiring criteria. *Cf.* Pl. 56.1 Stmt. ¶ 20-23. Indeed, JSNA – not the Hospital – conducted the background checks for its employees before placing them at the Hospital. *See* Kuzin Decl. ¶ 22.

2. Handling of Records

JSNA likewise maintained Plaintiff's employment records. Under the parties' Agency Agreement, JSNA was required to maintain a comprehensive personnel file for every temporary worker assigned to the Hospital. *See* Summo Decl. Ex. J, at 2 § 5(a); *see also* SOMF ¶ 8. Those records included each employee's resume, professional licenses and certifications, annual physical examination, competency assessments, mandatory training records, proof of work authorization, insurance information, life-support certifications, and professional references. *See* Summo Decl. Ex. J, at 2 § 5(b); *see also* SOMF ¶ 9. The responsibility for maintaining these records rested exclusively with JSNA.

3. Compensation and Benefits

The record is equally clear that JSNA alone controlled Plaintiff's compensation and benefits. JSNA paid Plaintiff's wages, and Plaintiff expressly acknowledged in her employment agreements that JSNA – not the Hospital – was her employer for payroll purposes. *See* Kuzin Decl. ¶¶ 13-15, 45-46; *see also e.g.*, Summo Decl. Ex. M, at 5.

Likewise, the Hospital provided Plaintiff with no employment benefits whatsoever. Plaintiff received no health insurance, disability insurance, life insurance, or other employee benefits from the Hospital. *See* Kuzin Decl. ¶ 46; Pl. Dep. 42:18-25, 43:19-25, 44:2; SOMF ¶ 7.

The Agency Agreement further required JSNA to withhold all payroll taxes, unemployment insurance, Social Security contributions, and other employment-related deductions, and expressly provided that employee benefits were the "exclusive responsibility of [JSNA]." SOMF ¶¶ 5-6; *see* Summo Decl. Ex. J, at 5 § 8(i).

4. Discipline and Discharge

The Hospital similarly lacked authority to discipline or terminate Plaintiff. Although the Hospital provided input regarding Plaintiff's clinical performance, it did not conduct formal performance evaluations of JSNA employees or determine whether discipline was warranted. Rather, Mr. Kuzin merely communicated operational observations to JSNA, which independently evaluated its employees and decided whether any corrective action should be taken. *See* Kuzin Decl. ¶¶ 27-29.

That distinction is legally significant. As *Pasha* explains, a third party's participation in performance evaluations or recommendations concerning termination does not establish joint-employer status absent authority over the ultimate employment decision. *See Pasha*, 2024 WL 4240769, at *5. Plaintiff identifies no evidence – and none exists – that the Hospital ever disciplined Plaintiff or possessed the authority to do so. *See* Kuzin Decl. ¶ 45.

The same is true with respect to termination. Lorraine Russell unequivocally testified that Plaintiff was a JSNA employee and that decisions regarding her reassignment or termination rested exclusively with JSNA. *See* Russell Dep. 184:22-185:8, 185:16-21. Ms. Russell further confirmed that the Hospital could request a replacement technologist, but it lacked authority to terminate any JSNA employee. *See id.* at 123:25-124:9, 185:5-186:2; *see also* Kuzin Decl. ¶ 58-60. That testimony is dispositive of one of the most significant factors in the joint-employer analysis. *See Conde v. Sisley Cosms. USA, Inc.*, No. 11 CIV. 4010 RJS, 2012 WL 1883508, at *4 (S.D.N.Y.

May 23, 2012) ("[A]n entity that has the power to request that an employee be moved but not to cause her to be terminated is not a joint employer.").

*The* case law cited by Plaintiff reinforces this. In *Farzan v. Wells Fargo Bank, N.A.*, as Plaintiff herself acknowledges, the formal employer and the putative employer "acted in concert" both in hiring the plaintiff and later jointly deliberating whether to terminate his employment. *See* No. 12 CIV. 1217 RJS JLC, 2013 WL 6231615, at *16 (S.D.N.Y. Dec. 2, 2013). Here, by contrast, Ms. Russell unequivocally testified that the Hospital "did not terminate [Plaintiff] in any way, shape or form" because that authority belonged exclusively to JSNA. Russell Dep. 142:7-9, 185:16-19.

*Nazario v. Promed Pers. Servs. N.Y. Inc.* is similarly distinguishable. There, the putative employer made the decision to hire the plaintiff and had the ability to offer her continued employment. *See* No. 15 Civ. 6989 (LGS), 2017 WL 2664202, at *7-8 (S.D.N.Y. June 19, 2017). Those are quintessential employer functions. Here, however, while it could assess whether a temporary worker was clinically suited for assignment at its facility, the Hospital lacked authority to employ Plaintiff or offer her continued employment. Those decisions remained exclusively with JSNA throughout Plaintiff's employment. *See* Russell Dep. 21:22-22:11.

Plaintiff's reliance on *Gilani v. Hewlett-Packard Co.* is likewise misplaced. There, the plaintiff relied on evidence that the putative employer could request the plaintiff's replacement or removal. *See* No. 15-CV-5609 (NSR), 2018 WL 4374002, at *6 (S.D.N.Y. Sept. 12, 2018). But *Gilani* involved a materially different factual record. After the defendant cancelled the plaintiff's assignment, the plaintiff never heard from his formal employer, was not offered another assignment, and ceased receiving compensation from that employer. *See id.* Those facts supported

the inference that the formal employer no longer considered itself the plaintiff's employer once the assignment ended.

The undisputed record here establishes precisely the opposite. When Plaintiff's assignment at the Hospital ended, Lorraine Russell contacted Plaintiff both via e-mail and telephone to inform her of her termination. *See* Russell Dep. 144:3-15. It was Ms. Russell – not the Hospital – who advised Plaintiff that JSNA would "keep [her] in mind for future opportunities," and explained that she might be eligible for unemployment benefits. Summo Decl. Ex. Q; *see* Russell Dep. 144:3-21. Moreover, Ms. Russell offered to place her with another client of JSNA or work out an alternative schedule. Russell Dep. 145:8-12. Those actions are consistent with an employer continuing to manage its employment relationship after a client assignment concluded. Thus, unlike in *Gilani*, the end of Plaintiff's assignment at the Hospital did not terminate her employment relationship with JSNA or transfer employer status to the Hospital. Rather, it confirmed that JSNA remained Plaintiff's employer throughout.

In sum, the undisputed evidence establishes that JSNA alone exercised authority over the fundamental incidents of Plaintiff's employment, while the Hospital's role was limited to the operational oversight inherent in any staffing-agency relationship. Under *Felder* and the authorities discussed above, that evidence precludes a finding that the Hospital was Plaintiff's joint employer.

### C. The Hospital's Day-To-Day Oversight And Alleged Influence In JSNA's Decision To Continue Or Terminate Plaintiff's Employment Does Not Create Joint-Employer Status

Unable to identify control over any core term and conditions of employment, Plaintiff instead relies on the Hospital's operational role in managing its operating rooms. Specifically, Plaintiff emphasizes that the Hospital tracked her hours, set her work schedule, assigned her daily

work locations, supervised her performance, and participated in performance evaluations. *See* Plaintiff's Motion for Partial Summary Judgment, Part II. But these are not the hallmarks of an employment relationship. Rather, they reflect the routine operational oversight inherent in every hospital staffing-agency arrangement. Courts have consistently held that such day-to-day supervision, standing alone, is insufficient to establish joint-employer status where, as here, the staffing agency retains exclusive authority over hiring, firing, discipline, compensation, benefits, and other fundamental terms and conditions of employment. *See, e.g.*, *Liotard v. Fedex Corp.*, No. 14-CV-2083 (NSR), 2016 WL 1071034, at *6 (S.D.N.Y. Mar. 17, 2016) ("[W]here supervision consists primarily of telling employees what work to perform, or where and when to perform the work, but not how to perform the work, the supervision does not support a joint employer finding." (internal quotations omitted)); *see also Paley v. Bellum AI, LLC*, No. 1:25-CV-02783, 2025 WL 3496354, at *14 (S.D.N.Y. Dec. 5, 2025) ("[I]t is well settled that the performance of administrative functions falls well short of the level of operational control the joint-employer doctrine demands.").

None of the incidents on which Plaintiff relies alters that conclusion. The Hospital's use of its own timekeeping system served administrative and billing purposes; it did not confer authority over Plaintiff's employment relationship with JSNA. Likewise, the Hospital's scheduling decisions reflected its operational need to coordinate operating room coverage, *see* Kuzin Decl. ¶¶ 35-40, not an employer's authority to dictate the terms of Plaintiff's employment. Notably, scheduling and time-off requests were routed through JSNA – not directly through the Hospital – confirming that even in this area, JSNA retained ultimate authority. *See* Russell Dep. 36:14-21, 51:24-52:3. The parties' Agency Agreement further reinforces this distinction, expressly providing

that the Hospital would not exercise "control or direction over the manner or method by which Temporary Staff perform [nursing-related] services." Summo Decl. Ex. J, at 5 § 8(ii).

Nor does Mr. Kuzin's approval or denial of contract extensions create joint-employer status. A client hospital's right to approve or decline the continuation of a staffing assignment is qualitatively different from the authority to hire or fire the worker. *See Yacklon v. E. Irondequoit Cent. Sch. Dist.*, 733 F. Supp. 2d 385, 390 (W.D.N.Y. 2010) (finding no joint-employer relationship where the putative employer lacked authority over hiring, firing, compensation, and benefits, but retained the ability to reject the worker's placement). As Lorraine Russell confirmed, the Hospital could request a replacement technologist, but it could not terminate Plaintiff's employment with JSNA. *See* Russell Dep. 184:22-186:2; *see also* Summo Decl. Ex. J, at 3; Kuzin Decl. ¶¶ 47-48, 58-60. If Plaintiff's assignment at the Hospital ended, she nevertheless remained a JSNA employee and could be reassigned to another client facility. *See* Russell Dep. 144:3-21. This underscores that the Hospital controlled only whether Plaintiff would continue working at its facility – not whether she remained employed by JSNA.

Plaintiff's reliance on *Gore v. RB Group, Inc.* and *Hanley v. New York City Health & Hosps. Corp*. is similarly misplaced. Plaintiff cites those cases for the proposition that a joint-employer relationship may exist where a worker performs services at the putative employer's facility, receives work assignments form the putative employer's personnel, and is supervised by that entity's employees. But those cases involved materially different facts and significantly greater employer authority than exists here.

In *Gore*, the defendant not only supervised the plaintiff's work and assigned her daily responsibilities, but also possessed the authority to hire and discipline the plaintiff. *See Gore v. RB Group, Inc.*, No. 03-CV-9442 (KMK)(JCF), 2008 WL 857530, at *5 (S.D.N.Y. Mar. 31, 2008).

Moreover, unlike the present case, the defendant's authority over the plaintiff's compensation and benefits was not meaningfully disputed. *See id.* Here, by contrast, the undisputed record establishes that the Hospital possessed none of those indicia of employer authority. Rather, JSNA alone controlled Plaintiff's hiring, compensation, benefits, discipline, and termination. *See* Kuzin Decl. ¶¶ 28-29, 45-48; Russell Dep. 184:22-25-185:8.

Likewise, Plaintiff's reliance on *Hanley* ignores the critical feature that drove the court's analysis. There, the court concluded that the putative employer possessed the power to constructively terminate the plaintiff because the plaintiff's employment contract specifically required her appointment to the putative employer's facility as a condition of her continued employment with her formal employer. *See Hanley v. New York City Health & Hosps. Corp.*, 722 F. Supp. 3d 112, 120 (E.D.N.Y. 2024). No comparable condition exists here. Plaintiff's continued employment with JSNA did not depend upon her assignment to the Hospital. To the contrary, the undisputed record establishes that if Plaintiff's assignment ended, she remained employed by JSNA and could be reassigned to another client facility. *See* Russell Dep. 144:3-21. Accordingly, unlike the defendant in *Hanley*, the Hospital lacked the authority to terminate – constructively or otherwise – Plaintiff's employment.

Simply put, Plaintiff's authorities involve employers that exercised authority over one or more of the very employment decisions the Hospital indisputably lacked here. Because the Hospital exercised only the routine operational supervision inherent in every staffing-agency placement, and because JSNA retained exclusive authority over the fundamental terms and conditions of Plaintiff's employment, the Hospital was not Plaintiff's joint employer as a matter of law.

### D. To The Extent Plaintiff's Authorities Rely On The Legally Distinct Loaned-Servant Doctrine, Those Authorities Are Inapplicable

Although not explicitly named, certain authorities on which Plaintiff relies invoke the loaned-servant doctrine – not the joint-employer doctrine. Plaintiff cites *DeWitte v. Lieberman*, 48 F. Supp. 2d 280, 283-83, 288 (S.D.N.Y. 1999) for the proposition that an employment relationship may exist where a worker performs services at the putative employer's facility, reports to that employer's personnel, and receives work assignments from them. But *DeWitte* did not apply the joint-employer doctrine. Rather, the court concluded that the two defendants qualified as the plaintiff's employers under the loaned-servant doctrine. *See id.* at 288 (relying on *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 611 F. Supp. 344 (S.D.N.Y. 1984), which likewise applied the loaned-servant doctrine).

Although the loaned-servant doctrine and the joint-employer doctrine both concern employment relationships, they are legally distinct and are governed by different standards. Under the loan-servant doctrine, the general employer must relinquish control over its employee to another entity. *Perkins v. Crothall Healthcare, Inc*., 51 N.Y.S.3d 118, 120 (2017). Indeed, "[t]he key factor . . . [is] the 'special' employer's *exclusive right* to supervise the employee's work during the period of temporary service." *Amarnare*, 611 F. Supp. at 349 (emphasis added). Thus, unlike the joint-employer analysis, which examines whether multiple entities simultaneously exercised sufficient control over the employment relationship, the loaned-servant doctrine requires the general employer to surrender its authority to the special employer.

During her deposition, Lorraine Russell referred to Plaintiff and JSNA's other temporary workers as "my employee." *See, e.g.*, Russell Dep. 71:16, 40:16-17, 56:19-24, 68:8, 22. Additionally, Ms. Russell explicitly stated that Plaintiff "was not an employee of [the Hospital's]" and that [she] was [Plaintiff's] employer not [the Hospital]." Russell Dep. 76:17-21. Likewise,

temporary workers whose assignments ended at one placement could be reassigned to another client facility. *See* Russell Dep. 144:3-21. Moreover, Plaintiff's initial and subsequent contracts were entered into with JSNA, not the Hospital. *See* Summo Decl. Exs. M, N, O. Indeed, the contracts were signed by Plaintiff and Lorraine Russell. No representative from the Hospital signed any of the three short-term contracts. *See id.* This confirms that JSNA retained authority over its employees regardless of what occurred at any particular placement site and never transferred the employment relationship to the Hospital.

Nor did JSNA surrender exclusive authority to the Hospital. On the contrary, Ms. Russell testified that she remained Plaintiff's supervisor throughout Plaintiff's employment with JSNA. *See* Russell Dep. 162:16-163:5. Consistent with that testimony, Ms. Russell continued to exercise supervisory authority over Plaintiff, including by signing Plaintiff's performance evaluations. *See, e.g.*, Summo Decl. Ex. P. Accordingly, because JSNA neither relinquished its authority over Plaintiff nor vested the Hospital with the exclusive right to supervise her work, the loaned-servant doctrine has no application here. Plaintiff's reliance on *DeWitte* and *Amarnare* is therefore misplaced.

Because the undisputed record establishes that JSNA retained exclusive control over every core term of Plaintiff's employment, and because the Hospital's operational oversight and limited input in JSNA's staffing decisions cannot substitute for that authority, the Hospital was not Plaintiff's joint employer as a matter of law.

## POINT II

## EVEN IF THE HOSPITAL WERE A JOINT EMPLOYER, THE UNDISPUTED RECORD INDEPENDENTLY COMPELS JUDGMENT FOR THE HOSPITAL ON LIABILITY FOR JSNA'S TERMINATION DECISION

Even assuming arguendo that the Court were to find the Hospital a joint employer, that finding would not end the inquiry. As courts in this circuit have recognized, "[e]ven where two companies are deemed a joint employer, . . . it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII." *Lima v. Adecco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009). Put differently, the conduct of one employer is not necessarily imputed to the other. *Yousef v. Al Jazeera Media Network*, No. 16-CV-6416 (CM), 2018 WL 6332904, at *2 (S.D.N.Y. Oct. 31, 2018). Rather, a joint employer may be held liable only if it "knew or should have known of the discriminatory conduct and failed to take corrective measures within its control." *Lima*, 634 F. Supp. 2d at 400 (citation modified).

That standard is consistent with the Equal Opportunity Enforcement Commission's Guidelines, which provide that an employer may be held liable for the discriminatory acts of a non-employee – including, as relevant here, another joint employer – only if the employer "knows or should have known of the conduct and fails to take immediate or appropriate corrective action." *See Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 386-87 (S.D.N.Y. 2012) (quoting *Kudatzky v. Galbreath Co.*, No. 96 CIV. 2693 (HB), 1997 WL 598586, at *4 (S.D.N.Y. Sept. 23, 1997) (quoting 29 C.F.R. § 1604.11(b) (detailing the guidelines on discrimination because of sex))).

Relatedly, under the NYSHRL, a joint employer will be held liable for the conduct of the other joint employer only upon "a showing that the [joint] employer became a party to the discriminatory conduct by encouraging, condoning, or approving of the conduct." *Burkett v. Five*

*Below Inc.*, No. 25-CV-3847 (BMC), 2026 WL 1018602, at *5 (E.D.N.Y. Apr. 15, 2026). Significantly, condonation requires a knowing, after-the-fact forgiveness or acceptance of misconduct. A joint employer's deliberate failure to respond to discriminatory conduct may demonstrate condonation just as readily as its affirmative actions. *See id.*

While slightly broader, the same principle governs under the NYCHRL. Employer liability for the discriminatory acts of another joint employer exists only where the actor exercised managerial or supervisory responsibility, or where the employer knew or should have known of the discriminatory act and failed to take corrective action. *Id.* (quoting N.Y.C. ADMIN. CODE § 8-107(13)(b)).

No such evidence exists here.

The undisputed record establishes that the decision to terminate Plaintiff's employment was made solely by JSNA and its counsel – not the Hospital. In requesting that Plaintiff's assignment at the Hospital be ended, Mr. Kuzin merely exercised the Hospital's contractual right under the Agency Agreement. *See* Kuzin Decl. ¶¶ 54-60; Kuzin Supp. Decl. ¶¶ 12-17; Kuzin Dep. I 72:2-15. Read in context, Mr. Kuzin's March 27, 2024 email communicated only that Plaintiff's assignment at the Hospital was to be ended – not that her employment with JSNA should be terminated. *Compare* Buzzard Decl. Ex. 21, *with* Kuzin Supp. Decl. ¶¶ 22-24.

That distinction is dispositive. Under the Agency Agreement, the Hospital retained the contractual right to end any agency worker's assignment at any time and for any reason. *See* Summo Decl. Ex. J, at 3 §5(d). The authority to determine whether an agency employee would remain employed by JSNA, however, rested exclusively with JSNA. Thus, once the Hospital exercised its contractual right to end Plaintiff's assignment, any subsequent employment decision belonged to JSNA alone.

The record confirms precisely that sequence of events. After learning that the Hospital wanted to end Plaintiff's assignment, Lorraine Russell consulted JSNA's own counsel regarding Plaintiff's employment status. *See* Buzzard Decl. Ex. 22. It was JSNA's attorney who independently – and erroneously – advised Ms. Rusell that Plaintiff's employment with JSNA must have been terminated because her assignment with the Hospital had ended. *See* Russell Dep. 141:6-17. Acting on that legal advice and pursuant to her own authority as JSNA's president, Ms. Russell decided to terminate Plaintiff's employment with JSNA. *See id.* at 142:18-143:24. These undisputed facts underscore the clear division of authority: the Hospital possessed only the contractual right to end Plaintiff's assignment at its facility, while JSNA alone possessed – and exercised – the authority to terminate Plaintiff's employment.

Equally important, there is no evidence that the Hospital participated in, encouraged, or even knew of JSNA's subsequent employment decision. Mr. Kuzin did not instruct, recommend, encourage, or otherwise influence JSNA's decision to terminate Plaintiff's employment. *See* Kuzin Supp. Decl. ¶¶ 23-24; *see also* Kuzin Decl. ¶¶ 57-60. On the contrary, he testified that he had "nothing to do with how [JSNA] runs their business" and "absolutely no input" regarding JSNA's employment decisions. Kuzin Dep. I. 72:2-5. While Mr. Kuzin was included in an email communication from Ms. Russell to her attorney regarding the best way to communicate the termination to Plaintiff, *see* Buzzard Decl. Ex. 22, this was merely after the decision to terminate had been made. Neither Mr. Kuzin nor any other representative of the Hospital was included in the communications between Ms. Russell and her attorney leading to the decision to terminate Plaintiff's employment. *See id.* Exs. 19, 20. Nor did anyone at the Hospital possess the authority to dictate what JSNA would do with its employees after an assignment ended. *See* Kuzin Dep. I 126:20-127:12. Plaintiff identifies no evidence creating a genuine dispute of fact on this point.

Because the Hospital neither participated in, encouraged, approved, nor had knowledge of JSNA's allegedly discriminatory decision to terminate Plaintiff's employment, it cannot be held liable under Title VII, the NYSHRL, or the NYCHRL – even assuming the existence of a joint-employer relationship. At most, the undisputed evidence shows that the Hospital exercised its undisputed contractual right to end Plaintiff's assignment. The subsequent decision to terminate Plaintiff's employment was independently made by JSNA based on advice from its own counsel. Accordingly, no reasonable jury could conclude that the Hospital knew of, condoned, or participated in the alleged discriminatory conduct, and summary judgment should be granted in the Hospital's favor.

Moreover, pursuant to the Court's briefing schedule, Plaintiff's motion will be considered alongside the Hospital's pending Motion for Summary Judgment, which seeks dismissal of all claims arising from the same undisputed factual record. Both motions turn on the same dispositive facts – namely, that JSNA alone possessed the authority to control the core indicia of Plaintiff's employment, and that JSNA independently decided to terminate her employment after the Hospital ended her assignment. Because those facts foreclose liability against the Hospital as a matter of law, the Court should deny Plaintiff's motion and grant the Hospital's Motion for Summary Judgment.

## CONCLUSION

For all of the foregoing reasons, the Hospital respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment. First, the undisputed record establishes that the Hospital lacked the authority to control the core indicia of Plaintiff's employment and therefore was not her joint employer as a matter of law. Those same undisputed facts form the basis of the

Hospital's pending Motion for Summary Judgment, which likewise seeks dismissal of all claims against it.

Second, even assuming arguendo that the Hospital were Plaintiff's joint employer, Plaintiff's Motion still fails. Joint-employer status, standing alone, does not render one employer liable for the allegedly discriminatory acts of another. As the undisputed record demonstrates, the Hospital neither made, influenced, encouraged, approved, nor had knowledge of JSNA's independent decision to terminate Plaintiff's employment. Accordingly, Plaintiff cannot establish the Hospital's liability under Title VII, the NYSHRL, or the NYCHRL as a matter of law.

Because Plaintiff cannot prevail under either theory, the Court should deny Plaintiff's Motion for Partial Summary Judgment and grant the Hospital's Motion for Summary Judgment in its entirety.

Dated: Garden City, New York
August 11, 2026

GARFUNKEL WILD, P.C.
*Attorneys for Defendant St. Barnabas Hospital*

By: *_/s/ Nicholas M. Summo_*
Andrew L. Zwerling
Nicholas M. Summo

900 Stewart Avenue, 4th Floor
Garden City, New York 11530
(516) 393-2200