**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**----------------------------------------------------------------------x**

KIARA NAZAIRE,

Plaintiff,

-against-

**No.: 24-cv-05022 (AMD)**

JERSEY SHORE NURSING AGENCY INCORPORATED a/k/a JERSEY SHORE STAFFING AGENCY, INC. and ST. BARNABAS HOSPITAL,

Defendants.

**----------------------------------------------------------------------x**

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ST. BARNABAS HOSPITAL'S MOTION FOR SUMMARY JUDGMENT


**JOSEPH & KIRSCHENBAUM LLP**

D. Maimon Kirschenbaum
Lucas C. Buzzard
Leah Seliger
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640

*Attorneys for Plaintiff*

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ............ i

**STATEMENT OF FACTS** ............ 1

**I. DEFENDANTS, THEIR CONTRACTUAL RELATIONSHIP, AND PLAINTIFF'S HIRING** ............ 1

**II. MAY 2023-FEBRUARY 2024 – SBH HAS NO ISSUE WITH PLAINTIFF'S ABSENCES, AUTHORIZES TWO EXTENSIONS OF PLAINTIFF'S CONTRACT, AND PROVIDES ONLY POSITIVE FEEDBACK ABOUT PLAINTIFF AND HER ATTENDANCE** ............ 3

**III. FEBRUARY-MARCH 2024 - KUZIN LEARNS PLAINTIFF IS PREGNANT AND TERMINATES PLAINTIFF'S EMPLOYMENT LESS THAN ONE MONTH LATER** ............ 5

**ARGUMENT** ............ 7

**I. DEFENDANT SBH WAS PLAINTIFF'S JOINT EMPLOYER UNDER TITLE VII, THE NYSHRL, AND THE NYCHRL BECAUSE IT EXERCISED COMPLETE CONTROL OVER ALL ASPECTS OF THE PERFORMANCE OF PLAINTIFF'S WORK, TRACKED HER HOURS WORKED, AND PARTICIPATED IN HER HIRING AND FIRING** ............ 8

**II. SBH IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE MERITS OF PLAINTIFF'S PREGNANCY DISCRIMINATION CLAIMS** ............ 11

A. Defendant SBH, and Kuzin Specifically, Were Aware of Plaintiff's Pregnancy and Terminated her Employment Because of that Pregnancy ……………………..12

B. D There is Ample Evidence from Which a Reasonable Juror Could Conclude that Defendant SBH's Stated Reason for Plaintiff's Termination is Pretextual……..14

**CONCLUSION** ............ 19

## TABLE OF AUTHORITIES

**Cases**


*Bart v. Golub Corp.*, 96 F.4th 566 (2d Cir. 2024) .......................................................... 14

*Brankov v. Hazzard*, 142 A.D.3d 445 (1st Dep't 2016)................................................ 8,9

*Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275 (E.D.N.Y. 2005) ...... 11

*Chambers v. TRM Copy Centers Corp*., 43 F.3d 29 (2d Cir. 1994) .............................. 17

*Dean v. Univ. of Buffalo Sch. of Med. & Biomedical Scis.*,
804 F.3d 178 (2d Cir. 2015)................................................................................. 7

*Doninger v. Niehoff,* 642 F.3d 334 (2d Cir. 2011)......................................................... 17

*Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111 (2d Cir. 2000)............ 8

*Farmer v. Shake Shak Enters., LLC*, 473 F. Supp. 3d 309 (S.D.N.Y. 2020) ................. 13

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004)...................................................... 7

*Felder v. United States Tennis Ass'n*, 27 F.4th 834 (2d Cir. 2022)............................... 8

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000).............................................. 17

*Greenidge v. Costcos Wholesale*, No. 09-cv-4224,
2012 U.S. Dist. LEXIS 45698 (E.D.N.Y. Mar. 30, 2012)................................. 13

*Griffen v. Sirva, Inc.*, 29 N.Y.3d 174 (N.Y. 2017) ........................................................ 8

*Habe v. 33 Bayville Ave. Rest. Corp*., No. 09-cv-1071,
2012 U.S. Dist. LEXIS 4367 (E.D.N.Y. Jan. 13, 2012) ..................................... 17

*Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019) ...................................................... 11,13

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010) .............................................. 7

*Peralta v. Roros 940, Inc.*, 72 F. Supp. 3d 385 (E.D.N.Y. 2014).................................. 17

*Smith v. K & F. Indus., Inc*., 190 F. Supp. 2d 643 (S.D.N.Y. 2002) ............................. 17

*Romero v. St. Vincent's Servs., Inc.*,
2023 U.S. App. LEXIS 11908 (2d Cir. May 16, 2023)...................................... 11

*Woodell v. United Way of Duchess Cnty.*, 357 F. Supp. 2d 761 (S.D.N.Y. 2005) .......... 17

**Statutes, Rules & Regulations**

42 U.S.C. § 2000e(k)........................................................................................... 11

Plaintiff Kiara Nazaire respectfully submits this memorandum of law in opposition to Defendant St. Barnabas Hospital's ("SBH's") motion for summary judgment. For the reasons set forth below and in Plaintiff's memorandum of law in support of her motion for partial summary judgment, *see* ECF Dkt No. 63, the Court should: (1) grant Plaintiff's motion on this issue of SBH's status as Plaintiff's joint employer under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); and (2) deny SBH's motion to the extent it seeks summary judgment on Plaintiff's pregnancy discrimination claims under Title VII, the NYSHRL, and the NYCHRL.

## STATEMENT OF FACTS[1]

### I. DEFENDANTS, THEIR CONTRACTUAL RELATIONSHIP, AND PLAINTIFF'S HIRING

Jersey Shore Nursing Agency Incorporated d/b/a Jersey Shore Staffing Agency, Inc ("JSNA") is a staffing agency that provides nurses and other healthcare professionals to various healthcare employers, including Defendant St. Barnabas Hospital ("SBH" or the "Hospital"). SBH CSMF ¶¶ 1-2, 11. Lorraine Russell is the founder, president, and operator of JSNA. SBH CSMF ¶ 3. Gennady (Henry) Kuzin is the Hospital's Director of Perioperative Services who is responsible for overseeing several Hospital departments, including its operating rooms. SBH CSMF ¶¶ 5-6.

SBH has a contract with JSNA (the "SBH-JSNA Agreement") that states the terms by which the Hospital engages JSNA to recruit and provide staff to work at the Hospital. SBH CSMF ¶¶ 11-12; Buzzard Decl., Ex. 6 (SBH-JSNA Agreement). Under the Agreement, JSNA is required

[1] In support of this memorandum of law, Plaintiff cites to the following documents: (1) the November 14, 2025 Declaration of Lucas C. Buzzard ("Buzzard Decl.") and exhibits attached thereto, which has already been filed in support of Plaintiff's motion for partial summary judgment, *see* ECF Dkt No. 66; (2) Plaintiff's December 4, 2025 counterstatement of facts in response to SBH's Rule 56.1 statement ("Pl's CSMF"); (3) Defendant St Barnabas Hospital's Counterstatement of Material Facts ("SBH CSMF") dated December 4, 2025, which has already been filed in support of Plaintiff's motion for partial summary judgment, *see* ECF Dkt No. 65; and (4) the December 1, 2025 Declaration of Kiara Nazaire ("Nazaire Decl."). The transcripts of depositions are identified by the deponent's last name (e.g., "Nazaire Dep.").

to provide staff, including certified surgical technologists ("OR Techs"), who are licensed, registered or certified as required by statute and regulation; and who have been properly and adequately trained and possess the skills appropriate to perform their required duties at the Hospital. SBH CSMF ¶¶ 11, 13. It further requires the staff provided by JSNA to abide by the Hospital's "ethical and professional standards" and the Hospital's "policies and procedures." SBH CSMF ¶ 14; SBH-JSNA Agreement ¶ 6(b). Finally, Paragraph 5(d) of the Agreement provides that "SBH may terminate or refuse the participation of any Temporary Staff worker providing services pursuant to this Agreement, effective immediately, in SBH's sole discretion for any reason whatsoever." SBH-JSNA Agreement ¶ 5(d); SBH CSMF ¶ 15. The "Temporary Staff" referenced in this Paragraph 5(d) are those employees JSNA places at SBH, and this Paragraph specifically applies to Plaintiff. *See* Buzzard Decl., Ex. 1 (Russell Dep.) at 54:14-25, 56:11-24.

Plaintiff Kiara Nazaire is an OR Tech whose primary job is to assist surgeons in operating rooms. SBH CSMF ¶ 7. In 2023, Plaintiff applied for an OR Tech position advertised by JSNA and was placed at the Hospital. SBH CSMF ¶¶ 16-17. Before Plaintiff was hired by JSNA, both Russell at JSNA and Kuzin at SBH reviewed her resume. SBH CSMF ¶ 17-18. Prior to being hired, Plaintiff had to conduct various tests required by the Hospital, including a physical examination, a urine drug screen, blood work, and a background check. *Id.* ¶ 21. Ultimately, Kuzin gave Russell his approval to hire Plaintiff to fill an OR Tech position at the Hospital. *Id.* ¶ 19.

Plaintiff worked at the Hospital pursuant to several three-month contracts, each of which is "derived" from the SBH-JSNA Agreement and provides that (except if modified in Plaintiff's contracts) all provisions of the SBH-JSNA agreement "shall apply" to Plaintiff's contracts. SBH CSMF ¶ 27; *see also* Buzzard Decl., Exs. 8 (Nazaire First Contract) at JSNA000192, 9 (Nazaire Second Contract) at JSNA000197, 10 (Nazaire Third Contract) at JSNA000202. In May 2023,

JSNA and SBH entered into a supplemental agreement regarding the provision of Plaintiff to work at SBH, which also incorporates the terms of the SBH-JSNA Agreement. SBH CSMF ¶ 28; Buzzard Decl., Ex. 11 (Supplemental Agreement).

## II. May 2023-February 2024 – SBH Has No Issue With Plaintiff's Absences, Authorizes Two Extensions of Plaintiff's Contract, And Provides Only Positive Feedback About Plaintiff and Her Attendance.

Plaintiff began working at the Hospital in May 2023. SBH CSMF ¶ 24. From May 2023 to the end of December 2023, Plaintiff's contract with JSNA under which she worked at the Hospital was extended two times. SBH CSMF ¶¶ 25, 49. Every extension of Plaintiff's initial three-month contract was approved by Kuzin. *Id.* ¶ 26. As an OR Tech, Plaintiff assisted surgeons in the operating room during surgery, and her responsibilities included passing instruments to the surgeons, keeping the surgical area sterile, and acting as a patient advocate. SBH CSMF ¶ 29. While some OR Techs who work at the Hospital are (like Plaintiff) provided through staffing agencies, others are employed directly by the Hospital. SBH CSMF ¶¶ 8-9. Both sets of OR Techs – those the Hospital directly employs and those provided through staffing agencies – perform the same duties, undergo the same orientation program at SBH, and are subject to the Hospital's same policies and procedures, including those governing timekeeping, overtime, and requests for time off. *See* SBH CSMF ¶¶ 10, 30-41.

While at work, Plaintiff's day-to-day performance was supervised by the Hospital. SBH CSMF ¶ 44. Plaintiff's daily duties were assigned by the Hospital's "charge nurse," who was supervised by Andrea McNaugton, the Hospital's Assistant Director of Perioperative Services. SBH CSMF ¶¶ 41-42. The Hospital also had direct input into Plaintiff's performance reviews, which she received in June 2023 and February 2024. SBH CSMF ¶ 51; *See* Buzzard Decl., Exs. 15 (June 2023 Performance Review), 16 (February 2024 Performance Review). In connection with

each review, Russell – JSNA's owner – called the Hospital to get a verbal evaluation of Plaintiff's performance. SBH CSMF ¶ 52.

Plaintiff's contracts required her to work three 12-hour shifts per week for a total of 33 weekly hours. SBH CSMF ¶¶ 47. Among the SBH processes Plaintiff was required to follow were its procedures for requesting time off, calling in sick, and leaving work early because of an illness. *See* Nazaire Decl. ¶¶ 5-10; Russell Dep. at 52:4-10; Kuzin 7.23.25 Dep. at 20:12-21:10; Nazaire Dep. at 115:9-116:19. Plaintiff always followed these processes while working at SBH and never left early or failed to show up without first notifying SBH as required. *See* Nazaire Decl. ¶¶ 7-8,10.

During the span of her first two contracts, Plaintiff regularly called out from work or took time off following SBH's processes. For example, Plaintiff's first contract covered the period from May 15, 2023 to August 12, 2023. *See* Buzzard Decl., Ex. 8. During that thirteen-week period, there were four weeks when Plaintiff did not work the full 33 weekly hours. *See* Buzzard Decl., Ex. 22 (JSNA Time Records) at JSNA000407-08. During the sixteen-week period covered by Plaintiff's second contract (from August 13, 2023 to December 16, 2023), there were thirteen weeks when Plaintiff did not work the full 33 hours and seven weeks when Plaintiff worked less than 30 hours per week. *See id.* at JSNA000408-09.

SBH did not have any issue with Plaintiff calling out from work or taking time off during this period. Instead, it approved extensions of both Plaintiff's first and second contracts. *See* SBH CSMF ¶¶ 26, 49. Moreover, the "Client Clinical Feedback" sections of Plaintiff's June 2023 and February 2024 performance review both indicated that she "meets standards" in all respects, including "Attendance and Punctuality." *See* Buzzard Decl. Exs. 15 at JSNA000247, 16 at JSNA000358. Plaintiff's "Client Clinical Feedback" section on her June 2023 performance review states further that the "[f]acility is happy to have her & appreciates her efforts." Buzzard Decl.,

Ex. 15 (June 2023 Performance Review); *see also* SBH CSMF ¶ 53. In connection with Plaintiff's February 2024 performance review, Russell stated in a February 29, 2024 email:

> "I have periodically asked how things were at SBH and you and I have discussed any issues. Currently your time at SBH has been without issue and SBH Directors are appreciative to have you. There is no negative feedback, only positive."

Buzzard Decl. Ex., 17 (February 29 Email); *see also* SBH CSMF ¶¶ 54-56.

Despite this uniformly positive feedback from SBH, Kuzin nonetheless directed JSNA to terminate Plaintiff's employment less than one month after Russell's February 29 email. Buzzard Decl., Ex. 21 (Kuzin March 27 Email). In the interim, he learned Plaintiff was pregnant.

### III. FEBRUARY-MARCH 2024 - KUZIN LEARNS PLAINTIFF IS PREGNANT AND TERMINATES PLAINTIFF'S EMPLOYMENT LESS THAN ONE MONTH LATER.

From January 5 to February 5, 2024, Plaintiff was on approved time off from work. SBH CSMF ¶ 50. Plaintiff learned she was pregnant in February 2024. SBH CSMF ¶ 57. At the end of February, Plaintiff informed McNaughton she was pregnant and could not participate in surgeries that required x-rays. SBH CSMF ¶ 58; Nazaire Dep. at 62:6-12. Soon after Plaintiff requested this accommodation, Plaintiff learned that news of her pregnancy had spread to Kuzin. *See* Nazaire Decl. ¶ 16. Specifically, in early March 2024, Kuzin spoke to Plaintiff in a supply room, directly asking her whether she was expecting a "boy or a girl." *See id.* ¶¶ 17-22.

Just weeks after this conversation, on March 21, Kuzin called Russell and informed her that he "had to send home" Plaintiff "two days last week and yesterday [because] she was sick and could not stand long periods of time as [required] in an OR." Buzzard Decl., Ex. 19 (March 22 Email); *see also* SBH CSMF ¶¶ 62-64. Kuzin informed Russell that Plaintiff was pregnant and although SBH was "willing to send her home and make sure she is safe they also do think they cannot support her employment if she is not able to perform at 100%." Buzzard Decl., Ex. 19 (March 22 Email). Several days later, on March 25, Russell emailed her attorney, asking to have

a conversation because Plaintiff was "pregnant" and "leaving early" and, as a result, the Hospital did "not think [she] can work effectively until May when her contract is up." Buzzard Decl., Ex. 20 (March 25 Email); *see also* SBH CSMF ¶¶ 65-67.

On March 27, 2024, Kuzin wrote to Russell stating that: "As per our conversation on Thursday March 21, I am confirming the termination of Ms. Nazaire due to her inability to fulfill her hours obligation to SBH." SBH CSMF ¶ 68; Buzzard Decl., Ex. 21 (Kuzin March 27 Email); Kuzin 6.17.25 Dep. at 73:4-12. It was Kuzin's expectation after this email that Plaintiff would no longer work at the Hospital. SBH CSMF ¶ 69. Upon receiving this email, Russell asked JSNA's attorney how to respond and was told that she "should terminate the employee because the contract with her has been terminated by the hospital." Buzzard Decl., Ex. 22 (March 27 Emails) at JSNA000016; *see also* SBH CSMF ¶¶ 70-71. Russell terminated Plaintiff's employment as Kuzin had directed, writing she "need[ed] to terminate [Plaintiff] because [Plaintiff's] contract has been terminated by St Barnabas Hospital." Buzzard Decl., Ex. 23 (Termination Email); *see also* SBH CSMF ¶¶ 72-73.

Unlike it did with Plaintiff, SBH did not request the termination of other, non-pregnant OR Techs supplied by JSNA who were unable to "fulfill [their] hours obligation to SBH." One example is Baindu Massaquoi, who had the same 33 weekly hour requirement as Plaintiff. *See* SBH CSMF ¶¶ 74-75. During the sixteen-week period covered by Plaintiff's second contract (August 13, 2023 to December 16, 2023), for example, Massaquoi met her 33-hour requirement only one week (the week of 11/11/2023), and there were eight weeks when she worked less than 30 hours. *See* Buzzard Decl., Ex. 14 at JSNA00408-09. In 2024, during the seven full weeks from February 10, 2024 (the week Plaintiff returned from approved time off) to March 23, 2024 (Plaintiff's last full week of work), Massaquoi did not meet the 33-weekly hour requirement once,

and there were three weeks when she worked less than 30 hours. *See id.* at JSNA000410. Unlike Plaintiff, Massaquoi was not terminated in March 2024. *See* SBH CSMF ¶ 77.

**ARGUMENT**

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff,* 642 F.3d 334, 344 (2d Cir. 2011). "The burden is on the moving party to establish the absence of any material factual issues." *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). If the movant satisfies this burden, the non-movant defeats summary judgment by identifying record evidence from which "a reasonable jury could find in the non-movant's favor." *Dean v. Univ. of Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186 (2d Cir. 2015) (quotation marks omitted). The court "must draw all reasonable inferences in the favor of the nonmoving party, even though contrary inferences might reasonably be drawn." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

Here, as set forth in Plaintiff's memorandum of law in support of her motion for partial summary judgment, the undisputed facts demonstrate that SBH was Plaintiff's joint employer under Title VII, the NYSHRL, and the NYCHRL. Conversely, as set forth below, SBH is not entitled to summary judgment on the merits of Plaintiff's pregnancy discrimination claims because there is ample evidence from which a reasonable jury could conclude that: (1) Kuzin terminated Plaintiff's employment because she was pregnant; and (2) SBH's stated reason for Plaintiff's termination is nothing but a pretext for discrimination.

## I. Defendant SBH was Plaintiff's Joint Employer under Title VII, the NYSHRL, and the NYCHRL Because it Exercised Complete Control Over All Aspects of The Performance of Plaintiff's Work, Tracked her Hours Worked, and Participated in Her Hiring and Firing.

As set forth in Plaintiff's memorandum of law in support of her motion for partial summary judgment, the undisputed facts demonstrate that SBH is Plaintiff's joint employer and thus liable for the violations of Title VII, the NYSHRL, and the NYCHRL alleged in this lawsuit. *See* ECF Dkt No. 63 ("Pl.'s Mem.") at 7-13. As explained in that memorandum of law, the "joint employer doctrine" may permit an employee to "assert employer liability against an entity that is not formally his or her employer." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 842 (2d Cir. 2022) (citation omitted). This occurs when the employee who is "formally employed by one entity is assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity." *Id.* (cleaned up). Where the joint employer doctrine applies, an employee "may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Id.* (cleaned up).

The common law of agency governs the joint employer analysis under Title VII, the NYSHRL, and the NYCHRL. *Felder*, 27 F.4th at 843; *Griffen v. Sirva, Inc.*, 29 N.Y.3d 174, 186 (N.Y. 2017) (addressing the NYSHRL); *Brankov v. Hazzard*, 142 A.D.3d 445, 446 (1st Dep't 2016) (addressing the NYSHRL and NYCHRL). While numerous factors are considered in this analysis, the most important is the extent of the alleged joint employer's control over "the 'manner and means' by which the worker completes his or her assigned tasks." *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000) (citation omitted); *accord Felder*, 27 F.4th at 843 ("[T]he crux of these factors is the element of control." (citation omitted)); *id.* at 844 ("[T]he exercise of control is the guiding indicator . . .."); *Griffen*, 29 N.Y.3d at 186

(explaining that "the greatest emphasis [is] placed on the alleged employer's power to order and control the employee in his or her performance of work" (quotation marks omitted); *Brankov*, 142 A.D.3d at 446 (joint employer status exists "where there is sufficient evidence that the defendant had immediate control over the other company's employees, and particularly the defendant's control over the employee in setting the terms and conditions of the employee's work").

As fully set forth in Plaintiff's memorandum of law in support of her motion for partial summary judgment, the undisputed evidence demonstrates that SBH was Plaintiff's joint employer along with JSNA. *See* ECF Dkt No. 63 ("Pl.'s Mem.") at 7-13. Rather than repeat all her prior arguments here, Plaintiff respectfully directs the Court to that discussion and addresses only Defendant SBH's specific contentions. First, SBH asserts that it "lacked authority over Plaintiff's continued employment." SBH Mem. at 9. But this is expressly contradicted by SBH's own admissions that: (1) Kuzin reviewed Plaintiff's resume and approved her hiring; (2) Kuzin had to approve every extension of Plaintiff's initial three-month period working at SBH; and (3) Kuzin confirmed Plaintiff's termination. *See* SBH CSMF ¶¶ 18-19, 26, 68.

Moreover, SBH's attempt to rewrite the SBH-JSNA Agreement to convince this Court that it had no authority to terminate Plaintiff's employment is as disingenuous as it is unpersuasive. *See* SBH Mem. at 9. The SBH-JSNA Agreement states in no uncertain terms that SBH "may *terminate* . . . any Temporary Staff worker providing services pursuant to this Agreement, effective immediately, in *SBH's sole discretion for any reason whatsoever.*" Buzzard Decl., Ex. 6 (SBH-JSNA Agreement) ¶ 5(d) (emphasis added); *see* Russell Dep. at 54:14-25, 56:11-24 (admitting this provision applies to Plaintiff). This clearly did not limit SBH to simply "discontinu[ing] Plaintiff's assignment" and preclude it from "terminat[ing] her employment with JSNA" as SBH now argues. SBH Mem. at 9. This is because Plaintiff's very employment by JSNA is completely derivative of

the SBH-JSNA Agreement. To be sure, the entirety of Plaintiff's employment relationship with JSNA is governed by the three short-term contracts she signed with that Agency. *See* Buzzard Decl., Exs. 8-10. Each of those contracts, in turn, is expressly "derived" from the master SBH-JSNA Agreement and explicitly state that the terms of that Agreement – which include the termination provisions of Paragraph 5(d) – "shall apply" to Plaintiff's contracts. *See* Buzzard Decl., Exs. 8-10.

Thus, if SBH exercised its authority to terminate Plaintiff pursuant to Paragraph 5(d) of the SBH-JSNA Agreement, Plaintiff would be left without any employment relationship with JSNA because she had no agreement with that agency other than the one governing her work for SBH. That is precisely what Russell and her attorney in fact concluded after Kuzin confirmed Plaintiff's "termination" (not her "reassignment") in his March 27 email. Buzzard Decl., Ex. 21 (Kuzin March 27 Email); *see* Buzzard Decl., Ex. 22 at JSNA000016 (email from JSNA's attorney stating that Russell "should terminate [Plaintiff] *because the contract with her has been terminated by the hospital*" (emphasis added); *id.*, Ex. 23 (termination email from Russell stating that she "need[ed] to terminate [Plaintiff] *because [Plaintiff's] contract has been terminated by St Barnabas Hospital*" (emphasis added)). Put simply, the undisputed facts and plain language of the relevant agreements demonstrate that SBH not only had the power to terminate Plaintiff but exercised that power to terminate Plaintiff's employment in its entirety.

This power, along with SBH's approval of Plaintiff's hiring, complete control and supervision over the day-to-day performance of her work, participation in her performance evaluations, tracking and maintaining records of her time worked, approving her requests for time off and to work overtime, and approval of extensions of her employment period demonstrates that SBH share[d] significant control of [Plaintiff]," thus making it her joint employer under Title VII, the NYSHRL, and the NYCHRL. *Felder*, 27 F.4th at 843; *see* SBH CSMF ¶¶ 14-15, 18-19, 21,

25-27, 29-42, 44, 50-56, 61-65, 68-73. As a result, summary judgment should be granted to Plaintiff on this issue.

## II. SBH is Not Entitled To Summary Judgment on the Merits of Plaintiff's Pregnancy Discrimination Claims.

Defendant SBH's summary judgment motion should be denied with respect to the merits of Plaintiff's pregnancy discrimination claims brought under Title VII, the NYSHRL, and the NYCHRL. As amended by the Pregnancy Discrimination Act ("PDA"), Title VII prohibits pregnancy discrimination as a form of gender discrimination. *See Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019). Specifically, the PDA provides that, for purposes of Title VII, discrimination "on the basis of sex" includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Like Title VII, the NYSHRL and NYCHRL also prohibit pregnancy discrimination as a form of gender discrimination. *See Romero v. St. Vincent's Servs., Inc.*, 2023 U.S. App. LEXIS 11908, at *4 & n.1 (2d Cir. May 16, 2023).

Claims of pregnancy discrimination under Title VII are considered under the familiar *McDonnell Douglas* burden shifting analysis under which the plaintiff must first establish a prima facie case, after which the defendant must proffer a legitimate, non-discriminatory reason for its actions, which then may be overcome if the plaintiff demonstrates that the proffered reason is pretextual. *See Lenzi*, 944 F.3d at 107-08. Under Title VII, a plaintiff is not required to demonstrate that her pregnancy was a "but for" cause of the employer's adverse action. *Id.* at 107. Instead, the plaintiff need only demonstrate that "the motive to discriminate was *one of the employer's motives*, even if the employer also had other, lawful motives that were causative in the employer's decision." *Id.* (quotation marks omitted).

Here, SBH argues that it is entitled to summary judgment because: (1) there is "no evidence' that SBH played any role in the decision to terminate Plaintiff, *see* SBH Mem. at 10-13; (2) Plaintiff's "repeated attendance deficiencies" were a legitimate reason for Plaintiff's termination, *see id.* at 13-15; and (3) Plaintiff cannot establish pretext, *see id.* at 15-18. SBH is flatly wrong on all fronts and, as a result, its motion must be denied.

**A. Defendant SBH, and Kuzin Specifically, Were Aware of Plaintiff's Pregnancy and Terminated her Employment Because of that Pregnancy**

In a stunning assertion, SBH claims that even if it were found to be Plaintiff's joint employer (which it is), it cannot be held liable for her termination because "[t]here is no testimony, document, email or other evidence that anyone at the Hospital instructed JSNA to terminate Plaintiff's employment, recommended that it do so, or otherwise attempted to influence JSNA's employment decision." SBH Mem. at 12. How SBH can make this assertion with a straight face is simply beyond comprehension given the record in this case, which includes evidence that: (1) Kuzin requested Plaintiff's termination during a March 21 conversation with Russell in which he both informed her of Plaintiff's pregnancy and relayed that although SBH was willing to send her home because of her pregnancy-related illness, it could "not support her employment if she is not able to perform at 100%," SBH CSMF ¶¶ 62-64; (2) Kuzin informed Russell that he did "not think [Plaintiff] can work effectively until May when her contract is up," *id.* ¶¶ 65-67; (3) Kuzin himself wrote an email in which he "confirm[ed] the termination of Ms. Nazaire," *id.* ¶¶ 68-69; and (4) both Russell and her attorney concluded based on that email that JSNA had to terminate Plaintiff because "the contract with her has been terminated by the hospital," *id.* ¶¶ 70-73. There is thus extensive evidence from which a reasonable juror could conclude that SBH was not only aware of Plaintiff's termination but was the driving force behind it. Finally, to the extent SBH's position is based on the fiction that it did not have authority to terminate Plaintiff's employment, that absurd

position should be rejected for all the reasons discussed above concerning the plain language of the relevant agreements. *See supra* at 9-11.

Next, although SBH's memorandum of law does not appear to directly contest Plaintiff's ability to make out a prima facie case, *see* SBH Mem. at 13-18, it does mention as part of its pretext argument that the chronology of events somehow "undermines" any inference of discriminatory intent, *id.* at 15. While it is thus somewhat unclear whether SBH contends Plaintiff cannot demonstrate the required inference of discrimination at the prima facie stage, what is clear is that such an argument, if made, would be meritless.

First, the short temporal proximity between the time when Kuzin learned of Plaintiff's pregnancy in late February or early March 2024 and Plaintiff's March 27, 2024 termination – one month or less – is well within the 2-month period that court's regularly find sufficient to raise the required inference of discriminatory intent. *See Lenzi*, 944 F.3d at 108 (termination less than a month after disclosing pregnancy); *Farmer v. Shake Shak Enters., LLC*, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020) (citing cases and holding that termination "[l]ittle over a month" after disclosure of pregnancy sufficient to raise the inference).

Second, the fact that Kuzin mentioned Plaintiff's pregnancy and associated during the very conversation in which he informed Russell that SBH could not "support her employment if she is not able to perform at 100%," Buzzard Decl., Ex. 19, is clearly indicative of his discriminatory state of mind. A reasonable jury presented with this evidence could easily conclude that one reason for Kuzin's actions was his discriminatory belief that Plaintiff could no longer work effectively because she was pregnant. *See, e.g.*, *Greenidge v. Costcos Wholesale*, No. 09-cv-4224, 2012 U.S. Dist. LEXIS 45698, *11 (E.D.N.Y. Mar. 30, 2012) (where employer made a statement that he could not keep the plaintiff working there "in her state of pregnancy" during her termination

meeting, there was a disputed issue of fact whether the defendant knew the plaintiff was pregnant and that the plaintiff was fired because of her pregnancy).

As the above demonstrates, there is abundant evidence from which a reasonable juror could conclude both that Kuzin both instigated Plaintiff's termination and did so with a discriminatory state of mind.

### B. There is Ample Evidence from Which a Reasonable Juror Could Conclude that Defendant SBH's Stated Reason for Plaintiff's Termination is Pretextual.

Like the copious evidence that Kuzin was the driving force behind Plaintiff's termination, there is abundant evidence from which a reasonable juror could conclude that SBH's stated reason for Plaintiff's termination – her "attendance deficiencies" – is pretextual. To meet her burden at this stage under Title VII, a plaintiff "may, but need not, show that the employer's stated reason was false, and merely a pretext for discrimination; a plaintiff may also satisfy this burden by producing other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class." *Bart v. Golub Corp.*, 96 F.4th 566, 576 (2d Cir. 2024); *see also id.* at 575 (explaining that at the pretext stage of a Title VII case, a plaintiff "need only show that the employer's stated reason—even if true or factually accurate—was not the "real reason," in the sense that it was not the *entire* reason due to a coexisting impermissible consideration"). Here, Plaintiff easily satisfies this burden by producing evidence that: (1) half of the "absences" SBH uses to justify Plaintiff's termination resulted from *SBH's decision* to send her home early on three occasions; (2) Plaintiff had a similar absence record before she became pregnant that SBH had no issue with; and (3) another similarly situated employee who did not meet her required weekly hours on more occasions than Plaintiff was not terminated.

As an initial matter, SBH asserts that its actions were justified because Plaintiff "failed to satisfy her contractual scheduling obligations" on six occasions in February and March 2023, including March 14, March 15, and March 21. *See* SBH Mem. at 14. But there is evidence from which a juror could conclude that it was *SBH* who decided to send Plaintiff home on three of those occasions because of sickness associated with her pregnancy. Specifically, Russell recorded her March 21 conversation with Kuzin in an email dated March 22, relaying that he had told her that SBH "had to send home [Plaintiff] *two days last week and yesterday*" (i.e., March 21) because "she was sick and could not stand for long periods of time as req[uired] in an OR." Buzzard Decl. Ex. 19. Kuzin then told Russell that Plaintiff was "pregnant" and although SBH was "willing to send her home and make sure that she is safe" it could not "support her employment if she is not able to perform at 100%."[2] *Id.* This indicates both that Kuzin knew the illness Plaintiff was experiencing resulted from her pregnancy and that *SBH* had made the decision to send Plaintiff home because of that illness. SBH's current attempt to blame Plaintiff for three days when *it* decided to "to send [her] home" not only demonstrates the pretextual nature of "legitimate" reason for her termination but is also indicative of Kuzin's overall discriminatory mindset. *See Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005) (a plaintiff "may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons" (internal quotation marks omitted)).

---

[2] Kuzin's statements, though relayed through Russell's email, will be admissible at trial under a number of theories, primarily that they are non-hearsay statements of a party opponent under Fed. R. Evid. 801(d)(2)(D) as Kuzin – SBH's Director of Perioperative Services – was Plaintiff's direct supervisor at the time the statements were made. *See, e.g.*, *See, e.g.*, *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 476-77 (S.D.N.Y. 2009) (admitting statements by supervisor under Rule 801(d)(2)(D) in Title VII case because the statements pertained related "to a matter within the scope of his agency i.e., his ability to hire someone for the company").

Second, although SBH asserts that Plaintiff's termination was justified by her "fail[ure] to satisfy her contractual scheduling obligations" on six days between February 9 and March 21, 2024, *see* SBH Mem. at 14, there are several examples of Plaintiff taking similar amounts of time off before she became pregnant without issue. As discussed above, during the sixteen-week period covered by Plaintiff's second contract (from August 13, 2023 to December 16, 2023), there were thirteen weeks when Plaintiff did not work her full 33 hours and seven weeks when she worked less than 30 hours per week. *See* Buzzard Decl., Ex. 14 at JSNA000408-09.

Indeed, during the five weeks between August 12, 2023 and September 9, 2023, Plaintiff did not work at all during two weeks, worked 22 hours for two weeks, and worked approximately 11 hours during one of the weeks. *See id.* at JSNA000408. Plaintiff was scheduled to work three shifts per week for a total of 33 hours, meaning that she was paid for 11 hours each shift. *See* SBH CSMF ¶ 47. This means that Plaintiff did not work her scheduled shifts on 9 occasions during these five weeks (three shifts on the weeks she did not work at all, two shifts during the week she worked only 11 hours, and one shift during the weeks she worked 22 hours). That is more absences than the 6 identified by SBH, which occurred over the course of the *seven* weekly pay periods running from February 10 to March 23. *See* Buzzard Decl., Ex. 14 at JSNA000410. Yet SBH did not request Plaintiff's termination in September 2023. Instead, it gave only "positive" feedback about Plaintiff in connection with Plaintiff's next performance review in February 2024, indicating further that she was meeting standards in "attendance and punctuality." *See* Buzzard Decl., Ex. 16 at JSNA000358; *id.*, Ex. 17.

SBH's failure to take any action against Plaintiff when she missed similar amounts of work before she became pregnant, and its glowing review of her performance just one month before she was terminated, are indicative or pretext and preclude summary judgment here. *See, e,g.*,

*Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 39 (2d Cir. 1994) (concluding that a defendant's failure to discharge a plaintiff for a significant period of time, during which the employee was allegedly performing poorly, was inconsistent with its claim that the employee's performance justified his termination and thereby indicated pretext); *Habe v. 33 Bayville Ave. Rest. Corp.*, No. 09-cv-1071, 2012 U.S. Dist. LEXIS 4367, at *9-10 (E.D.N.Y. Jan. 13, 2012) (holding that the plaintiff's claims survived summary judgment when she was fired shortly after revealing she was pregnant and in spite of a recent favorable performance review); *Woodell v. United Way of Duchess Cnty.*, 357 F. Supp. 2d 761, 772 (S.D.N.Y. 2005) (finding pretext where, among other factors, the defendant changed his attitude towards the plaintiff after learning she was pregnant, the plaintiff was fired shortly after announcing her pregnancy, and the plaintiff had "received compliments about her work"); *Smith v. K & F. Indus., Inc.*, 190 F. Supp. 2d 643, 651 (S.D.N.Y. 2002) ("[a] lack of written warning, disciplinary action or reprimand is evidence that may rebut a defendant's asserted legitimate, non-discriminatory rationale").

Finally, SBH's more favorable treatment of Massaquoi – who was not pregnant, had the same weekly hours requirement as Plaintiff, and was not terminated when she did not fulfill her contractual weekly hours on numerous occasions – "serve[s] as evidence that [SBH's] proffered legitimate, non-discriminatory reason" for Plaintiff's termination "was a pretext for . . . discrimination." *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000). In this analysis, "[e]mployees can be 'similarly situated' even if their misconduct is not 'identical' in all respects." *Peralta v. Roros 940, Inc.*, 72 F. Supp. 3d 385, 393 (E.D.N.Y. 2014) (quoting *Graham*, 230 F.3d 40). Instead, "[t]here just needs to be a reasonably close resemblance of the facts and circumstances." *Id.* (quotation marks omitted). Important considerations include (1) whether the

asserted comparators were subject to the same workplace standards and (2) the comparative seriousness of the alleged misconduct." *Id.*

Here, a reasonable juror could easily conclude that SBH's proffered reason for Plaintiff's termination – her inability to fulfill her hours obligation to SBH – should have "applied with equal force" to Massaquoi, who was outside of Plaintiff's protected group and "nonetheless kept [her] job." *Peralta*, 72 F. Supp. 3d at 393. Indeed, Massaquoi chronically missed her 33 weekly hours requirement. As discussed above, during the sixteen weeks covered by Plaintiff's second contract (August 13, 2023 to December 16, 2023), Massaquoi worked her full 33 hours *only one week* and, for half the weeks in that period, she worked less than 30 hours per week. *See* Buzzard Decl., Ex. 14 at JSNA00408-09. Similarly, there was not a single week during the period from February 10, 2024 (the week Plaintiff returned from approved time off) to March 23, 2024 (Plaintiff's last full week of work) when Massaquoi meet her 33-weekly hour requirement, and there were three weeks when she worked less than 30 hours. *See id.* at JSNA000410.

SBH attempts to distinguish between Plaintiff and Massaquoi by shifting the goalposts, using different time periods and hours. *See* SBH Mem. at 17-18. But the fact of the matter is that both Plaintiff and Massaquoi had the exact same "contractual scheduling obligations" – 33 hours per week – which Massaquoi consistently did not meet. There is thus a "reasonably close resemblance to the facts and circumstances" of Plaintiff's situation such that a jury could conclude that SBH's rationale for Plaintiff's termination should have applied with equal force to Massaquoi but did not.

In sum, the above evidence of pretext, coupled with Plaintiff's strong evidence of discriminatory intent, precludes summary judgment here. There is abundant evidence from which a reasonable juror could conclude that: (1) SBH participated in, and indeed motivated, the decision

to terminate Plaintiff's employment; (2) Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination; and (3) SBH's proffered reason for Plaintiff's termination is pretextual. Accordingly, SBH's motion must be denied on the merits of Plaintiff's pregnancy discrimination claims under Title VII, the NYSHRL, and the NYCHRL.[3]

## CONCLUSION

For the foregoing reasons, the Court should: (1) grant Plaintiff's Motion for Partial Summary Judgment on the issue of Defendant SBH's joint employer status; and (2) deny Defendant SBH's motion for summary judgment as to Plaintiff's pregnancy discrimination claims.

Dated: New York, New York
August 11, 2026

By: __*s/Lucas C. Buzzard*______
D. Maimon Kirschenbaum
Lucas C. Buzzard
Leah Seliger
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
212-688-5640
*Attorneys for Plaintiff*

[3] Plaintiff consents to the dismissal of her remaining claims under the Pregnant Workers Fairness Act and New York Labor Law § 215.